IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRED ADAMI and JACK VARNER,<br><br>                Plaintiffs,<br><br>     v.<br><br>CARDO WINDOWS, INC., et al.,<br><br>                Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil No. 12-2804 (JBS/JS)<br><br><br>**OPINION** |

APPEARANCES:

Richard S. Hannye, Esq.
128 West Cottage Avenue
Haddonfield, NJ 08033
     Attorney for Plaintiffs

Michael D. Homans, Esq.
Elisa N. Bramble, Esq.
FLASTER GREENBERG, P.C.
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
     Attorneys for Defendants


**SIMANDLE**, Chief Judge:

I.    **INTRODUCTION**

        Presently before the Court is a partial motion to dismiss

claims against Defendants Cardo Windows, Inc. ("Cardo"),

Christopher Cardillo, Sr., Christopher Cardillo, Jr., Nicholas

Cardillo, Edward Jones, John Belmonte, Pat Tricocci, and

Nicholas Brucato. [Docket Item 22.]  This action concerns the

Defendants' classification of Plaintiffs Fred Adami and Jack

Varner, along with other window installers, as independent
contractors rather than employees.  Plaintiffs allege that the
characterization of Plaintiffs as independent contractors was
unlawful and has resulted in Plaintiffs not receiving required
overtime compensation, workers' compensation insurance coverage,
and other benefits that are made available to regular employees
of Cardo.  (Am. Compl. ¶ 11.)  Plaintiffs bring suit under the
Fair Labor Standards Act ("FLSA"), New Jersey Wage and Hour Law
("NJWHL"), New Jersey Construction Industry Independent
Contractor Act ("CIIC"),and the Employee Retirement Income
Security Act, 29 U.S.C. § 1001 et seq ("ERISA"), as well as New
Jersey common law.

    For the reasons explained below, the Court will grant in
part and deny in part Defendants' partial motion to dismiss.

## II.  <u>BACKGROUND</u>

### A. Procedural History

    Plaintiff Fred Adami filed a complaint against Cardo
Windows, d/b/a  "Castle 'The Windows People'", asserting a
myriad of claims, including claims under the FLSA and the NJWHL,
as well as other claims relating to Cardo's characterization of
him, and others similarly situated, as "independent
contractors."  [Docket Item 1.]  Defendants filed an answer to
Plaintiff's complaint and a counterclaim. [Docket Item 6.]
Attached to Defendants' answer are numerous documents and

exhibits. Shortly thereafter, Plaintiff filed an answer to the counterclaim along with affirmative defenses. [Docket Item 9.] After a few months, Plaintiff filed an Amended Complaint. [Docket Item 18.]  The Amended Complaint added a second Plaintiff, Jack Varner who is another window installer, and an additional Defendant, an installation manager at Cardo Windows. Subsequently, Defendants filed the instant partial motion to dismiss Plaintiffs' Amended Complaint.  Plaintiffs filed opposition to the motion [Docket Item 29] and the Defendant replied [Docket Item 31].

## B. Facts

The Court takes the following facts, alleged in the Amended Complaint of Plaintiffs Fred Adami and Jack Varner, to be true for the purposes of this motion. Cardo is a corporation incorporated under the laws of New Jersey with a headquarters in Mt. Laurel, New Jersey. (Am. Compl. ¶ 3.) Cardo Windows is in the business of selling and installing vinyl replacement windows in New Jersey, Pennsylvania, Delaware, Connecticut, Maryland, and New York. (Am. Compl. ¶ 16.)  Plaintiff Adami was a window installer at Cardo from some time in 2006 to June 6, 2012. (Am. Compl. ¶ 17.)  Plaintiff Jack Varner was an installer from February 2003 to October 2012. (Am. Compl. ¶ 18.) The installation of windows is an integral part of Cardo's business. (Am. Compl. ¶ 22.)  Cardo provides each installer with extensive

3

training for installing windows.  (Am. Compl. ¶ 23.)
Advertisements give the false impression that all installers are
employed solely by Cardo. (Am. Compl. ¶ 25.) Likewise,
installers are asked to lie about their status as employees and
Cardo's workers' compensation coverage. (Am. Compl. ¶¶ 26 & 27.)

Window installers are required to call their manager and
report about each window installation.  (Id. ¶ 28.) Cardo
provides installers with the windows and necessary material to
perform installations. Id. ¶ 29. Installers do not bear the risk
of realizing a profit or loss. Id.   Installers are not
permitted to advertise their services to the public or have
another employer.  Id. ¶¶ 30, 31.  In addition, installers are
required to sign an agreement not to compete with Cardo in the
event they no longer work for Cardo.  Id. ¶ 31.

Installers must arrive at Cardo's warehouse at 7:00 a.m.
Monday through Saturday to pick up windows to be installed that
day and receive assignments. Id. ¶ 32. Installers work 6 days a
week, typically in excess of 50 hours per week. Id. ¶¶ 35, 36.
Installers must have a Cardo logo visible on their vehicle and
their shirt or sweatshirt when customers are present. Id. ¶¶ 33,
34. Installers do not receive overtime for working in excess of
40 hours a week and do not receive benefits that employees
receive. Id. ¶¶ 40, 41. Defendants have failed to maintain
accurate and complete records containing total hours worked each

4

day and each workweek. Id. ¶¶ 165, 180. Cardo administers and maintains a benefit plan for its employees, which Chris Cardillo, Sr. administers. Id. ¶¶ 79, 80. Plaintiffs are not plan participants and do not receive benefits. Id. ¶ 40.

Plaintiff Fred Adami alleges that on June 6, 2012, Cardo made Adami a manager of window installers. Id. ¶ 105. Cardo treats some managers as employees and others as independent contractors. Id. ¶ 107. Work performed by Cardo's managers is customarily performed by employees, not independent contractors. Id. ¶ 109. Cardo does not provide the same benefits to managers who are independent contactors as it does managers who are employees. Id. ¶ 123. Despite appointing Plaintiff Adami a manager, Cardo continued to treat him like an independent contractor. Id. ¶ 130. He regularly worked in excess of 40 hours per week and was not paid overtime. Id. at 137.

Christopher Cardillo, Sr. and Christopher Cardillo, Jr. are involved in the management of Cardo. Id. ¶¶ 46, 47. Nick Cardillo manages the payroll, John Belmonte and Nicholas Brucato manage the installers, Pat Triocci assigns the installers to different installations, and Edwards Jones is the director of operations. Id. ¶¶ 47 – 52. All of the above individuals are Defendants in the instant action.

Plaintiff Adami was ultimately terminated by Cardo. Id. ¶ 171. Defendant Jones, the director of operations, accused

Plaintiff Adami of stealing aluminum coil from Cardo, even though Adami did not in fact steal the coil. Id. ¶ 171, 172. Jones published his statement to Cardo's owners, managers, employees, and independent contractors, and Plaintiff Adami's reputation and employability have been damaged as a result. Id. ¶¶ 173, 175. Plaintiff Adami alleges that Cardo accused him of theft to intimidate him from asserting his rights to unemployment benefits. Id. ¶ 181.

## III. **STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that

offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). There is an exception to this rule: "a document integral to or explicitly relied upon in the complaint may be considered...." Id. at 1426. But for a court to consider such a document, the document must be "undisputedly authentic." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Plaintiffs, in their opposition, include excerpts of documents that are not attached to the Amended Complaint. Similarly, Defendants attached documents to their reply. The Court has not considered any of these documents because they are outside the four corners of the Amended Complaint. The documents referred to in the Plaintiffs' opposition to the motion to dismiss and attached by Defendants were not integral or explicitly relied upon in the Amended Complaint.  Therefore, the Court cannot consider these documents in deciding the instant motion.[1]

---

[1] Specifically, Plaintiffs included Defendants' objections to Plaintiffs' Second Request for Production of Documents regarding ERISA claims.  Plaintiffs also attached several documents to their opposition, including a three Independent

## IV.  **DISCUSSION**

In their motion to dismiss, Defendants move to dismiss several of the claims in Plaintiffs' Amended Complaint. The Defendants move to dismiss: (1) Counts VI and X, for failure to maintain records under the FLSA and NJWHL; (2) Counts I, V and VII as to the individual Defendants, for failure to pay overtime compensation under the FLSA and NJWHL; (3) Counts III and IX, for violation of § 502(a)(3) of ERISA; (4) Counts VII and VIII, for violation of New Jersey statutes in relation to Plaintiff Adami's work as a manager; (5) Count XII, for slander; and (6) Count XIII, for wrongful discharge. The Court will now address each of the claims individually.

### A.  **Counts VI & X for Failure to Maintain Records**

The Defendants assert that there is no private right of action under the FLSA and NJWHL for record keeping violations and therefore Counts VI & X of the Amended Complaint, which assert claims for failure to maintain records under the FLSA and NJWHL, respectively, should be dismissed.

In their opposition, Plaintiffs argue that decisions by the Third Circuit Court of Appeals and New Jersey Courts have

---

Contractor/Subcontractor Agreements dated March 01, 2001, March 01, 2006, and January 29, 2010, and a Certification in Support of Probable Cause filed by Defendant Jones against Plaintiff Adami in Mt. Laurel Municipal Court. Defendant also attached an Independent Contractor/Subcontractor agreement dated January 01, 2009.

acknowledged a private right of action for record-keeping provisions.

Under 29 U.S.C. § 211(c) of the FLSA, an employer is required to "make, keep, and preserve such records of the persons employed by [it]...." An employer's liability to an employee under the FLSA is limited by Section 216 to damages and cost for minimum wage and overtime pay violations. See § 216(b). Violation of the record keeping provision does not automatically give rise to penalties. Consequently, the statutory language of the FLSA does not establish a private right of action solely to address the failure to maintain records. However, these violations are not irrelevant because if other violations, such as failure to pay overtime, are found the court will have to estimate damages. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946); Martin v. Selker Bros., Inc., 949 F.2d 1286, 1297 (3d Cir. 1991).

The NJWHL has similar requirements in its record-keeping provision.[2]  Like the FLSA, the NJWHL does not provide a private

---

[2] N.J.S.A. 34:11-56a20 states, in pertinent part:

> Every employer of employees subject to this act shall keep a true and accurate record of the hours worked by each and the wages paid by him to each and shall furnish to the commissioner or the director or their authorized representative upon demand a sworn statement of the same. Such records shall be open to inspection by the commissioner or the director or

cause of action for record-keeping violations in the statutory language.  See N.J.S.A. 34:11-56a22. An employee's private right of action is limited by N.J.S.A. 34:11-56a25 to minimum fair wage claims for pay and overtime.[3]

The cases cited by Plaintiffs are unpersuasive and do not establish that a private right of action exists for record keeping violations under the NJWHL or FLSA. Specifically, in Martin v. Cooper Electric Supply, 940 F.2d 896 (3d Cir. 1991), the claims were brought by the Secretary of Labor.  In Brooks v. Village of Ridgefield Park, 185 F.3d 130 (3d Cir. 1999), the plaintiffs neither alleged a record-keeping violation nor was record-keeping an issue in the case. The issue in Brooks was whether the delayed payment of overtime pay violated the FLSA. Finally, in Winslow v. Corporate Express, Inc., 834 A.2d 1037, 364 N.J.Super. 128 (N.J. Super. 2003), the Court does not even speak to the FLSA, NJWHL, or record-keeping provisions.  Winslow concerned the employer's alleged failure to notify employees of its change in calculating pay and the original claim was brought under the New Jersey Wage Payment Law.  Therefore, the cases cited by the Plaintiffs are distinguishable and do not establish a private right of action under the FLSA or the NJWHL.

---

their authorized representative at any reasonable time.
[3] While employees cannot recover for record-keeping violations, the employer's duty to keep records under the NJWHL is inherent in its duty to pay the fair minimum wage.

Accordingly, Counts VI & X of Plaintiffs' Amended Complaint for violations of the record-keeping provisions of the FLSA and the NJWHL will be dismissed.  This dismissal is with prejudice as no private right of action for record-keeping violations exists under these statutes and amendment would be futile.

### B. Counts I, V & VII Against Individual Defendants as Employers

Next, Defendants argue that Plaintiffs have failed to plead sufficient facts to establish that the individual Defendants are employers under the FLSA and the NJWHL. In particular, Defendants maintain that Plaintiffs failed to plead whether the individual defendants exercised control over employees, their specific role in decisions relating to payment of employees, or their part in other structural decisions. (Mot. Dismiss at 5.)

In opposition, Plaintiffs contend that it is sufficient that they have identified the individuals as "either owners of Cardo or installation managers for Cardo" (Pl'[s] Opp. at 6) and that "individual defendants fall neatly within the definition of 'employer' under both the FLSA and NJWHL." Id. at 7.

The FLSA and NJWHL define employer in nearly identical terms.  Specifically, an employer is a person or entity "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); N.J.S.A. 34:11-56a1.

11

The Court, to determine whether an individual is an employer under the FLSA, must look to the "economic reality presented by the facts," including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999); see also Zavala v. Wal-Mart Stores, Inc., 393 F.Supp.2d 295, 329 (D.N.J. 2005).  No single factor is determinative of whether an individual is an employer for statutory purposes.  Since the FLSA and the NJWHL define "employer" in nearly identical language, the Court will use the economic reality test to analyze whether Plaintiffs have alleged sufficient facts to conclude the individual Defendants were employers under both statutes.

As a preliminary matter, the Amended Complaint alleges the role each individual Defendant occupied in Cardo and alleges that each individual Defendant participated in the management and operation of Cardo.  Specifically, Plaintiffs' Amended Complaint identifies Christopher Cardillo Sr., Christopher Cardillo, Jr., and Nick Cardillo as owners of Cardo who were actively involved in the management of the business with Nick Cardillo serving as payroll manager. (¶¶ 46-47)  Edward Jones is alleged to be the director of operations for Cardo (Am. Compl. ¶

49) and Pat Triocci is identified as the service manager of
Cardo (Am. Compl. ¶ 50).  Both Triocci and Jones are alleged to
be responsible for managing Cardo's window installers and
assigning work to installers.  John Belmonte and Nicholas
Brucato are identified as installation mangers of Cardo and are
also alleged to manage installers of Cardo windows.  (Am. Compl.
¶¶ 51-52.)

The Amended Complaint further alleges with specificity the
management practices of Cardo, including hours, pay and
conditions of employment.  Since the Amended Complaint alleges
that all individual Defendants participated in the management of
Cardo, the following analysis applies equally to all individual
Defendants.

First, the Plaintiffs' Amended Complaint adequately alleges
that the individual Defendants supervised and controlled
employee schedules and conditions.  The Plaintiffs allege that
Cardo's installers needed to "arrive at Cardo's warehouse at
7:00 a.m. each Monday through Saturday" (Am. Compl. ¶ 32.) and
installers were required to work at least 48 hours a week. Id. ¶
35. Likewise, an installer's employment was conditioned on the
installer not working for anyone else and signing an agreement
not to do the same.  Id. ¶ 31.  Finally, installers were
required to display Cardo logos on their vehicles and clothing.
Id. ¶¶ 33 & 34.

13

The method of payment was also alleged to be controlled by the individual Defendants.  Installers did not receive overtime, did not have taxes withheld from their checks, and were paid "a set amount for each window installed." Id. ¶¶ 29, 40 & 43.  It is further alleged that each individual named as a defendant is either is an owner, director, or manager that actively participates in managing the company. Id. ¶¶ 46 – 52.

The fourth factor of the economic realities test is whether the individuals maintained employment records. The Plaintiffs allege that Cardo "issues 1099s to all of its window installers." (Am. Comp. ¶ 45.) Also, Plaintiffs allege that Cardo maintained and administered employee benefit plans. Id. ¶¶ 79, 80. This is sufficient to show the individuals named as defendants maintained at least some employment records for independent contractors.

In sum, Plaintiffs alleged three out of the four factors in the economic realities test, with the only factor not present being whether the individual Defendants had the power to hire and fire the employees.  Being that Plaintiff Adami pleaded that Defendant Jones fired him, it is not as though the first factor, whether individuals had the power to hire and fire, is completely absent. The pleadings are sufficient to construe the individuals as employers at this procedural posture.

14

Defendants' motion to dismiss these claims against the individual Defendants as employers is therefore denied.

### C.   ERISA Claims

Plaintiffs allege that "Cardo administers and maintains a benefit plan for its employees governed by ERISA" (Am. Compl. ¶ 79) and "Plaintiffs are employees entitled to participate in Cardo's ERISA benefit plan." (Am. Compl. ¶ 80).

Defendants move to dismiss the ERISA based claims on the grounds that Plaintiffs have not established that they are plan participants and Plaintiffs have not pleaded exhaustion of administrative remedies.

Section 29 U.S.C. § 1132(a)(1)(B) provides that a plan participant or beneficiary can institute an action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. § 1132(a)(1)(B).[4]

A plaintiff must satisfy two requirements to establish participant status. Bauer v. Summit Bancorp, 325 F.3d 155, 160 (3d Cir. 2003) citing See Wolf v. Coca-Cola Co., 200 F.3d 1337, 1340 (11th Cir. 2000). First, the plaintiff must be a common law

---

[4] As mentioned in Section III, supra, Plaintiff has included segments of Defendants' answers to the original complaint and Defendants' objections to the Plaintiffs' Second Request for Documents. The Court will not recognize these inserts in its analysis because they are documents outside the four corners of the complaint.

employee. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24, 117 L. Ed. 2d 581, 112 S. Ct. 1344 (1992). Second, the plaintiff must be, "according to the language of the plan itself, eligible to receive a benefit under the plan. An individual who fails on either prong lacks standing to bring a claim for benefits under a plan established pursuant to ERISA." Id. citing Clark v. E.I. Dupont De Nemours & Co., 105 F.3d 646, 1997 WL 6958 (4th Cir. 1997).

Nothing in ERISA requires that every employee be entitled to participate in a plan that the employer decides to offer. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 L. Ed. 2d 490, 103 S. Ct. 2890 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits.") What ERISA does require, however, is that if an employer decides to provide a plan, that plan is subject to certain minimum requirements regarding participation. Id. citing 29 U.S.C. § 1051-1086; see also Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981).

Assuming Plaintiffs can satisfy the first prong, that the installers are common law employees, the question turns to whether they were eligible to receive benefits according to the language of the plan.  The Amended Complaint offers little as to what language the plan contained and the plan itself is not

16

attached.  Plaintiffs pleaded that "Plaintiffs are employees entitled to participate in Cardo's ERISA employees benefit plan." (Am. Compl. ¶ 81.)  However, given the elements required to satisfy participant status, this is a legal conclusion and will be disregarded. Plaintiff does not plead what the actual eligibility language of the plan stated.

For this reason, Plaintiffs claim under ERISA must be dismissed because Plaintiffs have not established that they are plan participants.[5] Since the plan may be obtained at a later date, the ERISA claims, Counts III and IX, are dismissed without prejudice to amendment.  Any such motion to amend must be made before expiration of the deadline for seeking amendments to pleadings to be set in the scheduling order in this case under Rule 16(b)(1).

D.  **Counts VII and VIII Under New Jersey Law**

Counts VII and VIII relate to Defendants alleged failure to pay overtime to Plaintiff Adami under the NJWHL for his time as a manager (Count VII) and a violation of the New Jersey Construction Industry Independent Contractor Act ("CIIC") for failure to pay Plaintiff Adami required overtime and wrongful

---

[5] At present, Plaintiffs cannot obtain the plan document from the Defendants and without this information, Plaintiffs cannot pursue any administrative remedies. The critical information to decide the second prong will not be available until the plan is produced in discovery.

classification of Plaintiff Adami as an independent contractor (Count VIII).

Plaintiff Adami alleges that on June 6, 2012, Cardo made Fred Adami a manager of window installers. Cardo treats some managers as employees and others as independent contractors. Work performed by Cardo's managers is customarily performed by employees, not independent contractors.  Cardo does not provide the same benefits to managers who are independent contactors as it does managers who are employees.  Despite appointing Adami to a manager position, Cardo continued to treat Adami like an independent contractor.  He regularly worked in excess of 40 hours per week and was not paid overtime.

Defendants argue that these counts should be dismissed because Plaintiff Adami lived and worked in Pennsylvania for this time period.  On that basis, Defendants argue that New Jersey law is not applicable and the law applied is that of where the Plaintiff was employed.  Furthermore, Defendants allege that since the work Plaintiff Adami allegedly performed as manager was in Pennsylvania and his termination was in Pennsylvania, Pennsylvania law should govern these actions.

Plaintiffs respond that the New Jersey claims should survive because Plaintiff Adami was employed in Cardo's Mt. Laurel, NJ headquarters in July and August 2011. (Pl'[s] Opp. at 9.) Further, facts indicating how much time Plaintiff Adami

18

worked in Pennsylvania, rather than NJ, were not expressly pleaded in the Amended Complaint and are outside the purview of this motion to dismiss.

After reviewing the Amended Complaint, the Court concludes it is premature to decide whether these claims are governed by Pennsylvania law or New Jersey law. The Plaintiff brought these claims under New Jersey law and alleged that he worked for a company headquartered in New Jersey and performed work in New Jersey. That is sufficient for this early stage of litigation. In deciding a conflicts of law question, courts often apply a governmental interest test for determining the applicable law. The governmental interest test and similar tests are fact intensive, usually requiring more information than is available in the pleadings. Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007)(quoting Erny v. Estate of Merola, 171 N.J. 86, 792 A.2d 1208, 1221 (N.J. 2002)).

Therefore, the Court need not address a conflict of law analysis at this juncture. The Amended Complaint sets forth sufficient facts to establish that New Jersey law applies. However, as more facts become available in discovery, the Defendants will be permitted to renew their conflict of law arguments in a motion for summary judgment.

### i.   Claims under the NJWHL

Defendants do not address the actual merits of Plaintiff Adami's claim under the NJWHL for overtime pay for when he was a manager. Defendants only argue that this claim was not properly asserted under New Jersey law.

At this stage, since it is premature to conduct a conflict of law analysis, the Court will only review the sufficiency of Plaintiffs' Amended Complaint. Plaintiff Adami pleaded that Defendants failed to pay him overtime for his time as a manager. This is sufficient to establish this claim. (Am. Compl. ¶ 137.) Therefore, Defendants' motion to dismiss as to Count VII is denied.

### ii.   Claims Under the CIIC

Plaintiff Adami pleaded different causes of action under the CIIC, including wrongful misclassification of installers as independent contractors and failure to pay overtime. (Am. Comp. ¶¶ 145, 148.)

N.J.S.A. § 34:20-2 provides that "The Legislature finds that employers in the construction industry who improperly classify employees as independent contractors deprive these workers of proper Social Security benefits and other benefits, while reducing the employers' State and federal tax withholdings and related obligations. Moreover, this practice puts businesses

20

that bear higher costs for complying with the law at a competitive disadvantage." N.J.S.A. § 34:20-2.

N.J.S.A. § 34:20-8(b) provides a private right of action under the CIIC, stating "an individual employed as a construction worker who has not been properly classified as an employee may bring a civil action for damages against the employer or any other employer who was in contract with the employee, for failing to properly classify the employee if the employer had knowledge of the misclassification." N.J.S.A. § 34:20-8(b).

Similar to their response to Plaintiff's NJWHL claim regarding Adami's time as manager, Defendants do not address the merits of Plaintiff Adami's CIIC claim.  Instead, Defendants responded only that the claims cannot be brought under New Jersey law. For the time being, these claims must survive because the Court does not have sufficient factual information to apply the governmental interest test and the Plaintiffs pleaded sufficient facts to survive a motion to dismiss. Plaintiffs pleaded that Defendants knowingly misclassified them as independent contractors and failed to pay them overtime. (Am. Compl. ¶¶ 145, 147 & 149.) There is limited case law on the CIIC, but it is clear that the CIIC does provide for "civil and criminal penalties if an employer misclassifies construction workers as independent contractors." D'Annunzio v. Prudential

Ins. Co. of America, 192 N.J. 110, 130 (N.J. 2007)(citing the CIIC §§ 5-7).  More importantly, the statutory text is explicit that a "construction worker," which Plaintiff alleges himself to be, "may bring a civil action for damages against the employer . . . for failing to properly classify the employee" if the employer, as is alleged here, "had knowledge of the misclassification."  N.J.S.A. § 34:20-8(b).  Therefore, Defendants' motion to dismiss, with respect to Counts VII and VIII will be denied.

### E.  Wrongful Discharge – Count XIII

Defendants Cardo and Edward Jones have moved to dismiss Count XIII for Wrongful Discharge on numerous grounds.  First, they argue that there is no cause of action for wrongful discharge by a worker classified as an independent contractor. In addition, they argue that the claim must fail because Plaintiff does not fall within a public policy exception to the employment at will doctrine.  Defendants cited and argued under Pennsylvania law, even though Plaintiff pleaded his claims under New Jersey law.

Plaintiff Adami only responds that he has stated a valid cause of action for wrongful discharge under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980).[6]

---

[6] Both New Jersey and Pennsylvania common law wrongful discharge claims require a clear violation of public policy, so even

A cause for wrongful discharge exists in New Jersey "when the discharge is contrary to a clear mandate of public policy." Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 961 A.2d 1167, 1179 (N.J. 2008) (quoting Pierce, 84 N.J. at 417). The employee must identify a specific expression of public policy in a source such as "legislation; administrative rules, regulations or decisions; and judicial decisions." Id. at 512.

Plaintiff Adami does include a public policy argument, that Cardo intimidated him into not exercising his right to apply for unemployment benefits. (Am. Compl. ¶¶ 181, 183 & 184.)  The unemployment act was enacted by the New Jersey legislature to "provide some income for the worker earning nothing, because he is out of work through no fault or act of his own." Brady v. Board of Review, 152 N.J. 197, 211-12, 704 A.2d 547 (1997) (citations, internal quotation marks and editing marks omitted).

Plaintiff Adami, however, fails to plead how the denial of unemployment benefits factored into Cardo's decision to discharge him.  Rather, it is clear from the Amended Complaint that the alleged reason for Plaintiff's termination was the theft of aluminum coil which, if true, is a legitimate reason for an employer to fire an employee.  Indeed, unemployment benefits are only available to an employee *after* the employee is

---

though the claim is being analyzed under New Jersey law, the outcome would be the same.

discharged and any subsequent denial of benefits or
intimidation, as Plaintiff Adami alleges, can be addressed
through available administrative proceedings.

Plaintiff Adami has failed to plead any connection between
the decision to discharge him and the subsequent intimidation
from Cardo not to exercise his right to unemployment benefits.
Logically, access to unemployment benefits is an issue that
cannot arise until after an employee is terminated.  Therefore,
Plaintiff Adami has failed to state a claim for wrongful
discharge.  Since denial of unemployment benefits is the only
violation of public policy alleged by the Plaintiff, this claim
will be dismissed with prejudice as any amendment would be
futile.

    **F.  Defamation Claim**

Defendants have moved to dismiss Plaintiff Adami's slander
claim.  Defendants argue that Plaintiff has failed to plead with
sufficient detail regarding the actual statement that was
published by Defendant Jones.

Plaintiff Adami, in opposition, states that the slander
claim, if taken as true, is plausible on its face and should
survive a motion to dismiss.

To establish defamation under New Jersey law, a plaintiff
must show the defendant (1) made a false and defamatory
statement concerning the plaintiff, (2) communicated the

24

statement to a third party, and (3) had a sufficient degree of fault. Singer v. Beach Trading Co., 379 N.J. Super. 63, 876 A.2d 885, 894 (N.J. Super. Ct. App. Div. 2005). The New Jersey Supreme Court has occasionally listed "unprivileged publication" as an element of a successful defamation claim. See Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 969 A.2d 1097, 1114 (N.J. 2009).[7]

The first prong is met by Plaintiff's description of the statement.  Even though the Amended Complaint did not provide the exact wording of the statement, it provided that "Edward Jones accused Fred Adami of stealing aluminum coil from Cardo." (Am. Compl. ¶ 171.) While the falseness of a statement is a question of fact, the defamatory nature of a statement is a question of law. Ward v. Zelikovsky, 136 N.J. 516, 643 A.2d 972, 978 (N.J. 1994). A defamatory statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. (quoting Restatement (Second) of Torts, § 559). Labeling a person a thief certainly damages that person's reputation and employability, especially when the alleged

---

[7] The Defendants have only briefed this claim under Pennsylvania law. As mentioned in "D. Counts VII and VIII Under New Jersey Law", it is premature for the Court to conduct a choice of law analysis.  The Amended Complaint has set forth sufficient facts to establish that NJ law applies for purposes of the motion to dismiss.

defamer is an employer or former employer. Here, Plaintiff Adami
pleaded that "[his] reputation and employability have been
damaged." (Am. Compl. ¶ 175.)[8]

The element of communication to a third party is likewise
satisfied.  To satisfy the communication element of a defamation
claim a plaintiff must plead facts that enable the defendant to
identify the defamer and the circumstances of the publication.
Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 563
A.2d 31, 46 (N.J. 1989). Complaints that vaguely allege that
defamatory statements were made to "third parties" are
insufficient. See Foy v. Wakefern Food Corp., No. 09-1683, 2010
U.S. Dist. LEXIS 1537, 2010 WL 147925, *6 (D.N.J. Jan. 7, 2010)
(complaint alleging defamatory statement to "third parties"
dismissed).

The Amended Complaint here alleges that the statement was
published to "owners, managers, employees and independent
contractors and others whose names will be revealed during
discovery." (Am. Compl. ¶ 173.) Although the previous statement
is vague because it relates to "others" and does not identify
which owners, managers, employees, and independent contractors,

---

[8]  In addition, the Amended Complaint alleges that "Edward
Jones's untruthful statement that Fred Adami stole aluminum is
slanderous per se." Id. ¶ 174. This is a legal conclusion and
must be disregarded. See Iqbal, 129 S. Ct. at 1950. Nonetheless,
the pleadings are sufficient to satisfy the first element.

it will suffice due to the particularity in the rest of the Amended Complaint. The Amended Complaint incorporated its previous reference as to who are the owners, managers, employees, and independent contractors, so the pleading, in context, provides enough particularity to satisfy the second element.[9]

Finally, Plaintiff Adami pleaded with enough particularity to satisfy the "fault requirement". A showing of fault is required by the Supreme Court's decision in Gertz v. Welch, 418 U.S. 323, 347, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). Restatement (Second) of Torts, § 580B, comment c. W.J.A. v. D.A., 210 N.J. 229 (N.J. 2012); Senna v. Florimont, 196 N.J. 469 (N.J. 2008). Where the person defamed is a private party and the statement involves a private matter, the fault element is met by showing that the person communicated the false statement "while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it." Feggans v.

_____

[9] Plaintiff's Amended Complaint identifies Jack F. Varner as an installer for Cardo. (Am. Compl. ¶ 18.) The Amended Complaint identifies Christopher Cardillo Sr., Christopher Cardillo, Jr., and Nick Cardillo as owners of Cardo who are involved in the management of the business. (¶¶ 46-47) Edward Jones is alleged to be the director of operations for Cardo (Am. Compl. ¶ 49) and Pat Triocci is identified as the service manager of Cardo (Am. Compl. ¶ 50). John Belmonte and Nicholas Brucato are identified as installation mangers of Cardo. (Am. Compl. ¶¶ 51-52.)

Billington, 291 N.J. Super. 382, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996).

Plaintiff Adami asserts that "Cardo wrongfully terminated [his] employment without any investigation or opportunity for Fred Adami to tell his side of the story." (Am. Compl. ¶ 182.)[10] If an employer accused an employee of theft, as Plaintiff Adami alleges Defendant Jones did here, with no investigation or opportunity for the accused employee to explain, the employer acted negligently in failing to ascertain the truth. Based on the facts presented in the Amended Complaint, Plaintiff has alleged sufficient facts to state a prima facie case for defamation.

Although this Court will not reach the choice of law issue, the outcome would be no different if analyzed under Pennsylvania law, and therefore represents a false conflict.[11] Defendants' motion to dismiss as to this claim is denied.

_____

[10] This pleading falls under the Wrongful Discharge claim and was not incorporated by reference in the Slander claim. However, the pleading is still within the Amended Complaint and puts the Defendants on notice of the claims against them. Similarly, even though the pleading relates to the alleged wrongful termination, the underlying event for the termination is the alleged theft, which is the basis for the slander claim.
[11] The elements necessary to state a prima facie case for defamation in Pennsylvania are substantially similar to New Jersey. For Pennsylvania they are: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff;

## V. __CONCLUSION__

For the foregoing reasons, Defendants' partial motion to dismiss is granted in part and denied in part.  The following claims are dismissed: Counts VI and X, for failure to maintain records under the FLSA and NJWHL; Counts III and IX, for violation of § 502(a)(3) of ERISA; and Count XIII, for wrongful discharge.  The remainder of Defendants' motion to dismiss is denied.


__July 23, 2013__                              __s/ Jerome B. Simandle__
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge

---

(6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion (once proved by defendant). 42 Pa. Cons. Stat. Ann. § 8343(a). If after applying the respective law of each state to the same set of facts the result is the same, there is no conflict. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 839 n.20, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985). In other words, there is a false conflict where the application of either state's law renders the same result. Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir. 1991).