# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FRED ADAMI and JACK VARNER, | : | CIVIL NO. 1:12-02804 |
| | : | (JBS) (JS) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CARDO WINDOWS, INC. d/b/a "CASTLE 'THE WINDOW PEOPLE'" AND ITS SUCCESSORS AND ASSIGNS, CHRISTOPHER CARDILLO, SR., CHRISTOPHER CARDILLO, JR., NICHOLAS CARDILLO, EDWARD JONES, JOHN J. BELMONTE AND PAT TRICOCCI, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION UNDER THE FLSA

---

## **TABLE OF CONTENTS**

Page

I.   PLAINTIFFS DO NOT MEET THE STANDARD FOR CERTIFICATION OF A
     CLASS ACTION UNDER FED. R. CIV. P. 23(a) ............................................... 3

     A.   The Court Must Undertake a "Rigorous Analysis" In Determining
          Whether Plaintiffs Have Satisfied All Four Prerequisites of Class
          Certification. ........................................................................................ 3

     B.   This Action Does Not Meet the Requirements of Rule 23(b)(3), Because
          Individual Issues Predominate Over Common Questions of Law and Fact. .......... 5

          1.   Questions affecting individual class members will predominate
               over questions common to the class. ........................................... 5

          2.   A class action is not the superior method for the fair and efficient
               adjudication of this case. ............................................................. 11

     C.   Plaintiffs Have Failed To Establish That They Have Met the Requirements
          of Fed. R. Civ. P. 23(a) ....................................................................... 12

          1.   Plaintiffs lack numerosity and have failed to prove that joinder of
               potential class members would be impractical. ............................. 12

          2.   The potential class lacks commonality because the question of
               whether each installer is an employee cannot be determined by
               proof that is common to the class. ............................................... 15

          3.   Plaintiffs do not satisfy the typicality requirement because neither
               Adami's claims nor Cardo's claims against him are typical of the
               proposed class. ........................................................................... 15

          4.   As to Adequacy, Plaintiffs' individual interests in this lawsuit
               compete with those of the proposed class. .................................. 17

II.  PLAINTIFFS DO NOT MEET THE STANDARD FOR CERTIFICATION OF A
     COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT .............. 18

     A.   Plaintiffs Must Prove That They Are "Similarly Situated" to the Proposed
          Class Members to Qualify for Conditional Certification ............................... 19

     B.   The Determination of Whether a Worker is an Independent Contractor or
          Employee Under the Fact-Specific Economic Realities Test Cannot Be
          Made on a Class-Wide Basis .................................................................. 20

     C.   The Named Plaintiffs Are Not Similarly Situated to the Majority of the
          Putative Class Members They Propose to Represent .................................. 22

          1.   Helpers are Not Similarly Situated to Plaintiffs, Who Worked As
               Skilled Tradesmen with their Own Equipment, Employees and
               Businesses ................................................................................ 23

i

2.    Plaintiffs Are Not Similarly Situated to Persons Who Performed Only Limited or Spot Work for Cardo Windows ..................................... 24

3.    Plaintiffs Have Not Shown That They Are Similarly Situated To Entities that Install Windows As Independently Established Businesses ............................................................................................... 25

4.    Plaintiffs Have Not Proffered Any Evidence Showing They Are Similarly Situated to Persons Working Outside of New Jersey .............. 26

III.   PLAINTIFFS ARE NOT ENTITLED TO TOLLING OF THE STATUTE OF LIMITATIONS WITH RESPECT TO THEIR FLSA CLAIMS .................................... 27

A.    Equitable Tolling Is Appropriate Only When Defendants Have Caused Potential Plaintiffs To Delay in Joining the Action and Plaintiffs Have Exercised Reasonable Diligence .................................................................. 27

B.    Plaintiffs Have Failed to Demonstrate That the Statute Should be Tolled .......... 27

1.    Defendants are not required to provide the potential plaintiffs' names and contact information unless and until the collective action is conditionally certified; Plaintiffs have failed to timely move to compel the discovery. .................................................. 28

2.    The arbitration agreements were willingly entered into by installers and have not prevented any installer from joining the collective action ................................................................................................ 29

3.    Adami engaged in criminal conduct warranting criminal prosecution; Cardo has not done anything to intimidate him or potential class members. ...................................................................... 30

4.    The pending motion to dismiss has had no affect on potential plaintiffs' ability to join this action ................................................... 31

IV.   PLAINTIFFS' PROPOSED NOTICE TO THE CLASS SHOULD NOT BE APPROVED BECAUSE THE PROPOSED PLAINTIFFS ARE NOT SIMILARLY SITUATED AND THE LANGUAGE IS PREJUDICIAL ...................... 31

A.    Plaintiffs Have Not Demonstrated that the Proposed Plaintiffs Are Similarly Situated .................................................................................. 31

B.    The Language of the Proposed Notice Gives the Appearance of Judicial Endorsement of the Merits of the Action ............................................. 32

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adkins v. Labor Ready, Inc.*,
303 F.3d 496 (4th Cir. 2002) ........................................................................29

*Am. Exp. Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ...........................................................................14, 29

*Amendola v. Bristol-Myers Squibb Co.*,
558 F. Supp. 2d 459 (S.D.N.Y. 2008) ..........................................................28

*Andel v. Patterson-UTI Drilling Co., LLC*,
280 F.R.D. 287 (S.D. Tex. 2012) ..................................................................21

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) .................................................................4, 15, 16

*Bailey v. Ameriquest Mortgage Co.*,
346 F.3d 821 (8th Cir. 2003) ........................................................................29

*Bamgbose v. Delta-T Group, Inc.*,
684 F.Supp.2d 660 (E.D. Pa. 2010) .................................................20, 21, 22

*Bunyan v. Spectrum Brands, Inc.*,
No. 07-0089, 2008 WL 2959932 (S.D. Ill. July 31, 2008) ..........................21

*Camper v. Home Quality Mgmt., Inc.*,
200 F.R.D. 516 (D. Md. 2000) ......................................................................26

*Carter v. Countrywide Credit Indus., Inc.*,
362 F.3d 294 (5th Cir. 2004) ........................................................................29

*Charles v. Nationwide Mut. Ins. Co., Inc.*,
No. 09-94, 2010 WL 7132173 (E.D.N.Y. May 27, 2010) ............................28

*Chen v. Domino's Pizza, Inc.*,
2009 WL 3379946 (D.N.J. Oct. 16, 2009) ...................................................20

*Demauro v. Limo, Inc.*,
No. 8:10- 413-T-33, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011) ....................21

*Donovan v. DialAmerica Marketing, Inc.*,
757 F.2d 1376 (3d Cir.1985) ...................................................................20, 24

i

*E.E.O.C. v. Zippo Mfg. Co.*,
   713 F.2d 32 (3d Cir. 1983)..................................................................................9

*Edwards v. Publishers Circulation Fulfillment, Inc.*,
   268 F.R.D. 181 (S.D.N.Y. 2010) ......................................................................11

*Faust v. Comcast Cable Comms. Mgmt., LLC.*,
   No. WMN–10–2336, 2011 WL 5244421 (D. Md. Nov.1, 2011) ...........................26

*Garcia v. Freedom Mortgage Corp.*,
   274 F.R.D. 513 (D.N.J. 2011)..............................................................................4

*Gerlach v. Wells Fargo & Co.*,
   No. 05-0585 CW, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ...........................28

*Goodman v. Port Auth. of N.Y. & N.J.*,
   850 F. Supp. 2d 363 (S.D.N.Y. 2012)................................................................12

*Gutierrez v. Johnson & Johnson*,
   269 F.R.D. 430 (D.N.J. 2010)........................................................................5, 10

*Hall v. Guardsmark, LLC*,
   No. 11-213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012)....................................3

*Hicks v. Mulhallan*,
   2008 WL 1995143 (D.N.J. May 5, 2008) ............................................................9

*Hoffmann–La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989)....................................................................................19, 32

*In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*,
   273 F.R.D. 516 (N.D. Ind. 2010) .......................................................................11

*In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*,
   662 F. Supp. 2d 1069 (N.D. Ind. 2009) .............................................................21

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir.2008)...........................................................................4, 11

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002)................................................................................4

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir.1998)...........................................................................17, 18

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)..........................................................................15, 16

*Irwin v. Dep't of Veterans Affairs,*
498 U.S. 89 (1990) .............................................................................................27

*Janette v. Am. Fid. Grp., Ltd.,*
298 F. App'x 467 ..............................................................................................9

*Jiminez v. All Am. Rathskeller, Inc.,*
503 F.3d 247 (3d Cir. 2007) ............................................................................3

*Kelly v. Borough of Union Beach,*
No. 10-4124 AET, 2011 WL 551170 (D.N.J. Feb. 8, 2011) ..........................27

*Knutson v. Blue Cross & Blue Shield of Minnesota,*
254 F.R.D. 553 (D. Minn. 2008) ....................................................................28

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,*
149 F.R.D. 65 (D.N.J. 1993) .....................................................................12, 14

*Long John Silver's Rests., Inc. v. Cole,*
514 F.3d 345 (4th Cir. 2008) ..........................................................................29

*Marcus v. BMW of N. Am., LLC,*
687 F.3d 583 (3d Cir. 2012) ............................................................................12

*Merlo v. Fed. Exp. Corp.,*
No. 07-4311, 2010 WL 2326577 (D.N.J. June 7, 2010) .................................11

*Metropolitan Pilots Ass's, LLC v. Schlosberg,*
151 F.Supp.2d 511 (D.N.J. 2001) ....................................................................9

*Mitchel v. Crosby Corp.,*
No. 10-2349, 2012 WL 4005535 (D. Md. Sept. 10, 2012) .............................26

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
111 F. Supp. 2d 493 (D.N.J. 2000) ..................................................................4

*Murray v. Playmaker Services, LLC,*
512 F. Supp. 2d 1273 (S.D. Fla. 2007) ............................................................9

*Nationwide Mut. Ins. C. v. Mortensen,*
606 F.3d 22 (2d Cir. 2009) ..............................................................................9

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
259 F.3d 154 (3d Cir. 2001) .......................................................................4, 11

*Norris v. Harte-Hanks, Inc.,*
122 F. App'x 566, 569 (3d Cir. 2004) .............................................................13

*Novak v. Home Depot U.S.A., Inc.*,
   259 F.R.D. 106 (D.N.J. 2009)..............................................................................2, 5

*Papalini v. Sensient Colors, Inc.*,
   No. 11-6392, 2012 WL 1345353 (D.N.J. Apr. 18, 2012).........................................13

*Pfaahler v. Consultants for Architects, Inc.*,
   No. 99-6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) .........................................21

*Prentice v. Fund for Pub. Interest Research, Inc.*,
   No. 06-7776 SC, 2007 WL 2729187 (N.D. Cal. Sept. 18, 2007)..............................28

*Putnam v. Galaxy 1 Mktg., Inc.*,
   276 F.R.D. 264 (S.D. Iowa 2011)...........................................................................28

*Rafferty v. New York Mercantile Exch. Long Term Disability Plan*,
   133 F. Supp. 2d 158 (E.D.N.Y. 2000) .....................................................................13

*Ruiz v. Affinity Logistics Corp.*,
   887 F. Supp. 2d 1034 (S.D. Cal. 2012).................................................................9, 10

*Schwann v. FedEx Ground Package Sys., Inc.*,
   No. 11-11094-RGS, 2013 WL 1292432 (D. Mass. Apr. 1, 2013).............................10

*Shabazz v. Asurion Ins. Serv.*,
   No. 3:07–0653, 2008 WL 1730318 (M.D. Tenn. Apr.10, 2008)..............................26

*Shayler v. Midtown Investigations, Ltd.*,
   No. 12-4685 KBF, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013)...............................10

*Spellman v. Am. Eagle Exp., Inc.*,
   No. 10-1764, 2013 WL 1010444 (E.D. Pa. Mar. 14, 2013) ...............................21, 22

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 1876 (2012) *reh'g denied*, 132 S.
   Ct. 2451 (2012).................................................................................................5, 15

*Talbert v. Am. Risk Ins. Co., Inc.*,
   405 F. App'x 848 (5th Cir. 2010)............................................................................13

*Torres v. United Healthcare Servs., Inc.*,
   No. 12-923 DRH ARL, 2013 WL 387922 (E.D.N.Y. Feb. 1, 2013).......................30

*Vaicaitiene v. Partners in Care, Inc.*,
   No. 04Civ.9125, 2005 WL 1593053 (S.D.N.Y. Jul. 6, 2005) .................................31

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)......................................................................................2, 15

*Walthour v. Chipio Windshield Repair, LLC*,
    No. 1:12-1491-AT, 2013 WL 1932655 (N.D. Ga. Feb. 27, 2013) .......................................30

*Waxman v. Hardaway Const. Co., Inc.*,
    693 F. Supp. 587, 591 (M.D. Tenn. 1988)..............................................................13

*Waxman v. Luna*,
    881 F.2d 237 (6th Cir. 1989) ..................................................................................13

*White v. Rick Bus Co.*,
    743 F.Supp.2d 380 (D.N.J. 2010) ...................................................................19, 23

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011)...............................................................33

*Zavala v. Wal–Mart Stores, Inc.*,
    No. 03-5309, 2010 WL 2652510 (D.N.J. June 25, 2010) (Brown, C. J.) ...............20

**STATE CASES**

*Alloway v. Bradlees, Inc.*,
    157 N.J. 221 (1999) ....................................................................................14

*Buccilli v. Timby, Brown & Timby*,
    283 N.J. Super. 6 (App. Div. 1995) ..............................................................13

*Carpet Remnant Warehouse, Inc. v. New Jersey Dept. of Labor*,
    125 N.J. 567 (1991) .................................................................................7, 8

*Koza v. N.J. Dept. of Labor*,
    282 N.J. Super. 560 (App. Div. 1995) ...........................................................7

*Pollack v. Pino's Formal Wear & Tailoring*,
    253 N.J. Super. 397 (App. Div. 1992) .........................................................14

**FEDERAL STATUTES**

9 U.S.C. § 1 et seq..........................................................................................29

29 U.S.C. § 216(b) ........................................................................................19

**STATE STATUTES**

N.J.S.A. 34:11-56a et seq................................................................................5

N.J.S.A. 43:21-19(i)(6)(A), (B), (C) ...............................................................6

**RULES**

Civ. R. 7.2(a)................................................................................................18

Fed. R. Civ. P. 12(a)(4)................................................................................31

Fed. R. Civ. P. Rule 23................................................................................4

**FED. R. CIV. P. 23(a)** ................................................................3, 4, 12, 15

Fed. R. Civ. P. 23(a)(1)................................................................................12

Fed. R. Civ. P. Rule 23(a)(3) ......................................................................16

Fed. R. Civ. P. 23(b) ....................................................................................4

Fed. R. Civ. P. 23(b)(3)........................................................................4, 5, 15

**REGULATIONS**

N.J.A.C. 12:56-16........................................................................................5

## PRELIMINARY STATEMENT

Despite having nearly 11 months to discover facts to support their claims, plaintiffs Fred Adami and Jack Varner ("Plaintiffs") must rely almost exclusively on their own unique situations and self-serving and self-contradictory allegations – without any support from other installers – to seek class and collective action certification.  They fail to demonstrate how they are similarly situated to the other independent contractors (companies and individuals) that install windows for defendant Cardo Windows, Inc. ("Cardo") across twelve different states, and ignore their own admissions and the overwhelming evidence as to the variety of circumstances and work done by other installers contracted by Cardo, which preclude class or collective action certification.  When the facts are reviewed in context, and under the applicable standards set forth below, Plaintiffs' expansive motion must fail, as it would create a class of disparate individuals  and companies, working under disparate circumstances in different states, in which individual issues (e.g., as to whether they are bona fide independent contractors under the "economic realities" test, whether they worked in the same job as Plaintiffs, the permanency of their relationship with Cardo, the amount of direction and control each received, the size of their business, and the time each worked each day) would predominate over any alleged commonality.

Plaintiffs' motion also improperly seeks to expand the class beyond the "installers" identified in their Amended Complaint (¶¶ 11-12, 17-18, Count I at p. 8 (brought "on behalf of all Cardo Installers similarly situated")) to "helpers," who the installers themselves voluntarily hired as part of their own work crews of widely varying sizes to assist on projects at Cardo and other companies.  As the facts show, these "helpers" have almost nothing in common with installers like Adami and Varner, as they are less skilled, have no equipment, tools or work vehicles, are hired and paid directly by the installers themselves, and have no direct contact with Cardo or its management team.  To lump them in with the installers is akin to asserting that a

pair of lawyers bringing a class action against a large law firm could be appropriate class representatives for the legal secretaries who assist them.

On the issue of numerosity, a closer look at the facts of this case reveals that – by Plaintiffs' own estimate – only "14 core installers," at most, are similarly situated to the named Plaintiffs (and many of those are subject to binding arbitration agreements). Some of these "regular" installers have worked with Cardo for extended periods of time and have similar skills – but widely varying business models to those of Plaintiffs. The others that Plaintiffs seek to add to their class to meet the law's requirements as to numerosity are extremely dissimilar, and include the aforementioned "helpers" – a different class of workers with no direct relationship to Cardo – and nearly 45 temporary installers, who Plaintiffs readily admit rapidly turnover month to month at Cardo, before moving on to other work outside of the company. These temporary installers are quintessential independent contractors – skilled tradesmen who move from job to job, depending on who has work they want and who will agree to hire them for new projects – and have almost nothing in common with Plaintiffs. Moreover, the New Jersey Department of Labor has audited overtime pay by Cardo and found no issue with Cardo's treatment or payment of its installers as independent contractors. They should not be included in the purported class.

In sum, trying to join these varied independent contractors as a class would require "separate mini-trials" as to their individualized issues of liability and damages, creating an "unmanageable" class or collective action that would not make sense. *See Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 114 (D.N.J. 2009); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.") The Court therefore should reject the requested class action and conditional collective action certification.

## COUNTERSTATEMENT OF FACTS

In support of this response, Defendants have filed a Counterstatement of Facts.  Unlike Plaintiffs' assertions, Defendants' facts are set forth in detail, with citations to the record.  On this point, Defendants note that assertions not supported by the record – or contradicted by sworn testimony from the same source – cannot be the basis of a decision.  Under this Court's "sham affidavit" doctrine, any verification or statement submitted by a party that contradicts that party's sworn testimony at deposition must be rejected.  *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007); *Hall v. Guardsmark, LLC*, No. 11-213, 2012 WL 3580086, *12 (W.D. Pa. Aug. 17, 2012) (applying sham affidavit doctrine, finding that plaintiffs' contradictory statements in later-filed affidavits would be disregarded upon motion for conditional certification).  As noted in the Counterstatement of Facts and below, the assertions in Plaintiffs' motion, Plaintiff Varner's verification, and Plaintiffs' counsel's verification all contradict the sworn testimony of the named Plaintiffs and therefore must be rejected.

## ARGUMENT

I.   **PLAINTIFFS DO NOT MEET THE STANDARD FOR CERTIFICATION OF A CLASS ACTION UNDER FED. R. CIV. P. 23(a)**

   A.   **The Court Must Undertake a "Rigorous Analysis" In Determining Whether Plaintiffs Have Satisfied All Four Prerequisites of Class Certification.**

Plaintiffs face a heavy burden in establishing that they meet all four requirements under Fed. R. Civ. P. 23(a), which provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs are additionally required to prove that one of the three subsections under Fed. R. Civ. P. 23(b) has been met. Here, Plaintiffs contend that Fed. R. Civ. P. 23(b)(3) applies, which requires them to prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The burden of establishing all four requisites of Rule 23(a) and at least one part of Rule 23(b) rests squarely with Plaintiffs. *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). "Courts must undertake a rigorous analysis to ensure that the putative class and its proposed representative[s] satisfy each of the prerequisites to class certification." *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499-500 (D.N.J. 2000). Accordingly, "[t]he decision to certify a class calls for findings by the court, not merely a threshold showing by a party, that each requirement of Rule 23 is met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir.2008); *Garcia v. Freedom Mortgage Corp.*, 274 F.R.D. 513, 516 (D.N.J. 2011).

Decisively here, Rule 23(b)(3) dictates that a class cannot be certified "if any questions affecting individual members" predominate over "questions of law and fact..." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 156 (3d Cir. 2002). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311; *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001).

A plaintiff's task under Rule 23(b)(3) therefore is to show that the essential elements of his or her cause of action are capable of proof through evidence that is common to the class, rather than evidence unique to each individual class member. *See id.* at 311-12. This is a "stringent" test, requiring a plaintiff to make a "significant showing" that individualized issues

do not predominate over questions of law and fact.  *Sullivan v. DB Investments, Inc.*, 667 F.3d

273, 297 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 1876 (2012) *reh'g denied*, 132 S. Ct. 2451

(2012); *Gutierrez v. Johnson & Johnson*, 269 F.R.D. 430, 435 (D.N.J. 2010).  "Where common

proof is not available, but instead, separate mini-trials are required, courts have found that the

staggering problems of logistics thus created make the case unmanageable as a class action."

*Novak*, 259 F.R.D. 106, 114 (D.N.J. 2009) (denying certification, finding that common issues did

not predominate in determining whether exemption under NJWHL applied to class members).

**B.    This Action Does Not Meet the Requirements of Rule 23(b)(3), Because Individual Issues Predominate Over Common Questions of Law and Fact.**

      1.    <u>Questions affecting individual class members will predominate over questions common to the class.</u>

Turning first to the Rule 23(b)(3) requirements, Plaintiffs' claims fail because the

undisputed facts and admissions to date establish that varying circumstances as to each

independent contractor "installer" predominate over any common issues alleged by Plaintiffs.

Plaintiffs' primary claim is for class relief under the New Jersey Wage and Hour Law,

34:11-56a et seq. ("NJWHL") (*See* Count I of Amended Complaint).  The determination of

whether each independent contractor who worked as an installer is an "employee" within the

meaning of the NJWHL requires consideration of three factors set forth under New Jersey's

Unemployment Compensation Law, N.J.S.A. 43:21-1 et seq. ("UCL").  N.J.A.C. 12:56-16

(providing that the UCL and interpreting case law will be used to determine whether an

individual is an employee for purposes of the NJWHL).  Pursuant to the UCL, a worker is

deemed an employee unless he or she is able to satisfy the criteria of the so-called "ABC test":

    (A)    Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(B)    Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C)    Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J.S.A. 43:21-19(i)(6)(A), (B), (C).

          a.    *Cardo installers are admittedly free from control and direction in the performance of their services, both under contract and in fact.*

Looking first to the contract issue, it is uncontested that both Adami and Varner signed independent contractor agreements with Cardo, confirming their status as independent contractors, free of direction and control in the performance of their services. Counterstatement of Facts at ¶¶ 38-42 (hereinafter referenced as "CS ¶ _".)  This status was repeatedly affirmed by Adami, his accountant and his insurance agent.  C.S. ¶ 11.

On the parallel issue of whether they were free from control or direction "in fact," the two named Plaintiffs freely admitted in their depositions that they had no supervision or control from Cardo at job sites when performing their installation services. C.S. ¶¶ 53-56.  Installers had to call Cardo only one time each day to report the status of the job they were working on.  *Id.* ¶ 56.[1]  Affirming their independence, Plaintiff Varner admitted that installers were allowed to make their own schedules based on their own availability, and that he would provide to Cardo days on which he was available to work. *Id.* ¶¶ 48-51.  This resulted in Varner often working only a few days a week during many periods throughout 2010 and 2011 (*id.* ¶ 49), contrary to the false assertion in Plaintiffs' motion and amended complaint that "all" installers were "required" to work six days per week.  Installers also often worked less than eight hours per day (*id.* ¶¶ 48,

---

[1] Plaintiffs argue that they are somehow employees because Cardo provided plans designating which custom-built windows went where for each customer.  Such plans are an essential part of any construction job – just as a builder must rely on an architect's plans – and do not in any way establish that a contractor is being "controlled" in how he performs his installation services.

41), and could spread assigned work over two days, contrary to Plaintiffs' false claim in their motion that all work had to be completed on the same day (*id.* ¶ 50). Plaintiff Varner also admits that installers were not required to wear Cardo uniforms or clothing, contrary to Plaintiffs' motion and complaint. *Id.* ¶ 52. Finally on the issue of control and direction, Plaintiffs' inflated claims about training are defeated by their own testimony, in which both admit they received and required no training (or less than one day in Adami's case) in their years of providing services for Cardo. *Id.* ¶¶ 43-47. In sum, when one looks behind Plaintiffs' veil of allegations, their testimony as to the actual facts establishes that Cardo did not supervise or control their work.

             b.    *Cardo installers work at the residences of customers, which is outside of all the places of business of the enterprise.*

      With regard to the second prong, the New Jersey Supreme Court has held that work conducted at the residences of customers is outside of the places of business of the enterprise, and therefore meets part (B) of the ABC test. *Carpet Remnant Warehouse, Inc. v. New Jersey Dept. of Labor*, 125 N.J. 567, 582 (1991). In this case, it is undisputed that installers perform their window installation work at customer residences. Cardillo Cert., Ex. 5 at ¶ 3.

             c.    *Plaintiffs establish by their own examples that they are customarily engaged in an independently established trade, outside of Cardo, as are most installers at issue.*

      The third prong considers whether a person has a business, trade or occupation that will clearly continue despite termination of the challenged relationship. *Carpet Remnant*, 125 N.J. at 582. Proof that a worker regularly works for other employers is evidence of an established profession. *Koza v. N.J. Dept. of Labor*, 282 N.J. Super. 560, 568 (App. Div. 1995). The New Jersey Supreme Court has held that **this "determination is fact-sensitive**, requiring an evaluation in each case of the substance, not the form, of the relationship." *Carpet Remnant*, 125

N.J. at 581 (reversing DOL's determination that carpet installers operated under carpet company's control, noting that installers could accept or reject any job) (emphasis added).

Plaintiffs admit that window installation is customarily done by independent contractors in the industry, including major regional and national businesses such as Sears, Home Depot, Lowe's and Zaza Corp. CS ¶¶ 8-10.  Moreover, Plaintiffs each worked as independent contractors in window installation and related home remodeling before, during and after providing services at Cardo, establishing that their work continued despite the termination of their relationship with Cardo. *Id.* ¶¶ 37, 66, 69, 70.  Varner admits he openly performed similar work for others while performing services at Cardo, without any adverse consequences from Cardo, and Adami admits he did not perform services exclusively for Cardo. *Id.* ¶¶ 65-66. Plaintiffs also admit that they have substantial investments (roughly $45,000 per year) in the commercial vehicles, equipment, insurance and helpers to perform their work (*id.* at ¶¶ 12-19) – facts typical of an independent tradesman, not an employee. *Carpet Remnant*, 125 N.J. at 592-93.

Other individualized issues further complicate the Court's analysis of this prong.  While Adami testified that many installers provide their services through a corporate entity, often with large crews of workers paid by the contractors, Adami and Varner worked as sole proprietors. CS ¶¶ 67-70.  In addition, while the testimony establishes that most installers at Cardo operated with at least one helper, some used no helpers, and one installer company used up to a 12-person crew, greatly complicating the Court's analysis under this prong.  *Id.* ¶¶ 18-24.

Moreover, evidence as to other installers demonstrates that most worked for Cardo very briefly, and then moved on to work independently or for other window companies, *id.* ¶¶ 57-63, revealing their lack of dependence on Cardo for employment.

In short, the examples of Plaintiffs and other installers demonstrate that, despite their varied circumstances, all are engaged in an independent trade as window installers and home repair contractors, independent of their work for Cardo.

        d.    *Individual issues of fact and law will predominate over any common questions, due to vast differences in the class proposed.*

As noted in the Counterstatement of Facts, Plaintiffs' cannot dispute that other issues of fact and law vary from installer to installer and determining whether each is a bona fide independent contractor or an employee will require individualized Court analysis, predominating over any common issues, including:

- **Whether the installers own their own vehicles and equipment, which is a factor indicating an independent contractor.** CS ¶¶ 12-17.

- **Whether each installer performs enough work in New Jersey to be subject to the NJWHL.** *See id.* ¶ 62 and Section I.C., below.

- **Whether installers employ "helpers" and how many.** It is well established within the Third Circuit that a worker's ability to hire his or her own assistants indicates independent contractor status. *Metropolitan Pilots Ass's, LLC v. Schlosberg*, 151 F.Supp.2d 511, 523 (D.N.J. 2001) (Cooper, D.J.) ("An individual who can hire his own assistants may be considered an independent contractor."); *Hicks v. Mulhallan*, 2008 WL 1995143, *3 (D.N.J. May 5, 2008) (Wigenton, D.J.) (considering fact that plaintiff employed other individuals to assist him in providing services for defendant in concluding that plaintiff was independent contractor). *See also Nationwide Mut. Ins. C. v. Mortensen*, 606 F.3d 22, 32 (2d Cir. 2009) (noting that plaintiffs hired their own employees in finding that plaintiffs were independent contractors); *Janette v. Am. Fid. Grp., Ltd.*, 298 F. App'x 467, 475-76 (6th Cir. 2008 (finding that plaintiff's ability to hire her own assistants weighed in favor of independent contractor status, even though plaintiff did not exercise her authority to do so).

- **Whether the installers are independent corporate entities or sole proprietorships.** Courts of this and other circuits consistently find that a worker's establishment, operation or management of his or her own business is indicative of that worker's status as an independent contractor. *See, e.g., E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 38 (3d Cir. 1983) (considering that plaintiffs had independence to establish their own business operations in affirming lower court's finding that plaintiffs were independent contractors); *Murray v. Playmaker Services, LLC*, 512 F. Supp. 2d 1273, (S.D. Fla. 2007) (finding that plaintiff's creation of a corporate entity weighed in favor of finding that plaintiff was independent contractor); *Ruiz v. Affinity Logistics Corp.*, 887 F. Supp. 2d 1034, 1049 (S.D. Cal. 2012) (finding that plaintiffs'

establishment of individual businesses weighed in favor of finding an independent contractor relationship). CS ¶¶ 67-70.

- **To what extent the installers worked for Cardo only temporarily** or for extended periods of time, pertinent to the issue of permanence of the relationship. *Id.* ¶¶ 57-58.

- **The hours that each installer worked for Cardo versus other entities** (which is unknown to Plaintiffs), and whether each installer frequently took days off – as was the case with Varner, as demonstrated by his Cardo records. *Id.* ¶¶ 48-51, 73-77.

- **The level of experience, training and skill each installer brings to the job** – from Varner's admission of no training, to Plaintiffs' claim that some installers require received thousands of dollars of training. *Id.* ¶¶ 43-47.

- **The extent to which each installer could experience profit or loss,** including issues as to equipment costs, "helpers," and efficient performance of the work, which was paid on a piece rate. *Id.* ¶¶ 25-32.

- **Which facility each installer worked out of and the varied circumstances of that facility,** as Plaintiffs' knowledge and experience is limited primarily to the Mount Laurel facility, and the operations of each facility varied greatly. *Id.* ¶¶ 3-5.

In assessing whether the NJWHL is applicable to the Plaintiffs as employees, the Court, at a minimum, will have to conduct an individualized assessment across the class of whether each class member was a bona fide independent contractor, considering all of the above issues under the applicable tests and precedents.

Importantly, courts repeatedly hold that this fact-intensive inquiry as to whether each independent contractor installer should be reclassified as an employee is not appropriately conducted on a class-wide basis. *See, e.g., Gutierrez*, 269 F.R.D. at 437 (holding that occupational diversity of putative class members militates against a plaintiffs' allegations of commonality); *Schwann v. FedEx Ground Package Sys., Inc.*, No. 11-11094-RGS, 2013 WL 1292432, *3-4 (D. Mass. Apr. 1, 2013) (denying class certification, finding that determination of whether state wage and hour law applied to plaintiffs as employees required individual factual inquiries not appropriately adjudicated on class-wide basis); *Shayler v. Midtown Investigations, Ltd.*, No. 12-4685 KBF, 2013 WL 772818, *9 (S.D.N.Y. Feb. 27, 2013) (holding certification of class of workers asserting claims under New York labor laws had not satisfied predominance

requirement, and finding that "[t]he inquiry as to whether an individual is an independent

contractor or employee is fact specific and may be employee specific..."); *Edwards v. Publishers*

*Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 188-89 (S.D.N.Y. 2010) (same, applying New

York law); *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 273 F.R.D. 516,

520 (N.D. Ind. 2010) (denying class certification for putative statewide classes because of

individualized proof required regarding defendant's treatment of drivers).

Plaintiffs' belated effort to add "helpers" to the class would further widen the disparities,

ensuring that individual issues would predominate and divide the class.  As Plaintiffs' own

testimony shows, the "helpers" are much less skilled than the installers, do not have their own

equipment or vehicles, do not employ others to do their work, require different levels of training,

do not experience a risk of profit or loss from their work (as they are paid per diem), have no

direct contact with Cardo managers, and are paid by the installers, not Cardo. CS ¶¶ 18-24.

> 2.  A class action is not the superior method for the fair and efficient
>      adjudication of this case.

Given that individualized issues will predominate in the determination central to the

Plaintiffs' state-law claims, requiring an endless series of "mini-trials" as to each purported class

member, considerations of fairness and judicial economy dictate that these claims should not be

determined on a class-wide basis. *See Merlo v. Fed. Exp. Corp.*, No. 07-4311, 2010 WL

2326577, at *8 (D.N.J. June 7, 2010) (holding that class litigation was not superior to other

methods of adjudication where deposition testimony established that resolution of unpaid worker

claims would require individualized inquiries as to each class member's work for defendant).

Federal courts are clear in holding that class litigation is not the superior method to adjudicate

claims where individual issues of fact predominate over common issues. *See, e.g., In re*

*Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311; *Newton*, 259 F.3d at 172.  In the case at bar,

as noted above, the individual issues of fact as to the nature and independence of each proffered class member's business, and where, when, how and how much he worked with Cardo, will all be crucial to the NJWHL claim being asserted, and are likely to dominate any questions common to the proposed class. Plaintiffs' claims therefore would be more efficiently addressed through the individual adjudication of installers wishing to bring claims against Cardo, and not through a prolonged and complex class action involving dozens of individual mini-trials as to each class member's independent contractor status, hours worked, level of control and autonomy, independence as a business, pay rate, and damages, etc.

C.   **Plaintiffs Have Failed To Establish That They Have Met the Requirements of Fed. R. Civ. P. 23(a)**

1.   Plaintiffs lack numerosity and have failed to prove that joinder of potential class members would be impractical.

In order to satisfy the numerosity requirement, Plaintiffs also must show that the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts within the Third Circuit generally hold that the numerosity requirement is not satisfied when there are less than forty potential class members. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (numerosity requirement not met when plaintiff failed to present evidence of more than 40 potential class members); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 74 (D.N.J. 1993) (holding that potential class of 38 members was "not so large as to preclude joinder of all potential plaintiffs.").

Plaintiffs have failed to demonstrate that the proposed class is sufficiently numerous within the meaning of the Rule. First, their proposed class includes **installers performing work outside the state of New Jersey, to which New Jersey Law, including the NJWHL, does not apply**. *See, e.g., Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 383 (S.D.N.Y. 2012) (applying New Jersey law and holding that plaintiff who alleged violations of the NJWHL

"must have worked in New Jersey" to avail himself of this law); *Norris v. Harte-Hanks, Inc.*, 122 F. App'x 566, 569 (3d Cir. 2004) (dismissing New Jersey resident's claims brought under New Jersey's Conscientious Employee Protection Act, finding that plaintiff was employed in Pennsylvania and the conduct alleged, including plaintiff's termination, occurred in Pennsylvania); *Papalini v. Sensient Colors, Inc.*, No. 11-6392, 2012 WL 1345353, *3 (D.N.J. Apr. 18, 2012) ("This restriction on the extraterritorial application of the NJLAD is rooted in the well-settled understanding that New Jersey law regulates conduct in New Jersey, not outside the state.") (internal quotation marks and citations omitted); *Buccilli v. Timby, Brown & Timby*, 283 N.J. Super. 6, 10 (App. Div. 1995) (finding that Pennsylvania substantive law governed claims by plaintiff whose "employment began and ended in Pennsylvania").

Focusing only on New Jersey-based individuals who worked as installers predominantly in New Jersey since 2009, the number of installers is only 28. CS ¶ 62.c.

Second, any calculation as to numerosity must exclude installers who earned less than $3,000 from Cardo over the four-year period from 2009-2013, and self-evidently did not work the 40 hours in any week required to claim overtime pay. *Id.* ¶ 62.b. These extremely short-term installers also are not comparable to Plaintiffs' long-term service, and are clearly temporary independent contractors, to whom the NJWHL and wage and hour laws do not apply. *See, e.g., Talbert v. Am. Risk Ins. Co., Inc.*, 405 F. App'x 848, 856 (5th Cir. 2010) (holding that worker whose working relationship with defendant was "brief" and "temporary" was not an employee for purposes of FLSA); *Waxman v. Hardaway Const. Co., Inc.*, 693 F. Supp. 587, 591 (M.D. Tenn. 1988) *aff'd sub nom. Waxman v. Luna*, 881 F.2d 237 (6th Cir. 1989) (construction worker who sporadically performed work for defendant not considered defendants employee for purposes of ERISA); *Rafferty v. New York Mercantile Exch. Long Term Disability Plan*, 133 F.

Supp. 2d 158, 161 (E.D.N.Y. 2000) ("Performing occasional work for an entity is insufficient to establish an employer-employee relationship.").

Third, Plaintiffs try to inflate the class by including "helpers," who (1) were not identified in the Amended Complaint as potential class members, and (2) cannot be considered employees of Cardo because they were selected, controlled and paid by the installers themselves, and not Cardo. CS ¶¶ 18-24. *See Alloway v. Bradlees, Inc.*, 157 N.J. 221, 239 (1999) (holding that employment relationship did not exist between general contractor and employee of subcontractor where general contractor did not exercise supervisory control over employee of subcontractor); *Pollack v. Pino's Formal Wear & Tailoring*, 253 N.J. Super. 397, 404 (App. Div. 1992) (finding that statute making general contractor liable for worker's compensation insurance due to employee of subcontractor does not create employer-employee relationship between general contractor and employee of subcontractor).

Fourth, the 18 independent contractors who have signed mandatory arbitration and class action waiver agreements should not be included in the class. CS ¶¶ 62.d., 82-83. *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (upholding class action waivers in favor of binding arbitration).

Once these persons, to whom the NJWHL does not apply, are excluded from Plaintiffs' definition of the proposed class, Plaintiffs are left with roughly their "14 core installers." This number is well below the 40-person minimum threshold set by the Third Circuit for class actions.

Moreover, Plaintiffs have failed to demonstrate in any way that the joinder of the members of the proposed class "is so inconvenient or difficult that class certification is required." *Liberty Lincoln*, 149 F.R.D. at 74 (finding that "whether viewed as a potential class of 38 or 123 members, this number is not so large as to preclude joinder of all potential plaintiffs").

2.   <u>The potential class lacks commonality because the question of whether each installer is an employee cannot be determined by proof that is common to the class.</u>

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . . This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Third Circuit courts consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to analyze the two factors together, with particular focus on the predominance requirement. *Sullivan v. DB Investments, Inc.*, 667 F.3d at 297. Because Plaintiffs have failed to pass the predominance test under Rule 23(b)(3), as discussed in Section I.B., above, Plaintiffs likewise fail to meet the commonality requirements of Rule 23(a).

3.   <u>Plaintiffs do not satisfy the typicality requirement because neither Adami's claims nor Cardo's claims against him are typical of the proposed class.</u>

Adami's individual claims against Cardo, and the company's counterclaims against him, are atypical of the proposed class, rendering this action inappropriate for class certification.

"The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal*, 43 F.3d at 57. This investigation focuses on: (1) the similarity of the legal theory and legal claims; (2) the similarity of the individual circumstances on which those theories and claims are based; and (3) the extent to which the proposed representative may face significant unique or atypical defenses to her claims. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009). The typicality requirement disqualifies a class from certification where the legal theory of the named plaintiff potentially

conflicts with the legal theory of the unnamed class members. *Baby Neal*, 43 F.3d at 57.  "It is well established that a proposed class representative is not 'typical' under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  *In re Schering Plough*, 589 F.3d at 598 (internal marks and citations omitted).

Here, the individually asserted tort claims of Plaintiff Adami, and the counterclaims against him for fraud and conversion, are not typical of the proposed class and its supposed claim for overtime pay and benefits under state and federal law.  Unlike any of the members of the proposed class, Adami seeks to recover for slander, wrongful termination and for manager's pay and benefits he claims is due.  Am. Comp., Counts XI-XIV.  He is also subject to various counterclaims by Cardo arising from his theft of materials and funds from Cardo, an ongoing scheme to defraud the company of funds, and tortious interference with Cardo's contract with a former owner, Roderick Arce, which Adami did in knowing violation of the non-solicitation clause contained in Arce's separation agreement.  Defs.' Answer to Compl. [Docket Item 6], Counterclaim Counts I-V.  None of the other proposed plaintiffs, to Defendants' knowledge, is individually asserting any claims or subject to liability for unlawful behavior against Cardo.  Adami's claims and legal theory for recovery in this case are therefore distinct and dissimilar from those of the proposed class members.  Furthermore, given the extensive nature of the unlawful scheme Adami and Arce engaged in against the company during the period of time relevant to the Amended Complaint, those counterclaims are likely to dominate a large portion of this litigation.  Even if Plaintiffs seek to bifurcate the trial, the evidence of Adami's fraud, theft and misdeeds against Cardo will be admissible in the class litigation to impeach his credibility.

Adami also may present an atypical situation in that his accountant and insurance agent both admitted to Cardo, on Adami's behalf, that he was an independent contractor, and should be paid, treated and taxed as such. CS ¶ 11. Other class members may not have such admissions.

Plaintiffs Varner and Adami both are among the "14 core installers" and Cardo, admittedly distinct from the majority of installers who come and go monthly through a "revolving door" of installers at the company. CS ¶¶ 62.b., 63.

Finally, Plaintiffs Varner and Adami also are unique and atypical from the class in that they both admit they have willfully failed to file federal income taxes for years. CS ¶ 28. They also have failed to pay their "helpers" as employees, or report their income to the IRS as wages, instead paying them cash as independent contractors, despite their claims in this litigation that such "helpers" should be paid as employees. CS ¶¶ 23. The admissions of flagrant and chronic violations of tax laws and tax evasion will be highly relevant in determining their credibility (or lack thereof) and profits earned, and their hypocritical treatment of their own "helpers" as independent contractors will undermine their claims, and show that the industry custom is contrary to their assertions here. Any proposed class would be hamstrung by the misdeeds, admitted tax evasion, and inconsistent behavior (paying their "helpers" as independent contractors, rather than employees) of the named Plaintiffs.

Finally, as noted above, Plaintiffs are not typical of a large share of the class as they did not incorporate their businesses – which is relevant to determining independent contractor status.

4.    As to Adequacy, Plaintiffs' individual interests in this lawsuit compete with those of the proposed class.

The adequacy requirement has two components. First, the court considers whether a plaintiff's attorney is qualified, experienced, and able to conduct the litigation. *In re Prudential*

*Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir.1998). Second, it considers whether any conflicts of interest exist between the plaintiff and the proposed class. *Id.*

Plaintiffs fail in both respects. Plaintiffs have not submitted sufficient evidence demonstrating that their attorney is qualified and able to manage this class litigation. Similar to the Hannye Certification upon which Plaintiffs' statement of fact relied, the Certification of Adequate Representation submitted by him contains conclusory statements such as "I have experience in complex multiparty litigation," without providing any factual support for such conclusions. *See* Certification of Adequate Representation at ¶¶ 5-6. Importantly, Mr. Hannye fails to cite a single class action he has managed or even participated in on behalf of plaintiffs in relation to a wage and hour claim. These unsupported conclusions therefore fail to satisfy the first part of the adequacy requirement. *See* L. Civ. R. 7.2(a).

As to the conflict question, Hannye has long represented a direct competitor of Cardo, Zaza Corp., including in an ongoing bankruptcy proceeding for Zaza that is adverse to Cardo, and could be perceived to be using this case to exact retribution from Cardo for Zaza's past losses. CS ¶ 92, 95. Hannye's position in this litigation also contradicts the interests of his client, Zaza, as the record establishes Zaza also has treated its installers as independent contractors, not employees. Ex. 7 to CS, CS ¶ 93. Moreover, Hannye has repeatedly socialized with a key witness in this case, Rod Arce, and Arce contacted Hannye to provide him with legal advice about competing with Cardo. *Id.* ¶ 91. These overlapping and conflicting roles make Plaintiffs' counsel a compromised representative for both the named Plaintiffs and the putative class.

## II.   PLAINTIFFS DO NOT MEET THE STANDARD FOR CERTIFICATION OF A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT

The class proposed by Plaintiffs – consisting of any and all persons who performed any window installation services for Cardo Windows at any time since May of 2009, including

installers whose work could be described only as temporary, and "helpers" – who were hired, paid and managed by the installers, and did not share the same job responsibilities – should not be conditionally certified for two critical reasons.  First, this case will necessarily involve the individualized determination of whether each person performing window installations was an independent contractor or "employee" of Cardo under the Third Circuit's multi-factor economic realities test.  Second, Plaintiffs have installed windows for Cardo Windows customers located in New Jersey off-and-on for several years, and cannot show that they are similarly situated to the short-term workers, "helpers" and remote workers in other states, who worked from other facilities, which they now propose as class members.

A.   **Plaintiffs Must Prove That They Are "Similarly Situated" to the Proposed Class Members to Qualify for Conditional Certification**

In order for one or more employees to bring an action in a representative capacity under the FLSA, the named plaintiffs must show that they are "similarly situated" to the other prospective members of this action.  *See* 29 U.S.C. § 216(b); *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  While the statute does not define the term "similarly situated" and neither the United States Supreme Court nor the Third Circuit Court of Appeals has provided a framework for conducting the "similarly situated" analysis under § 216(b), the District of New Jersey has increasingly adopted a more rigorous standard than other district courts, requiring a plaintiff seeking certification to demonstrate "a factual nexus" to its claim of being similarly situated.  *White v. Rick Bus Co.*, 743 F.Supp.2d 380, 387-88 (D.N.J. 2010).  Accordingly, courts have declined to grant conditional certification to plaintiffs relying on affidavits or certifications with sparse factual support.  *See id.* at 388 (noting that plaintiffs did not set forth names or job descriptions of any similarly situated employees, or years in which those employees worked).

19

**B.**     **The Determination of Whether a Worker is an Independent Contractor or Employee Under the Fact-Specific Economic Realities Test Cannot Be Made on a Class-Wide Basis**

In order to determine whether the FLSA covers the named Plaintiffs and the persons proposed as collective action members, the Court will be required to analyze whether these persons "are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors." *Bamgbose v. Delta-T Group, Inc.*, 684 F.Supp.2d 660, 669 (E.D. Pa. 2010). It is a widely recognized principle that the question of whether claimants are employees of a defendant within the meaning of the FLSA depends on "the individual facts and circumstances relating to the various contractors and the activities at each separate store location." *Zavala v. Wal–Mart Stores, Inc.*, No. 03-5309, 2010 WL 2652510, at *5 (D.N.J. June 25, 2010) (Brown, C. J.).

The test for determining whether an individual is an independent contractor or employee for purposes of the FLSA requires consideration of the following six factors: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3d Cir.1985); *see also Chen v. Domino's Pizza, Inc.*, 2009 WL 3379946, *4 (D.N.J. Oct. 16, 2009) (Pisano, D.J.).

Due to the complex and fact-specific analysis required as to each independent contractor, **courts inside and outside this Circuit repeatedly hold that this individualized determination as to independent contractors is not properly made on a class-wide basis.** *See, e.g.,*

*Bamgbose*, 684 F. Supp. 2d at 669 (finding that evaluation of whether plaintiffs were employees "would not be possible on a collective basis because it would require the Court to examine the [plaintiffs'] distinct relationships with [defendant]"); *Spellman v. Am. Eagle Exp., Inc.*, No. 10-1764, 2013 WL 1010444, *3 (E.D. Pa. Mar. 14, 2013) (holding that "because the test for determining whether a worker is an employee or an independent contractor under the FLSA requires an individualized examination of the worker's actual relationship with the alleged employer, the varying employment circumstances of the collective class members create individual defenses and make this case unsuitable for collective treatment"); *Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) ("Although each named and putative plaintiff in this lawsuit is a welder, the court must conduct an individualized analysis to determine whether each welder is an employee or an independent contractor under the FLSA. The court finds that this individualized analysis precludes class certification."); *Demauro v. Limo, Inc.*, No. 8:10- 413-T-33, 2011 WL 9191, *3-4 (M.D. Fla. Jan. 3, 2011) (denying motion for conditional certification for similar reasons); *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009) (denying motion for conditional certification for similar reasons); *Bunyan v. Spectrum Brands, Inc.*, No. 07-0089, 2008 WL 2959932, *9-10 (S.D. Ill. July 31, 2008) (denying motion for conditional certification for similar reasons); *Pfaahler v. Consultants for Architects, Inc.*, No. 99-6700, 2000 WL 198888, *3 (N.D. Ill. Feb. 8, 2000) (denying motion for conditional certification for similar reasons).

Applying the economic realities test to Adami and Varner, who admittedly were two of the most long-serving installers at Cardo Windows, it is highly doubtful that even they could qualify as employees at Cardo, given that they contracted to be independent contractors, they were skilled contractors, they owned their own tools and vehicles, they hired their own crews,

they worked outside of Cardo's facilities, they realized profit and loss, they had complete control over how to complete their daily installation work, and the industry norm is to treat such installers as independent contractors. CS ¶¶ 8-55. More importantly to this motion, due to the wide range of independent contractors proposed for the class - including corporations, individuals, highly experienced installers, novice "helpers" and others working from remote states and other facilities – a highly fact-specific analysis would be required of each independent contractor in the purported class to determine if he, she or it (as to corporations) should be re-classified as an employee. This necessity for an individualized review will defeat the named Plaintiffs' efforts to convert this suit into a collective action. *See Bamgbose*, 864 F. Supp. 2d at 669 (denying motion for conditional certification where individualized inquiry into each potential plaintiff's employment status was required); *Spellman*, 2013 WL 1010444, *3 (same).

As set forth in the Counterstatement of Facts (¶¶ 57-79, 82-83), the circumstances of each installer varies widely, and few match up with the relevant factors that apply to Adami and Varner. Some worked part-time for Cardo, and pursued other projects for other employers. Some worked for Cardo for only a few days or weeks, and then went on to other jobs for other companies, while others chose to continue working with Cardo for years. Some have crews of 8-10 employees whom they manage, control and pay through their for-profit corporations when they provide services for Cardo, while others work as sole proprietors.

Plaintiffs' belated attempt to pull in the "helpers" as part of the class also further splinters the independent contractor analysis. These workers were individually hired, controlled and paid by different installers (and not by Cardo Windows), at varying per diem rates and under conditions that the installers themselves – not Cardo – decided. CS ¶¶ 18-24.

**C.    The Named Plaintiffs Are Not Similarly Situated to the Majority of the Putative Class Members They Propose to Represent**

22

Plaintiffs' motion for conditional certification also should be denied because neither Adami nor Varner is similarly situated to most of the proposed members of the collective action.

The law requires Plaintiffs to demonstrate that a "factual nexus" exists between themselves and putative class members. *See Rick Bus*, 743 F.Supp.2d at 387-88.

To review the salient facts admitted by Plaintiffs: Adami and Varner each provided services for Cardo Windows over the course of several years, and were among the "14 core installers" that the company used to install its windows in the 2009-2011 time-frame. Both operated as sole proprietors, and not through a corporation or other entity. Both paid for their own liability and workers' compensation insurance, for themselves and their helpers. CS ¶¶ 17. 69-70. Both employed a variety of "helpers" that they paid directly to assist them in completing work for Cardo Windows. *Id.* ¶¶ 18-24. Both had their own trucks and window-installing equipment. *Id.* at ¶¶ 12-17. Both worked primarily in New Jersey, picking up their orders from the Mount Laurel office. *Id.* ¶ 5. Both performed window-installing work for other entities before, during and after they worked for Cardo Windows. And both earned in excess of $100,000 per year in 1099 pay from Cardo Windows, reflecting the high volume of work they and their crews performed for Cardo. *Id.* ¶¶ 25, 27.

While these facts may show common interests with the "14 core installers" like them, who worked predominantly for Cardo Windows for a number of years, they have not established any factual nexus exists between themselves and the majority of the putative class members.

1.   <u>Helpers are Not Similarly Situated to Plaintiffs, Who Worked As Skilled Tradesmen with their Own Equipment, Employees and Businesses</u>

Approximately half of the proposed class identified by Plaintiffs is made up of "helpers," who the installers like Adami and Varner hired to assist in performing their assigned work. Contrary to the Plaintiffs' unsubstantiated allegations that they were required to hire "helpers" or

told what to pay them, both Adami and Varner admitted they chose their helpers, they decided how much to pay them, and they often changed helpers. CS ¶¶ 19-20, 23.

In addition, the "helpers" should be removed from the class because they were not identified by Plaintiffs in the Amended Complaint as proposed class members.

> 2.     Plaintiffs Are Not Similarly Situated to Persons Who Performed Only Limited or Spot Work for Cardo Windows

Plaintiffs -- who were two of "14 core installers" (Pl. Br. at 24) for Cardo Windows over several years -- are not similarly situated to the temporary and short-term installers who make up the vast majority of the proposed class.  These short-term installers would work for Cardo for a few days, weeks or months, and then move on to other companies and projects, as is typical for independent contractors.  CS ¶¶ 63-64.

Plaintiffs themselves estimate that more than 80 percent (60 of the 74, by their count) of the "installers" they claim to be in the class are temporary, short-termers, and not the "14 core installers" like them.  This distinction is important because the Plaintiffs' long-term relationship with Cardo Windows is a pertinent fact in the independent contractor analysis, as is the fact that Adami and Varner, as long-term installers for Cardo Windows, were asked to perform additional duties (such as a probationary stint for Adami) that were not typical of the short-term installers. Moreover, these short-term installers continued to work for other companies, before, during and after their projects for Cardo Windows, which is relevant to the "degree of permanence" analysis. *Donovan*, 757 F. 2d at 1382. In contrast, Adami and Varner, for their own personal reasons (including Adami's receipt of preferential treatment from Rod Arce), **chose** to work almost exclusively for Cardo Windows and earns hundreds of thousands of dollars doing so, although they both admit (CS ¶¶ 65-66) that they could and did perform work for other customers during, before and after their time with Cardo Windows.

24

Plaintiffs' IRS 1099 Forms for the years 2010 through 2011 reveal that they performed window installation services for Cardo Windows for more than a *de minimis* period of time, and that they were compensated for a large number of window installations. *Id.* ¶¶ 25-27, Ex. 15. These amounts earned – namely $175,262.00 and $75,373.19 by Mr. Adami and $157,298.50 and $115,640.58 by Mr. Varner in 2010 and 2011 respectively – serve as examples of an installer's potential for profit, depending on their managerial and technical skill.

The year-end totals shown on the 1099 Forms for many of the proposed plaintiffs, however, vary widely from those totals for Plaintiffs. *Compare* Exhibit 13.d. at CARDO WINDOWS 001163 (showing a total of $513,631.55 earned in 2010), *with* CARDO WINDOWS 001178 (showing $1,167.69 in annual earnings for the same year by another installer). This variation in duration of work is corroborated by uncontradicted testimony, including Plaintiff Adami's own admission, that more than half of the installers are temporary and stop performing services for the company within a few days, weeks or months of starting. CS ¶ 63. This variation is in part due to the fact that installers were not prevented from performing services for other companies. Indeed, Plaintiff Varner admits that he did not sign a non-compete agreement as part of his contract with Cardo Windows, that no one at Cardo Windows prevented him from doing outside work, and that on at least one occasion he performed home remodeling services outside of Cardo during a period when he was also performing services for Cardo Windows. CS ¶ 66.

     3.    <u>Plaintiffs Have Not Shown That They Are Similarly Situated To Entities that Install Windows As Independently Established Businesses</u>

The named Plaintiffs both operated as sole proprietorships and did not incorporate at the time they performed services for Cardo (even though they did hire employees). Unlike these Plaintiffs, 27 of Cardo's installers were incorporated business or partnerships, with the different tax and employee treatment that follow such incorporation, including one contractor with nearly

16 employees and almost $500,000 in annual revenues from Cardo alone.  CS ¶¶ 34, 68.

Plaintiffs are not similarly situated to these 27 business entities, and have not even attempted to

explain how such entities could join them as members of a collective action.

4.      Plaintiffs Have Not Proffered Any Evidence Showing They Are Similarly
        Situated to Persons Working Outside of New Jersey

The potential class of installers proposed by Plaintiffs also is not similarly situated

because it includes installers who work outside of the named Plaintiffs' geographical area. *See,*

*e.g., Mitchel v. Crosby Corp.*, No. 10-2349, 2012 WL 4005535, *3 (D. Md. Sept. 10, 2012)

(declining to certify class that included workers at other facilities); *Faust v. Comcast Cable*

*Comms. Mgmt., LLC.*, No. WMN–10–2336, 2011 WL 5244421, at *4 (D. Md. Nov.1, 2011)

(limiting conditional certification of FLSA class to one of eight Maryland call centers because

even though employees at all call centers perform the same tasks and are subject to the same

company policies, "Plaintiffs have failed to provide any concrete evidence" demonstrating that

employees at other facilities had been victims of the same illegal policies); *Camper v. Home*

*Quality Mgmt., Inc.*, 200 F.R.D. 516, 520-21 (D. Md. 2000) (holding that although plaintiffs

preliminarily established the existence of a company-wide policy concerning use of time clocks,

notice to the potential class was warranted with respect to only the one facility where the

plaintiffs made a factual showing); *Shabazz v. Asurion Ins. Serv.*, No. 3:07–0653, 2008 WL

1730318, at *5 (M.D. Tenn. Apr.10, 2008) (denying certification for Houston facility when

evidence only demonstrated violations at Nashville locations).

Contrary to this well-established law, Plaintiffs fail to limit their class to installers who

worked primarily in New Jersey, out of the Mount Laurel facility, as they did.  As such, they

seek to include installers who work out of the Mechanicsburg facility, the Boston facility, the

Connecticut facility, and a northern New Jersey facility, where neither one of them regularly

worked.  The installers who worked in these facilities cover different geographic regions, interact with different people at Cardo, and have circumstances that differ substantially from installers who work out of Mount Laurel.  CS ¶¶2-5.  For example, they certainly do not arrive at the Mount Laurel facility at 7 a.m., and load and unload trucks there, as falsely alleged by Plaintiffs.

Plaintiffs fail to proffer any admissible, direct or specific evidence as to the duties, practices and relevant experiences of Cardo and independent contractors at these other locations.  As such, Plaintiffs have not shown those members of the proposed class to be similarly situated.

## III.   PLAINTIFFS ARE NOT ENTITLED TO TOLLING OF THE STATUTE OF LIMITATIONS WITH RESPECT TO THEIR FLSA CLAIMS

### A.   Equitable Tolling Is Appropriate Only When Defendants Have Caused Potential Plaintiffs To Delay in Joining the Action and Plaintiffs Have Exercised Reasonable Diligence

Plaintiffs' request for the statute of limitations to be equitably tolled for all potential collective action plaintiffs under the FLSA should be denied because they have failed to provide any basis for the application of this rarely applied equitable doctrine.

Within the Third Circuit, there are only three situations in which equitable tolling of this statute of limitations may be appropriate: "(1) if the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum."  *Kelly v. Borough of Union Beach*, No. 10-4124 AET, 2011 WL 551170, *6 (D.N.J. Feb. 8, 2011) (citing *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir.1998)).  Equitable tolling is extended "sparingly" and only where a claimant has acted with diligence to preserve his legal rights.  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  Plaintiffs bear the burden to demonstrate that they exercised reasonable diligence and equitable tolling is appropriate.  *Kelly*, 2011 WL 551170, *6.

### B.   Plaintiffs Have Failed to Demonstrate That the Statute Should be Tolled

Plaintiffs have identified four events that they claim warrant equitable tolling: (A) the Defendants' nondisclosure, pre-certification, of the names and contact information of persons performing installation services for Cardo Windows; (B) an arbitration agreement reached between Cardo Windows and some installers; (C) criminal theft charges that have been brought against named Plaintiff Frederick Adami; and (D) the Partial Motion to Dismiss [Docket Item 22] filed by the Defendants. None of these warrants equitable tolling.

1.  <u>Defendants are not required to provide the potential plaintiffs' names and contact information unless and until the collective action is conditionally certified; Plaintiffs have failed to timely move to compel the discovery.</u>

Contrary to the Plaintiffs' assertions, FLSA defendants are not obligated from the inception of a litigation to provide contact information of putative collective action members. *See Prentice v. Fund for Pub. Interest Research, Inc.*, No. 06-7776 SC, 2007 WL 2729187, *3 (N.D. Cal. Sept. 18, 2007) ("The FLSA, however, does not require Defendants to provide contact information for potential plaintiffs until after the court certifies the collective action."); *see also Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011); *Knutson v. Blue Cross & Blue Shield of Minnesota*, 254 F.R.D. 553, 557 (D. Minn. 2008). Furthermore, "[t]o grant the exceptional remedy of equitable tolling any time an FLSA defendant declines to provide contact information or to toll claims would, in effect, require that the statute of limitations for FLSA claims be tolled as a matter of course for all potential plaintiffs whenever the first plaintiff files her complaint-a result plainly contrary to the procedural rules that govern FLSA collective actions." *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008).

Courts, therefore, routinely deny plaintiffs' requests for equitable tolling on this ground. *Charles v. Nationwide Mut. Ins. Co., Inc.*, No. 09-94, 2010 WL 7132173, *7 (E.D.N.Y. May 27, 2010); *Gerlach v. Wells Fargo & Co.*, No. 05-0585 CW, 2006 WL 824652, *5 (N.D. Cal. Mar. 28, 2006); *Prentice*, No. 06-7776 SC, 2007 WL 2729187, at *3.

In this case, Plaintiffs have known since Defendants' discovery responses in December of 2012 that Defendants were not disclosing the names and contact information of all installers unless and until conditional certification was granted, yet they sat on their hands and did nothing. Further, Plaintiffs disclosed in their discovery responses the names of nearly five dozen alleged installers and "helpers" that performed services for Cardo clients, but have not joined any of them in the suit or produced evidence from any of them to support their claims.  Plaintiffs therefore have failed to show how Defendants' lawful nondisclosure of the names and addresses of installers in any way justifies equitable tolling.

      2.    <u>The arbitration agreements were willingly entered into by installers and have not prevented any installer from joining the collective action.</u>

The Supreme Court recently affirmed the long-standing principles embodied by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), that "arbitration is a matter of contract" and that courts must "rigorously" enforce arbitration agreements according to their terms, even for claims that allege a violation of a federal statute.  *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).  All claims arising under federal law are subject to arbitration where contractually agreed upon unless the FAA's mandate has been specifically "overridden by a contrary congressional command." *See id.*

Congress has not evinced an intention to preclude arbitration of FLSA claims. *See Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 351 (4th Cir. 2008); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).  Federal courts therefore consistently hold that FLSA claims may be resolved through mandatory arbitration. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (granting motion to dismiss, finding that arbitration agreement was binding and that plaintiffs' FLSA claims were subject to arbitration); *Bailey v. Ameriquest Mortgage Co.*, 346 F.3d 821, 824 (8th Cir. 2003) (holding that district court erred in denying the

29

motion to compel arbitration of plaintiffs' FLSA collective action claims); *Walthour v. Chipio Windshield Repair, LLC*, No. 1:12-1491-AT, 2013 WL 1932655, *10 (N.D. Ga. Feb. 27, 2013) (granting defendants' motion to compel arbitration of plaintiffs' FLSA collective action claim); *Torres v. United Healthcare Servs., Inc.*, No. 12-923 DRH ARL, 2013 WL 387922, *5-9 (E.D.N.Y. Feb. 1, 2013) (same).

As set forth in the Counterstatement of Facts, ¶¶ 82-83, Cardo has obtained arbitration agreements from its customers, employees and independent contractors, with the effort starting well before Plaintiffs filed this suit. Nothing in the law requires an employer to stop applying a general policy or practice simply because a purported class action is pending.

> 3.  <u>Adami engaged in criminal conduct warranting criminal prosecution; Cardo has not done anything to intimidate him or potential class members.</u>

Plaintiffs' attempt to characterize Cardo Windows' legitimate criminal complaint against Mr. Adami as inequitable behavior by the defendants must be rejected for several reasons.

First, Plaintiffs have failed to point to any factual support in the record for their baseless contentions that the goal of Cardo Windows in filing criminal charges against Mr. Adami was to intimidate potential collective action members from joining this action. To the contrary, the record fully demonstrates that Adami did in fact misappropriate Cardo property, that he engaged in a scheme to divert Cardo funds to a manager, and that he has previously been criminally prosecuted for other crimes involving theft and dishonesty. CS ¶ 86 and Adami Tr., Ex. 1 at 190:23-194:21. Cardo's decision to seek criminal prosecution was based on the facts and evidence, much of which came to light recently. There is nothing improper from these facts.

Similarly, Plaintiffs have failed to substantiate their false allegation that Defendants' counsel threatened to sue named plaintiff Jack Varner. The cited portions of Varner's deposition transcript completely fail to support their baseless claim, which Defendants adamantly deny.

    4.    <u>The pending motion to dismiss has had no affect on potential plaintiffs'</u>
<u>ability to join this action.</u>

The procedural posture of this case does not warrant equitable tolling of the FLSA statute

of limitations because it has not been caused by any wrongful conduct by the defendants.

Plaintiffs argue that tolling is warranted because defendants have not filed an answer to

the Amended Complaint.  However, Rule 12(a)(4) of the Federal Rules of Civil Procedure

clearly calls for the adjudication of a motion to dismiss before a defendant is obliged to serve its

responsive pleading.  Accordingly, Plaintiffs cannot argue that the Defendants bear responsibility

for any alleged delay.  Further, Plaintiffs have failed to show how potential plaintiffs' rights to

join in this action have been curtailed by the fact that an answer to the Amended Complaint was

not yet filed (especially when an answer to the previous, nearly identical complaint, was filed).

**IV.    PLAINTIFFS' PROPOSED NOTICE TO THE CLASS SHOULD NOT BE
APPROVED BECAUSE THE PROPOSED PLAINTIFFS ARE NOT SIMILARLY
SITUATED AND THE LANGUAGE IS PREJUDICIAL[2]**

    **A.    Plaintiffs Have Not Demonstrated that the Proposed Plaintiffs Are Similarly
Situated**

Notice of a class action should be sent only to potential plaintiffs who are "similarly

situated" to the named plaintiffs within the meaning of the FLSA.  *See Vaicaitiene v. Partners in*

*Care, Inc.*, No. 04Civ.9125,  2005 WL 1593053, *1, *6 (S.D.N.Y. Jul. 6, 2005) (denying motion

for order authorizing notice to employees who did not share the same job title as plaintiff and

who plaintiff failed to show were similarly situated to her).  As discussed above, named

Plaintiffs Adami and Varner cannot show how the "helpers" or most other installers/ independent

contractors were similarly situated to them.

---

[2] Defendants believe this issue would be better addressed upon the issuance of a Court decision, as
needed.  We respectfully request that the issue be revisited, including time and space for detailed briefing
on the issue, should the Court grant class or collective action certification to any extent.

**B.**     **The Language of the Proposed Notice Gives the Appearance of Judicial Endorsement of the Merits of the Action**

Even if the Court were to conditionally certify the proposed collective action, Plaintiffs' motion should be denied because the proposed notice contains prejudicial language and fails to include critical information with respect to Defendants' claims and defenses.

"In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

The proposed notice contains mandatory language that fails to accurately apprise a potential plaintiff of his or her right to decline to participate in the action.  For example, the proposed notice provides that "if you believe you were not properly paid overtime compensation for all weeks that you worked more than 40 hours **you must take this immediate action**…" (emphasis added).  The notice continues by stating in bold, capital letters:

> **YOU MUST SIGN AND RETURN THE OPT-IN CONSENT FORM FOUND ON THE LAST PAGE OF THIS NOTICE WITHIN 60 DAYS OF THE DATE OF THIS NOTICE**

(emphasis in original). This language would prejudicially mislead potential class members to believe they "must" sign and return the opt-in form.  The misleading mandates are prominently featured on the first page of the notice, and the language does not properly state that a potential plaintiff may elect to not submit the consent form.  This language should be amended to state:

> If you believe you were properly paid, you do not need to do anything.  If you believe that you were not properly paid overtime compensation for the weeks that you worked more than 40 hours, you may join in this action by signing and returning the opt-in consent form.  You also may choose not to join this action, and if that is your choice, you do not need to do anything …

The proposed notice also is deficient in failing to set forth any detail regarding the potential plaintiffs' option to join this action without being represented by the named Plaintiffs or the Plaintiffs' counsel. *See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2011) (holding that proposed notice should be amended "to state that participating plaintiffs may retain their own counsel.").

Furthermore, the proposed notice fails to adequately describe in Section 2 the defenses, including Defendants' position that they properly classified installers as independent contractors within the meaning of the law and that each installer must be evaluated individually as to the issue. The description of the lawsuit also improperly refers to class members as "employees" – a hotly disputed legal conclusion. If any notice is issued, therefore, it should be amended to state:

> Cardo Windows contends that it fully complied with all applicable laws, include the Fair Labor Standards Act and the New Jersey Wage and Hour Law, and fairly compensated its installers for all work performed, consistent with their independent contractor agreements. Cardo Windows denies that it has committed any wrongdoing with respect to its classification of or payment to any installer.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Conditional Certification and for Class Certification.

Respectfully submitted,

Dated:   August 6, 2013

**FLASTER/GREENBERG P.C.**

By:   *s/ Michael D. Homans*
Michael D. Homans, Esquire
Peter J. Tomasco, Esquire
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900 (telephone)
(856) 661-1919 (facsimile)
Michael.Homans@flastergreenberg.com
Peter.Tomasco@flastergreenberg.com
Attorneys for defendants