# HANNYE LLC

A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

Richard S. Hannye
Managing Attorney
Admitted in NJ, PA, DC
Email hannye@hannye.pro

128 West Cottage Avenue
Haddonfield, NJ 08033
856 428 1775
Fax 856 428 1919

December 20, 2013

Chief Judge Jerome B. Simandle
Mitchell H. Cohen Building &U.S. Courthouse
1 John F. Gerry Plaza, Room 6010
P.O. Box 888
Camden, New Jersey 08101-0888

VIA E-FILING

Re: Fred Adami and Jack Varner v. Cardo Windows, Inc. d/b/a "Castle 'The Window People'", et al
Docket No. 1:12-cv-02804-JBS-JS

Dear Chief Judge Simandle:

Please accept this letter brief to address the issues Your Honor asked me to address during oral argument on Plaintiffs' Motion for Collective and Class Certification on December 16, 2013.

### A. Petition for Certification of Question of Law-*Sam Hargrove v. Sleepy's, LLC*, U.S. Court of Appeals, Third Circuit, Docket number 12-2540 and 12-2541

N.J.A.C. 12:56-16.1 – Independent Contractor Criteria, states:

> "The criteria identified in the Unemployment Compensation Law at N.J.S.A. 43:21-19(i)(6)(A)(B)(C) and interpreting case law will be used to determine whether an individual is an employee or independent contractor for purposes of the Wage and Hour Law."

In *New Jersey State League of Municipalities v. Department of Community Affairs*, 729 A.2d 21, 27, 158 N.J. 211 (N.J. 1999) (citations omitted), the Supreme Court of New Jersey upheld a provision of the New Jersey Administrative Code finding:

> "Administrative regulations are accorded a presumption of validity. The party challenging their validity bears the burden of proving that the regulations are arbitrary, capricious or unreasonable. That **judicial deference** to administrative agencies stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are 'particularly well-equipped to read and understand the massive documents and evaluate the factual and technical issues that rule-making would invite'. Therefore, the scope of scope of review of an administrative

**HANNYE LLC**

A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

December 20, 2013
Page Two

regulation is 'highly circumscribed' and a reviewing Court is not to substitute its judgment for that of the agency".

Unfortunately, the District Court in *Hargrove v. Sleepy's, LLC*, Docket number 10-1138 did not discuss or even make mention of N.J.A.C. 12:56-16.1 – Independent Contractor Status Criteria ( See, Hannye Cert. paragraph 1, attaching a copy of the District Court's Hargrove opinion). The United States Court of Appeals' May 22, 2013 Petition for Certification of Question of Law to the Justices of the New Jersey Supreme Court in connection with the *Hargrove v. Sleepy's, LLC* cross-appeal also fails to make mention of N.J.A.C. 12:56-16.1, which answers the Question for Consideration: **"Under New Jersey Law, which test should a court apply to determine a plaintiff's employment status for the purposes of the .... New Jersey Wage and Hour Law, N.J.S.A. §34:11-56a, et seq .?"** (See, Hannye Cert. paragraph 2, attaching a copy of the Third Circuit's Petition for Certification of Question of Law).

The failure by the District Court and the Third Circuit in *Hargrove* to recognize N.J.A.C. 12:56-16.1 is likely due to the fact that neither counsel for the plaintiff or the defendant cited that code section in their briefs or otherwise brought it to the attention of the Court. However, the Supreme Court of New Jersey is aware or will be made aware of N.J.A.C. 12:56-16.1 and is highly unlikely to find that it was an invalid exercise of administrative authority. After all, N.J.A.C. 12:56-16.1 just adopts the statutory "ABC Test" established under the Unemployment Compensation Law at N.J.S.A. 43:21-19(i)(6)(A)(B)(C) for purposes of determination of employee status under the New Jersey Wage and Hour Act. In other words, the Supreme Court of New Jersey would have to find that N.J.A.C. 12:56-16.1 is arbitrary, capricious or unreasonable in using the "ABC Test" and attempting to create a uniform standard for the determination of employee status, thus creating certainty and eliminating litigation over what the test should be.

Based on the above, we do not believe there is any uncertainty in the law concerning the test for determining employee status under the New Jersey Wage and Hour Law, but recognize that it is reasonable to wait and see what the New Jersey Supreme Court's ruling is on that subject.

B.  Cardo's Admission that its installers are employees under the "ABC Test"

Cardo withholds New Jersey Unemployment Compensation Tax from the wages of its installers. The 1099s produced by Cardo and the deposition testimony of Nick Cardillo, co-owner of Cardo and Rod Arce, former co-owner of Cardo establish this. Cardo withholds New Jersey Unemployment Compensation Tax from the wages of its installers because "we withhold what we are required by law to withhold" (See, deposition transcript of Nicholas Cardillo, p.

# HANNYE LLC

A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

December 20, 2013
Page Three

109. L. 8-20, attached as Exhibit 9 to the Certification of Richard S. Hannye in Support of Motion for Class Certification filed on June 14, 2013). However, Rod Arce testified that Cardo began withholding New Jersey Unemployment Compensation Tax from the wages of its installers only when an installer filed an unemployment claim: "And the state says, hey, wait a minute. They're not independent contractors. Start paying tax". (See, deposition transcript of Rod Arce,  p. 159. L. 13-25; p. 160 l. 1-5, attached as Exhibit 9 to the Certification of Richard S. Hannye in Support of Motion for Class Certification filed on June 14, 2013).

Cardo withholds New Jersey Unemployment Compensation Tax from the wages of its installers because they are employees of Cardo; stated differently, if its installers were independent contractors Cardo would not be withholding New Jersey Unemployment Compensation Tax from their wages.

The test for whether the installers are employees or independent contractors under the New Jersey Employment Compensation  Act is the "ABC test" set forth in N.J.S.A. 43:21-19(i)(6)(A)(B)(C) :

> "services performed by an individual for remuneration shall be deemed to be employment subject to this chapter (RS 43:21-1, et seq.) unless and until it is shown to the satisfaction of the division that:  (A) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and (B) such service is  either the  usual course of the business for which such service is performed,  or that such service is  performed outside of all of the places of business of the enterprise for which such service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession or business.

In *Special Care of New Jersey, Inc. v. Board of Review*, 742 A. 2d 1023, 1030-31 (App. Div. 2000) the Court held that an admission by Special Care that Ms. Reistel was an employee under the "ABC test" for purposes of withholding of unemployment compensation tax from her wages constituted an admission by Special Care that Ms. Reistel was an employee for the purposes of withholding of New Jersey Temporary Disability Tax from her wages.

Applying the holding in *Special Care* to this case, Cardo's admission that it withholds Unemployment Compensation Tax from the wages of its installers constitutes an admission that its installers are employees under the "ABC test" for purposes of the New Jersey Wage and Hour Law.  How could Cardo's installers be employees under New Jersey Unemployment Compensation Law and not under the NJWHL when employee status is determined by the "ABC

# HANNYE LLC

A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

December 20, 2013
Page Four

test" under both laws. The answer is clear, the installers are employees under both the Wage and Hour Law and the Unemployment Compensation Law.

### C. Plaintiffs have made the required "modest factual showing" that the installers working out of Cardo's five warehouses are "similarly situated"

In *Symczyk v. Genesis Healthcare Corp.,* 656 F.3d 189, 191 (3rd Cir.) the Third Circuit adopted the "modest factual showing" standard under which "a plaintiff must produce some evidence "beyond pure speculation" of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. We believe the "modest factual showing" standard – which works in harmony with the opt in requirement to cabin the potentially massive size of collective action – best comports with Congressional intent and with the Supreme Court's directive that a court "ascertain the contours of [a collective] action at the outset". (*Citations omitted).*

In *Zavala v. Walmart Stores, Inc.,* United District Court for the District of New Jersey, Docket No. 2:03-05309, plaintiffs moved for conditional certification of an FLSA collective action consisting of "any and all employees who were, at any time, from on or about November, 1996 undocumented or recently undocumented immigrants to the United States, and were employed as janitors to clean Walmart stores, including Sam's Club stores across the United States (See, Hannye Cert. p. 3, attaching the "Memorandum of Law in Support of Motion of Plaintiffs, Victor Zavala, et al. for Facilitated Notice" and proposed "Notice to Plaintiff Class")

Plaintiffs' counsel in *Zavala* submitted ten declarations from Walmart janitors in support of their Motion for Conditional Certification of a Collective Action (See, Hannye Cert., p. 4, attaching these ten declarations). These ten declarations were made by Walmart janitors who has cleaned sixteen Walmart stores in eight states (New Jersey, New York, Connecticut, Georgia, Michigan, Virginia, Tennessee and Texas).

However, at the time of Plaintiffs' Motion for Conditional Certification in *Zavala,* Walmart had 2,949 stores distributed throughout all 50 states (See, Hannye Cert., p. 5, attaching the Walmart 2004 Annual Report, p. 55, Fiscal 2004 End of Year Store Count). The janitors cleaning the Walmart stores worked in crews of between two and seven janitors, depending on the size of the store to be cleaned (See, Hannye Cert. p. 3 attaching a copy of page 10 and 11 Plaintiffs' Memorandum of Law in *Zavala*). Thus, plaintiffs' proposed collective action consisted of a minimum of 5,895 janitors who cleaned Walmart stores (2,949 Walmart stores x two cleaners for each store = 5,895 Walmart janitors). The ten janitors who submitted

# HANNYE LLC
A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

December 20, 2013
Page Five

declarations were less than .18% of the minimum number of putative class members (5,895 Walmart janitors x .18% = 10.611 Walmart janitors giving declarations).

Additionally, the 16 Walmart stores cleaned by the 10 Walmart janitors who gave declarations in *Zavala* represented less than .55% of the 2,949 Walmart stores (2,949 Walmart stores x .55% = 16.2195 Walmart janitors); and the eight states where the 10 declarants cleaned Walmart stores represented 16% of the 50 states in which Walmart had stores.

Finally, at the time the plaintiff in *Zavala* filed his Motion for Conditional Certification 13 putative class members had filed opt in forms. (See, Hannye Cert. p. 5, attaching the form filed by plaintiff with the names of the 13 who opted in prior to the conditional certification). The 13 who opted in represented less than .23% of the minimum of 5,895 in the putative class (5,895 Walmart janitors x .23%= 13.5585 opt in forms).

Based on the "modest factual showing" set forth above, on December 29, 2004 United States District Judge Joseph Greenaway entered an order granting plaintiff's request for conditional certification of an FLSA collective action on behalf of at least 5,895 Walmart janitors in 2,949 Walmart stores in 50 states. (See, Hannye Cert. p. 6, attaching a copy of this Order). Although this collective action was subsequently decertified by the District Court the proof necessary for final certification is much higher than the "modest factual showing" required for conditional certification, as set forth in *Zavala v. Walmart Stores, Inc.*, 691 F.3d 527 (3rd Cir. 2012), where the Third Circuit upheld the District Courts decertification.

One of the most thorough published opinions on whether putative class members in multiple states and offices are "similarly situated" for purposes of conditional collective action certification is *In Re: RBC Dain Rauscher Overtime Litigation*, 703 F.Supp. 2d 910 (D.Minn. 2010). In the *RBC* case, supra. ten RBC employees who worked for RBC in California, Florida and New York as securities brokers filed a complaint alleging overtime violations under the FLSA. *Id.* at p. 913-14. At the time of the Court's conditional certification of a collective FLSA action, the Court had granted summary judgment on the FLSA claims of six, leaving only four remaining collective action representatives. *Id.* at p. 965. The District Court held that the Court's analysis of RBC's motion for summary judgment demonstrated that "any determination of whether a particular employee is exempt will require a fact intensive examination of the particular employees work duties. Nonetheless, the case may be properly managed as a collective action because the putative plaintiffs shared similar work duties and because they operated under similar work conditions. Plaintiffs have shown that "some identifiable facts or legal nexus … bind(s) the claims so that hearing the cases together promotes judicial efficiency." Id. at p. 965.

# HANNYE LLC

A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

December 20, 2013
Page Six

      The Court in *RBC* based its decision to certify a conditional collective action on "transcripts of the depositions of the named plaintiffs and the exhibits attached thereto". (*RBC, supra,* at footnote 1). In other words, the plaintiffs had not submitted any evidence to the Court from putative class members. In fact, the District Court in RBC found that collective action certification was appropriate "even though they [the plaintiffs] have not proffered any evidence that any similarly situated individuals wish to opt in to the litigation". *Id.* at p. 965.

      Based on the case law set forth above, the two named plaintiffs, Jack Varner and Fred Adami have made the required "modest factual showing" that no matter what state an installer lived in or which of the five Cardo warehouses they worked out of, all of Cardo's installers were subjected by Cardo to the same centralized training, customer service policies, installation procedures, piece work rates, employment practices, daily control, number of hours worked per day, number of days worked per week and failure to pay overtime for hours per week in excess of 40, including failure to pay for unloading Cardo's window trucks or for travel time. (See, Certification of Fred Adami in Support of Conditional Certification of a Collective Action; and Supplemental Certification of Jack Varner in Support of Conditional Certification of an FLSA Collective Action, filed contemporaneously herewith). The Adami Certification is based on personal knowledge given that Fred Adami opened has worked at each of Cardo's five warehouses and was manager of one of them. The Varner certification is also based on personal knowledge given that he worked at three of the five Cardo warehouses.

      Furthermore, Jack Varner and Fred Adami's boss at Cardo, Rod Arce, has not only confirmed the information in the Varner and Adami certifications, but provided additional detail about Cardo's centralized control of all its warehouses and installers from corporate headquarters in Mt. Laurel, New Jersey. (See, voluminous deposition testimony of Rod Arce attached to the Certification of Richard S. Hannye filed on June 14, 2013). As Rod Arce testified "Understand, everything funneled through Mt. Laurel. All those satellite offices did not operate independently." (See, Hannye Cert. p. 7, attaching P. 30 L. 16-21 of Rod Arce's January 14, 2013 deposition transcript).

      Finally, since oral argument, four Cardo installers have opted in to plaintiffs' FLSA collective action with more to follow shortly.

      In conclusion, plaintiffs in the present case have presented much stronger evidence that putative class members in multiple states and offices are "similarly situated" for purposes of conditional collective action certification than did the plaintiffs in *Zavala* or *RBC*. This court should conditionally certify a collective action including the installers who worked out of each of Cardo's five warehouses.

# HANNYE LLC
A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

December 20, 2013
Page Seven

### D. Cardo Installers Issued 1099's in the name of LLC's, Corporations or Trade Names Should Not Be Excluded From Getting Notice of Conditional Certification.

Plaintiffs have made the "modest factual showing" that certain Cardo installers never formed, disbanded or had their LLC's revoked by the state. The fact that Cardo may have also made a "modest factual showing" on this issue is of no moment because the time is not ripe for a final factual determination. In fact, discovery on this issue cannot be completed unless the LLC's and corporations receive notice because the evidence resides with them. There is no danger of inconveniencing or harassing the LLC's or corporations because if they believe they are independent contractors they with not opt in and no discovery from them will be taken.

On the other hand, if an installer using a trade name, the owner of an LLC or an S corporation believes they were treated by Cardo as an employee they should get notice and have the opportunity to opt in even if they established and maintained corporate form. *Anthony Parilla v. Allcom Construction and Installation Services, LLC,* United States District Court of the Middle District of Florida, Docket No. 6:08-1967 ( See, Hannye Certification, p. 8, for a copy of this opinion). In *Parrilla*, the Court held that plaintiff was an employee under the FLSA despite the fact that he signed an "Independent Contractor Agreement" and formed his own company, stating: "This legal indicia, however is of no moment and belied the economic reality of the parties relationship. If anything, the fact that defendant required its technicians to form their own companies only suggests that defendant deliberately created a façade to mask the true nature of the parties relationship. If Defendant's technicians were truly independent contractors, it would make no difference whether Defendant paid its technicians directly or paid their companies (which are presumably "Subchapter S" corporations that merely pass income through to the technicians)."

In conclusion, Cardo's installers who received 1099's in the name of trade names, LLC's or corporations should receive notice of the conditional certification of a collective action on behalf of Cardo installers. There is no harm in sending the notice and considerable potential harm in failing to do so, given the intent of the FLSA to protect workers from employer plans and schemes to avoid paying overtime and benefits.

                                                   Very truly yours,

                                                   HANNYE LLC

                                                 Richard S. Hannye

# HANNYE LLC
A PENNSYLVANIA LLC WITH LAW OFFICES IN
HADDONFIELD, NJ AND BALA CYNWYD, PA

RSH:dd
cc:    Michael Homans, Esquire (via electronic filing)