# FLASTER GREENBERG
ATTORNEYS AT LAW • A PROFESSIONAL CORPORATION

Four Penn Center
1600 John F. Kennedy Boulevard
2nd Floor
Philadelphia, PA 19103
(215) 279-9393
Fax: (215) 279-9394
www.flastergreenberg.com

MICHAEL D. HOMANS
Member of PA, NJ & NY Bars
Direct Dial: (215) 279-9379
E-Mail: michael.homans@flastergreenberg.com

December 30, 2013

**By First-Class Mail and ECF Filing**
The Honorable Jerome B. Simandle, Chief Judge
U.S. District Court, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Courtroom 4A
Camden, NJ 08101

> Re: Fred Adami v. Cardo Windows, Inc., et al.
> Civil No. 1:12-02804 (JBS/JS)

Dear Judge Simandle:

Please accept this letter brief on behalf of defendants in opposition to Plaintiffs' Motion for Conditional Collective Action and Class Certification, as requested by the Court during oral argument on December 16, 2013, and in response to Plaintiffs' supplemental letter brief submitted on December 20 (and as amended by their supplemental and corrective filings through December 24).

Regrettably, plaintiffs' counsel has abused the Court's request for limited, "non-exhaustive" briefing on four discrete issues to completely change and supplement their allegations in an attempt to survive dismissal of their claims. The Court made clear at oral argument that it sought short letter briefing as to these issues: (1) the New Jersey Supreme Court's consideration of *Hargrove v. Sleepy's, LLC*; (2) citation to things "in the record" that might be applicable to the Court's decision; (3) whether out-of-state installers should be excluded from the class under the New Jersey Wage and Hour Law claim; and (4) review of the three cases cited by plaintiffs at oral argument, *Special Care of New Jersey, Inc. v. Board of Review*, 742 A.2d 1023 (App. Div. 2000), *Alsco Storm Windows, Inc. v. United States*, 311 F.2d 341 (9th Cir. 1962), and a "Swiss" case he could not identify. Rather than stick to these issues and the existing record from 11 months of discovery, plaintiffs' counsel created more than 100 paragraphs of new factual allegations from his clients in a desperate effort to patch the holes in their case and escape dismissal of their class claims.

Defendants respectfully request that the Court enforce its own longstanding scheduling order and make its ruling based on the evidence and arguments presented in the original motion and response, disregarding these last-minute, untested allegations as improper and untimely.

3725845 v2

Honorable Jerome B. Simandle, Chief Judge
December 30, 2013
Page 2

Nevertheless, out of an abundance of caution, defendants provide here, attached to counsel's certification, two certifications of persons with direct knowledge of Cardo's business, Chris Cardillo, Sr., and Michael Lucas, which refute the new allegations of plaintiffs. Defendants respectfully request that the Court consider these certifications, should it entertain plaintiffs' untimely and improper submissions.

### A. The Court Should Dismiss Plaintiffs' Motion for Class Certification With Prejudice, as Plaintiffs Had More than One Year to Prepare Their Case, and the Court Made Clear this Motion Was Due May 15, 2013.

Defendants respectfully request that the Court issue a dispositive ruling denying plaintiffs' Rule 23(a) motion for class certification with prejudice, rather than without prejudice, as the Court ordered in part on December 17, 2013. More than one year ago, on November 14, 2012 [Document 16], this Court ordered that such motions must be filed on or before April 16, 2013 (and that deadline was later postponed one month to May 15, 2013 [Document 32]). The parties accepted and agreed to this deadline, and engaged in costly and extensive discovery toward that goal, including 14 days of depositions, 11 months of discovery, and the exchange of thousands of pages of documents, the vast majority of which were produced by defendants. Plaintiffs were not limited in who they could depose and took 10 days of depositions.[1]

Under the applicable Rule and the Court's Order, plaintiffs had the burden on the date of their filing of the Motion for Class Certification to demonstrate that their proposed class met all of the requirements of Rule 23(a) and the predominance element of Rule 23(b)(3). *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and Conditional Certification of a Collective Action Under the FLSA," filed August 6, 2013, at pp. 3-5 [Document 67] (hereinafter, "Defendants' Memorandum"). Yet they completely failed to do so in multiple ways, as set forth in Defendants' Memorandum at pp. 5-18, which we urge the Court to re-review and, in the interests of brevity, do not restate here.

More to the point of this supplemental briefing, as stated in oral argument and in Defendants' Memorandum, defendants have established that under either test being considered

---

[1] Defendants discovered on December 17, 2013 (the day after oral argument), that plaintiffs and their counsel did, however, breach their duties in discovery by not disclosing requested statements and communications in relation to their claims. By Requests for Production of Documents of August 15, 2012, defendants sought "All documents relating to any statement You received from any person regarding any of the facts alleged in the Complaint or the Counterclaims," and "any communication between You and any current or former employee or independent contractor of Cardo Windows since the last day You performed work for Cardo Windows." (Defendants First Request for Production of Documents, Request Nos. 27 and 73, attached to the Certification of Michael Homans as Exhibit 1.) Plaintiffs did not produce any statements or communications in response to these requests, yet on December 17, 2013, they filed Opt-In statements from four former or current installers of Cardo Windows, all dating to October of 2012. [Document 94.] In each statement, the identified individuals state that "Cardo Windows, Inc. did not pay me overtime for the hours I worked for them in excess of 40 per week," and make allegations as to benefits not provided. *Id.* Thus, these four statements clearly were responsive, and yet plaintiffs and their counsel withheld them for more than one year. This failure to disclose relevant, requested evidence reveals a lack of candor and fairness by plaintiffs and their counsel, and confirms that they had more than sufficient time during the Court's 11-month discovery period to develop evidence to support their class claims – but they completely failed to do so.

3725845 v2

Honorable Jerome B. Simandle, Chief Judge
December 30, 2013
Page 3

by the New Jersey Supreme Court in *Hargrove v. Sleepy's, LLC*, the plaintiffs are unable to meet their burden of establishing that the varying circumstances of the installers warrant class certification. The proposed installers are a disparate group, ranging from individuals to corporations, form temporary helpers to long-term "core installers," from local contractors who worked out of Mt. Laurel like the named plaintiffs to those spread across 11 different states and five different facilities. Plaintiffs have failed to demonstrate how this motley and diverse group could meet the requirements of a Rule 23(a) class and could not be efficiently and effectively tried as a class action under the New Jersey Wage and Hour Law. Indisputably, the circumstances of each installer will vary on key issues that are critical the Court's analysis under Rule 23, regardless of which standard the New Jersey Supreme Court adopts. (*See* Mike Lucas Certification at Exhibit 2 to the Homans Certification, and the Supplemental Chris Cardillo, Sr. Certification, attached as Exhibit 3 to the Homans Certification.)

More specifically, among the varying factors that preclude certification, as set forth more fully in Defendants' Memorandum at pp. 5-11, include:

- Whether each installer or "helper" owned his or her vehicles and equipment, which is an indicia of an "established trade" and independent contractor status under either test;
- Whether each installer had a temporary or long-term relationship with Cardo, as the permanence of the relationship is a key consideration under applicable tests;
- The hours that each installer worked for Cardo versus other entities, which again reflects an independent tradesman;
- Whether each installer worked enough in New Jersey to be subject to the NJWHL (*see below and* Defendants' Memorandum at pp. 12-13);
- Whether each installer employed his or her own employees or "helpers," which is an indicia of independent contractor status;
- Whether each installer operated a business as an incorporated entity, as opposed to a sole proprietorship;
- The level of experience, training and skill each installer brought to the job, on the issue of whether he was engaged in an independently established trade, outside of Cardo;
- Whether each member of the proposed class had to follow the same rules, and had the same management (they did not);
- Whether each member of the proposed class worked out of a different facility, and the varied circumstances of each facility;
- The extent to which each installer could experience profit or loss; and
- The amount of work and hours of each installer, which will have to be individually determined, week by week, as plaintiffs admit that they did not retain records of hours or work completed, and "millions" of factors vary, by installer and job, the time it takes to perform each window installation.

Regardless of which standard the New Jersey Supreme Court determines should be used, it will not salvage the plaintiffs' inadequate proofs under Rule 23, and the Court should not give

plaintiffs an excuse to turn this "supplemental" briefing into a complete reopening of discovery, including plaintiffs' belated introduction of two new certifications containing more than 100 paragraphs of new allegations by the individual plaintiffs, many of which are demonstrably false and are contradicted by these plaintiffs' own sworn testimony and the attached Certification of Chris Cardillo, Sr., as noted below.

In sum, the Court should hold the parties to the original motion and briefing schedule and rule dispositively on the motion as to Rule 23 certification, rather than allowing this litigation to become a rolling series of revised claims, amended motions, extensions, delinquent discovery disclosures, and re-argument, as plaintiffs try to avoid the defects in their claims.

### B. Cardo Windows Agreed to Pay State Unemployment Compensation Taxes on New Jersey Employees to Avoid Litigation with the State, and Never "Admitted" That Its Installers Were Employees or Failed to Meet the "ABC Test."

Contrary to plaintiffs' assertion, Cardo has never admitted that its installers are employees under the "ABC test" for purposes of the New Jersey Wage and Hour Law.

Plaintiffs' reliance on *Special Care of New Jersey, Inc. v. Board of Review*, 742 A.2d 1023 (App. Div. 2000) is misplaced. In *Special Care*, the court affirmed an appeal tribunal's findings that Ms. Reistle, the worker of a placement agency that referred caregivers to elderly and disabled persons, was an employee and not an independent contractor. *Id.* at 1025-26. The court based this on the plaintiff's **explicit admission** during a hearing before the appeal tribunal that Ms. Reistle was an "employee" under the "ABC test." *Id.* at 1030-31. There, counsel for the plaintiff stated: "'I'm not disagreeing that if we use the ABC test, we would be a covered employer under your law. **I'll admit to that. I'll stipulate to that**,' and '[w]e stipulate that [the caregivers] are employees under the ABC test...'" *Id.* at 1030 (emphasis added). Based on these admissions that Ms. Reistle was an employee under the ABC test, it followed that she was covered by the Temporary Disability Benefits Law. *Id.* at 1031.

Dissimilarly, Cardo has consistently rejected and never admitted any contention that the installers are employees under the ABC test. Even plaintiffs' witness, disgraced former manager Rod Arce, testified that Cardo is paying unemployment compensation taxes for its installers only because it reached an "exhorted [sic] settlement" with the state. (Roderick Arce Transcript at 159:18-159:19, 159:24-160:2, attached as Exhibit 4 to the Homans Certification.) As Chris Cardo, Sr., Cardo's former owner and a named defendant, explains in the attached certification (Exhibit 3 to the Homans Certification, ¶¶ 26-28), approximately 15 or more years ago the state of New Jersey Division of Unemployment Insurance conducted an unemployment tax audit. In connection with that audit, Cardo decided to voluntarily start paying the New Jersey unemployment tax on its New Jersey unincorporated installers because it felt that the relatively small costs of such payments would be less expensive than protracted litigation with the state, which would have required Cardo and the State to litigate, on an individualized basis for each and every New Jersey installer, the facts and circumstances establishing that he met all three parts of the ABC test. Realizing that such litigation would be extremely time-consuming and expensive, and could have different results depending on each installer's individual

circumstances,[2] Cardo chose to voluntarily pay the modest unemployment compensation tax for its New Jersey installers. Such a settlement under threat of litigation is not an admission, and Cardo has continued to treat its installers as independent contractors in all other respects. (*See* Cardillo Certification at ¶¶ 19, 22, 28, attached as Ex. 3 to the Homans Certification; Defendants' Counterstatement at ¶¶ 6-11, 38-42, 57-60.) *See also Greene v. AIG Cas. Co.*, 433 N.J. Super. 59, 77 A.3d 515 (App. Div. 2013) (holding that an employer's "voluntary payment of [workers' compensation] benefits will not constitute an admission of liability" in a workers' compensation dispute); and *Dye v. IPIK Door Co., Inc.*, 570 So.2d 477 (5th Cir. 1990) (holding that the plaintiff's acceptance of unemployment compensation benefits did not constitute an admission that he was an "employee" and not an "independent contractor," nor would the payment of such benefits be deemed an admission by the employer).[3]

Moreover, contrary to plaintiffs' ungrounded and misleading assertion in their supplemental brief, defendants have never "withheld" unemployment compensation taxes from its installers or admitted to same.[4] As Arce and Nicholas Cardillo testified, the withholdings that are shown on some, but not all, individuals' 1009 forms are for New Jersey **income** tax, which is a separate requirement of the state of New Jersey, which all persons -- whether employee or independent contractor -- are required to pay. Cardo pays the unemployment compensation tax directly for the New Jersey installers, without any withholdings, as it knows that installers would balk if there were deductions for unemployment compensation while they were working as independent contractors, for the very reason that they, and Cardo, believe they are not "employees" even under the ABC test and are not legally required to pay that tax.

In fact, the only admissions with regard to plaintiff's employment status have been those made by the two plaintiffs, who both repeatedly agreed to work at Cardo as independent contractors subject to independent contractor agreements. Plaintiff Fred Adami even had his accountant and insurance broker each confirm to Cardo that he was an independent contractor, not an employee. Defendants' Counterstatement of Facts, filed August 6, 2013 [Document 68] (hereinafter, "Counterstatement") at ¶¶ 11, 38-42.

In the end, the law is clear that no single fact or piece of evidence – such as defendants' payment of state unemployment compensation taxes for individual installers in New Jersey -- is decisive on the issue of status as an employee or independent contractor. Rather, when determining whether someone is an employee under the FLSA, "economic reality rather than technical concepts is to be the test of employment." *Goldberg v. Whitaker House Co-op., Inc.*,

---

[2] This need for an individualized analysis of each installer's circumstances is the same reason that this group of installers is not appropriate for class certification.

[3] Notably, Cardo does not pay or withhold federal unemployment tax, Social Security tax, or federal withholding tax – further establishing that it has simply settled one dispute and not made any global admission as to the installers' employment status. (Cardillo Certification ¶ 28, Ex. 3 to Homans Certification.)

[4] Defense counsel misspoke in oral argument as to the withholding of such taxes. As explained below and in the Cardillo Certification, Cardo has withheld income taxes from installers, but has never withheld unemployment compensation taxes.

366 U.S. 28, 33 (1961) (internal quotations omitted) (emphasis added); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ("It is a well-established principle that the determination of the employment relationship does not depend on isolated factors but rather upon the 'circumstances of the whole activity.'"). All of this returns the issue to defendants' fundamental point – the disparate situations of the proposed class members requires individualized analysis, not class treatment.

### C. Plaintiffs Have Failed to Present Facts Similar to *Alsco Storm Windows, Inc. v. United States* That Would Warrant Similar Treatment.

Plaintiffs' counsel referenced a 51-year-old case from another jurisdiction, *Alsco Storm Windows, Inc. v. United States*, 311 F.2d 341 (9th Cir. 1962), in oral argument. Other than relating to "installers" who deal with a window company, the case is completely distinct from the one presented here and offers no salvation for plaintiffs in their attempt to make out a class action claim.

First, the case relates to a determination of whether the appellant company was an employer for purposes of the Internal Revenue Code as of 1962, and not a wage and hour claim, and thus the standards are different.

Second, the case apparently involves to installers of "storm windows," which are a "supplementary window sash for protecting a window against drafts, driving rain, etc." Webster's Encyclopedic Unabridged Dictionary (1994). In contrast, Cardo markets, sells and installs *replacement windows*, which require removal and replacement of the entire window unit, storm window, frame, and trim, not just adding a supplemental storm window. (*See generally* Counterstatement of Facts ¶ 1.) As such, the work performed in *Alsco Storm Windows* presumably involved less skill on the part of the installers, who only had to attach a supplemental sash to an existing window and frame.

Third, and most importantly, the record cited in *Alsco Storm Windows* differs greatly from the case before the Court. In *Alsco Storm Windows*, it was uncontested and admitted by the company and its manager that the manager "had the power to instruct the installers as to the way the job should be done," that he "on occasion" instructed installers "as to how the job should be done," and that if an installer failed to follow his directions, that installer would not be given another job. *Id.* at 342. In contrast, the plaintiffs here have presented no such admissions or evidence that Cardo managers instructed them on how to perform particular jobs or terminated installers if they did not follow such directions. Quite the opposite – the undisputed evidence, as admitted by plaintiffs under oath, is that they install windows at customer locations without any supervision by Cardo management, which is never on the job site with installers. Counterstatement ¶¶ 53-56; Defendants' Memorandum at pp. 6-7.

In short, other than a facile kinship through the words "windows" and "installer," the *Alsco Storm Windows* provides no guidance for the Court here, due to its distinct legal and factual issues.

Honorable Jerome B. Simandle, Chief Judge
December 30, 2013
Page 7

### D. Plaintiffs' Reliance on *D'Agostino v. Johnson & Johnson, Inc.* Also Misses the Mark, As the Decision Relied Upon the Intended Extraterritorial Application of the Foreign Corrupt Practices Act; Other Cases Reinforce the Rule that New Jersey Employment Laws Apply to Work in New Jersey.

Plaintiffs' argument that the New Jersey Wage and Hour Law applies to work by anyone anywhere for Cardo Windows is not supported by the "Swiss" case counsel vaguely referenced in oral argument, *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 628 A.2d 305 (1993). *D'Agostino* involved the federal **Foreign** Corrupt Practices Act ("FCPA") (emphasis added) and the New Jersey Pierce public policy doctrine. In *D'Agostino*, the plaintiff was a Swiss resident employed by a Swiss subsidiary of Johnson & Johnson, who was terminated after refusing to participate in an allegedly illegal bribing of Swiss pharmaceutical licensing authorities in violation of the FCPA and Johnson & Johnson's own Policy Statement. *Id.* The court based its decision to apply New Jersey law on New Jersey's strong interest in protecting the health and welfare of New Jersey residents and in protecting the domestic market for pharmaceutical products. *Id.* at 519. The court also concluded that the FCPA by its very nature was intended to have an extraterritorial effect – regulating the conduct of American citizens abroad – and by adopting the FCPA policy against corrupt practices, New Jersey's public policy had an intended extraterritorial effect. *Id.* at 533; *see also Seibert v. Quest Diagnostics Inc.*, No. 11-304, 2012 WL 1044308, at *6 (D.N.J. Mar. 28, 2012) (distinguishing *D'Agostino* and declining to extend it in a non-FCPA employment case on these grounds).

Moreover, the *D'Agostino* court clarified that "we are not exporting New Jersey employment law so much as applying New Jersey domestic policy, drawn from federal sources, to a domestic company." *Id.* at 529. Finally, the *D'Agostino* court explained that "[i]n many (if not most) instances the forum policies are not intended to have an extraterritorial effect." *Id.* at 540. "New Jersey law does not regulate conduct outside the state. Rather, New Jersey law regulates conduct in New Jersey." *Id.* at 539. Applying the principles articulated in *D'Agostino*, New Jersey law would not be applicable here.

In addition to the cases cited already in Defendants' Memorandum at pp. 12-13 (noting the "well-settled understanding that New Jersey law regulates conduct in New Jersey, not outside the state"), a much more applicable statute and case can be found in *Redick v. E Mortgage Management, LLC*, No. 11-1260, 2013 WL 1089710 (D. Del. Mar. 15, 2013), which examined case law involving the New Jersey Wage Law. There the court held that the New Jersey law did not apply to out-of-state employees. First, the plain language of the New Jersey Wage Law contains several provisions demonstrating that it is intended to deal solely with workers employed in New Jersey. *Id.* at *9 (concluding that the Wage Law's provisions "provide helpful clues suggesting that the reach of the New Jersey Wage Law may be limited to New Jersey-based employees"). Second, New Jersey Courts have held that "the Law was intended to protect all individuals employed within the state of New Jersey, regardless of the employer's location." *Id.* at *10 (emphasis in original) (citing *Milford v. Computer Leasing, Inc.*, 334 N.J. Super. 385, 759 A.2d 887, 891 (Law. Div. 1999)); *see also* 18 Marvin M. Goldstein & Stanley L. Goodman, New Jersey Practice Series: Employment Law 6.1, n.2 (2d ed. 2011) (it is "[t]he location of the

3725845 v2

Honorable Jerome B. Simandle, Chief Judge
December 30, 2013
Page 8

employment, not the location of the employer, [that] governs the employee wage payment law that applies"). Finally, federal courts have declined to adopt an "expansive interpretation" of the New Jersey Wage Law that extends its reach into other states. *Id.* at *10 (citing *Vegurelekar v. Silverline Techs, Ltd.*, 220 F.R.D. 222 (S.D.N.Y. 2003)).

For all of these reasons, and those stated in Defendants' Memorandum, defendants respectfully request that the Court rule now that any claims by plaintiffs under the New Jersey Wage and Hour Law be limited to work performed in New Jersey.

### E. Plaintiffs Have Not Made the Required "Modest Factual Showing" for FLSA Conditional Certification that the Installers and Helpers Working out of Cardo's Five Warehouses Are "Similarly Situated."

Plaintiffs' reliance on *Symcyzyk v. Genesis Healthcare Corp.*, *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189 (3d Cir. 2011) *rev'd sub nom. Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013), is inappropriate, as the United States Supreme Court subsequently reversed the decision.

Moreover, New Jersey courts do employ a more rigorous standard than a mere allegation, requiring the plaintiffs to show a <u>modest factual nexus</u> between their situation and that of the proposed class members. *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 387 (D.N.J. 2010). "In spite of the modest [factual nexus] evidentiary standard, courts have not hesitated to deny conditional certification when evidence is lacking." *Dreyer v. Altchem Environmental Services, Inc.*, No. 6–2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007) (denying plaintiffs' motion for reconsideration for a collective class action and for approval of notice, finding that, despite three affidavits, there was not sufficient evidence of a factual nexus between plaintiffs' circumstances and the proposed class). As previously noted, courts repeatedly refuse to grant conditional class certification under the FLSA where the facts reveal that individual circumstances and issues will predominate, as here. Defendants' Memorandum at pp. 5-11.

To reiterate, the two named plaintiffs, Jack Varner and Fred Adami, admit that the vast majority of the members of the proposed class worked at Cardo for only a temporary period of weeks and then proceeded on to other jobs for other companies, and/or worked as "helpers" who were hired, paid and supervised by the installers – not Cardo. As such, plaintiffs cannot make the required "modest factual showing" as to the majority of the proposed class having common questions of law and fact that predominate.

### F. No FLSA Case Has Ever Held that Corporations Count as Employees for Purposes of Class or Collective Action Certification.

Subsequent to oral argument, defendants searched again for any case under the FLSA in which a corporate entity was named as an employee in a collective action, as plaintiffs argue should be the case here. Defendants failed to find a single case ruling as plaintiffs propose here, and plaintiffs themselves have filed to identify a single case holding that corporations should be

3725845 v2

Honorable Jerome B. Simandle, Chief Judge
December 30, 2013
Page 9

included in a proposed class or collective action as if they were employees. As such, defendants reiterate their argument that corporate entities should not be included in any proposed class.

### G. Plaintiffs Have Failed to Present Any "Concrete Evidence" of How Installers are Treated at Other Facilities and Defendants Here Present Evidence to the Contrary; As Such, Any Conditional Certification Should Be Limited to the Mt. Laurel Facility Where They Worked.

As noted at page 26 of Defendants' Memorandum, conditional certification of FLSA collective actions generally should be limited to the geographical area in which the named plaintiffs work. For example, in *Faust v. Comcast Cable Comms. Mgmt., LLC*, No. WMN-10-2336, 2011 WL 5244421, at *4 (D. Md. Nov. 1, 2011), the court limited conditional certification of an FLSA collective action to one of eight Maryland call centers because even though employees at all call centers performed the same tasks and were subject to the same policies, "Plaintiffs have failed to provide any concrete evidence" demonstrating that employees at other facilities had been subject to the same allegedly unlawful policies.

Here, plaintiffs seek to belatedly establish the similarity of work at the other four facilities operated by Cardo by submitting new certifications that – again – contradict their sworn deposition testimony. For example, Adami and Varner falsely claim in their new certifications that:

- "During the time I was employed as an installer for Castle, Rod Arce was the manager responsible for all three warehouses." Varner Cert. ¶ 6. Yet it is undisputed that, in fact, in early January of 2011, Arce was terminated at Cardo (Arce Tr. at 102:2-3, Ex. 4 to Homans Certification), and therefore Arce could not have been "responsible for" any work at Cardo during the final two years that Varner provided services for Cardo (2011 and 2012).

- Adami asserts that he helped open each warehouse facility, yet three of the warehouses opened before he began work at Cardo and a fourth facility opened during an interim period in which he chose to work elsewhere and not at Cardo, and therefore he could not have opened such warehouses. (Supplemental Certification of Chris Cardillo, Sr., at ¶¶ 3-4, Ex. 3 to the Homans Certification.)

- "All training of installers took place in Mt. Laurel, New Jersey." Adami Cert. ¶ 9; Varner Cert. ¶ 8. Yet Adami and Varner testified contrarily in their depositions. Adami said that he needed no training and Varner testified that all training occurred "on the job" at the customer's home with a fellow installer, and not at the Mt. Laurel facility. (Varner Tr. at 30:11-15, Ex. 2 to Defendants' Counterstatement of Facts of August 6, 2013 ("Counterstatement"); Adami Tr. at 260:7-25, Ex. 1 to Counterstatement; *see also* Cardillo Cert. at ¶ 17, Ex. 3 to Homans Cert.)

- "The Installers at each of the five Castle warehouses were required to report at 7:00 a.m. to unload the truck from the window factory." Adami Cert. ¶ 14. Yet Varner admitted that, actually, a core group of the "same guys" would come in around 7 a.m. on just two days a week when the windows were delivered and help unload them, while other installers who did not want to unload windows would show up later. (Varner Tr. at 121:12-122:11, Ex. 5 to Homans Cert.; *see also* Cardillo Cert. at ¶ 5-16, 25, Ex. 3 to Homans Cert.)

- At ¶ 19, Adami re-alleges that "Castle required its installation crews to wear apparel identifying that they worked for Castle," even though Varner admitted this was not true and he did not wear Castle apparel on his jobs. (Counterstatement at ¶ 52 (citing Varner Tr. at 214:14-215:23).)

- Plaintiffs argue without any foundation that the arbitration agreements were all signed on payday with Cardo threatening the installers would not be paid unless they signed. In fact, as demonstrated by Exhibit A to the Cardo certification, November 9, 2012, (the date many were signed) was not a bi-weekly payroll date, proving yet again that plaintiffs are desperate and reckless with their allegations. (Cardillo Cert. at ¶ 29, Ex. 3 to Homans Cert.)

In sum, consistent with his conduct at Cardo and elsewhere, Adami and Varner continue to make demonstrably false allegations to salvage their claims, and therefore their sham certifications should be disregarded in their entirety. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007) (rejecting statements by a party that contradict that party's sworn testimony at deposition under the "sham affidavit" doctrine).

### H. These Plaintiffs and This Counsel Are Not Reliable or Appropriate Class Representatives, Given The Demonstrated Criminal Conduct, Conflicts and Other Factors.

Finally, defendants urge the Court to deny class or collective action certification to these plaintiffs and this counsel because the undisputed record establishes that they have severe credibility issues and/or conflicts and therefore would not be appropriate class representatives.

As for the named plaintiffs, they are admittedly tax cheats, poor record keepers and, in the case of Adami, a repeated felon – with a pending arrest and conviction for writing fraudulent drug prescriptions:

- Adami admits that he was recently arrested for "obtaining prescription [drugs] under false pretense," and has been convicted of or pled guilty to two other felonies in the past, one involving receiving stolen property (Adami Tr. at 34:2-35:21, 405:19-406:24, Ex. 6 to Homans Certification);
- Both Adami and Varner admit they have not paid or filed their income taxes in years (Counterstatement ¶ 28);

3725845 v2

- Adami and Varner both admit to not keeping any records as to the hours or jobs worked at Cardo, and base their claims on self-contradictory allegations of six-day weeks and 12-hour days, which they recant upon being confronted with the documentary evidence of their limited work; and
- Adami admits to engaging in an embezzlement scheme at Cardo, in which Rod Arce – plaintiffs' key witness – would overpay Adami through fraudulent work orders, and Adami would then hand over the ill-gotten proceeds to Arce, which he knew "was a way for [Arce] to put cash in his pocket" (Counterstatement ¶ 86).

As for plaintiffs' counsel, his combined conflicts of interest and lack of experience in wage and hour class and collective actions make him an inappropriate representative for any class, as first noted in Defendants' Memorandum:

- Plaintiffs' counsel has presented no evidence of any experience litigating FLSA and wage-and-hour claims, collective actions or class actions, despite defendants' challenge on this point in Defendants' Memorandum at pp. 17-18;
- Plaintiffs' counsel's failure to file four opt-in certifications for more than one year – thereby, depriving these four of the ability to seek more than one year of alleged unpaid overtime -- raises serious doubts about Mr. Hannye's ability or concerns as to fairly representing the interests of purported class members;
- Plaintiffs' counsel would be seriously compromised in his ability to represent this class, as one of his key witnesses, Rod Arce, admits to socializing frequently with Hannye, and the principal of Hannye's major client, Zaza Corporation, which is a direct competitor of Cardo (Counterstatement ¶¶ 91-95);
- Plaintiffs' counsel also has a conflict of interest in that his major client, Zaza, is also a window installer and also pays its installers as independent contractors, demonstrating that Hannye's position here is adverse to the interests of his other client and his plaintiffs' case will be undermined at trial by evidence that plaintiffs' counsel's own client pays window installers in a way that they are now claiming is unlawful (Counterstatement ¶¶ 92-93, 95); and
- Plaintiffs' counsel has been disqualified from a related state court case involving Cardo because he had conflicting roles as both a witness and a plaintiffs' lawyer. *Zaza Corp. et al. v. Mitnick et al.*, Docket No. L-1811-12 (N.J. Super. Ct., Camden County). Defendants can provide information on that matter, as needed.

Given that neither plaintiffs nor their counsel are appropriate class representatives, their motion as to class and collective action certification should be denied on that basis alone.

3725845 v2

## CONCLUSION

For all of these reasons, and those set forth in the primary briefing and in oral argument, the defendants respectfully request that the Court deny with prejudice plaintiff's motion for class certification and their motion for conditional collective action certification.

Respectfully submitted,

FLASTER/GREENBERG P.C.

Michael D. Homans

MDH/kc
Enclosures

cc:   Richard S. Hannye, Esq. (via email and first-class mail w/encl.)

3725845 v2