**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRED ADAMI and JACK F. VARNER,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>CARDO WINDOWS, INC., et al.,<br><br>                    Defendants. | CIVIL NO. 1:12-02804 (JBS) (JS) |

---

**MEMORANDUM OF LAW OF DEFENDANT CARDO WINDOWS, INC.**
**IN OPPOSITION TO THE MOTION OF PLAINTIFF, FRED ADAMI,**
**FOR SUMMARY JUDGMENT AS TO DEFENDANT'S COUNTERCLAIMS**

---

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS ................................................................................................. 1

STANDARD OF REVIEW .............................................................................................. 1

LEGAL ARGUMENT...................................................................................................... 1

I.     PLAINTIFF FAILED TO PROVIDE A STATEMENT OF MATERIAL FACTS NOT IN DISPUTE; THEREFORE HIS MOTION "SHALL BE DISMISSED" ......................................... 1

II.    CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR FRAUD AGAINST FRED ADAMI ............................................................................................................ 2

III.   CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR CONVERSION OF ALUMINUM COIL BY FRED ADAMI ........................................................................... 8

IV.    CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR CONSPIRACY AGAINST FRED ADAMI.............................................................................................................. 8

V.     CARDO DOES NOT NEED TO ESTABLISH THE EXACT AMOUNT OF DAMAGES TO SUPPORT ITS CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST FRED ADAMI ................................................................... 11

VI.    CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR BREACH OF CONTRACT, IRRESPECTIVE OF THE FLSA ................................................................................. 13

CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................1

*Bowers v. NCAA*,
9 F. Supp. 2d 460 (D.N.J. 1998) ...............................................................................2

*Corestar Int'l Ptc. Ltd. v. LPB Commc'ns, Inc.*,
513 F. Supp. 2d 107 (D.N.J. 2007) ...........................................................................8

*Delaney v. Am. Express Co.*,
CIV 06-5134 JAP, 2007 WL 1420766 (D.N.J. May 11, 2007)................................3

*Eli Lilly and Co. v. Roussel Corp.*,
23 F. Supp. 2d 460 (D.N.J. 1998) ...........................................................................10

*Farris v. County of Camden*,
61 F. Supp. 2d 307 (D.N.J. 1999) ...........................................................................10

*Gabrial v. Safeway*,
CIV. 10-2256 (JBS/JS) 2011 WL 5864033 (D.N.J. Nov. 21, 2011) .........................2

*Hunt v. Cromartie*,
526 U.S. 541 (1999)...................................................................................................1

*Jacobs v. Pa. Dept. of Corrections*,
No. 04–1366, 2011 WL 2295095 (W.D. Pa. June 7, 2011)......................................9

*Jake Ball Trust v. Durst*,
CIV. 12-5255 JBS/AM, 2013 WL 4008802 (D.N.J. Aug. 5, 2013) .........................4

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)......................................................................................11

*Mulzet v. R.L. Reppert, Inc.*,
54 Fed. Appx. 359 (3d Cir. 2002) ...........................................................................14

*Rogers v. United States*,
340 U.S. 367, 71 S. Ct. 438, 95 L. Ed. 344 (1951)..................................................9

*Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*,
494 F. Supp. 1139 (D. Del.1980)..............................................................................9

*Score Bd., Inc. v. Upper Deck Co.*,
   959 F. Supp. 234 (D.N.J. 1997) ..................................................................................11

*Scott v. Harris*,
   550 U.S. 372 (2007)..................................................................................................1

*Stillwagon v. Innsbrook Golf & Marina, LLC*,
   2:11-CV-1338, 2013 WL 1180312 (W.D. Pa. Mar. 20, 2013) .................................9

*Sturgis v. Mattell, Inc.*,
   525 F. Supp. 2d 695 (D.N.J. 2007) .......................................................................14

*United States. v. Fox,*
   130 F.2d 56 (3d. Cir. 1942).....................................................................................9

*United States v. Obialo,*
   23 F.3d 69 (3d Cir. 1994) .......................................................................................9

*US Investigations Servs., LLC v. Callihan*,
   2:11-CV-00355, 2012 WL 933069 (W.D. Pa. Mar. 19, 2012) .................................9

*Wheeler v. Hampton Township*,
   399 F.3d 238 (3d Cir. 2005)...................................................................................14

**STATE CASES**

*Albright v. Burns*,
   206 N.J. Super. 625 (App. Div. 1986) .....................................................................7

*Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.,*
   88 Md. App. 672, 596 A.2d 687 (Md. App.1991) ...................................................9

*Gennari v. Weichert Co. Realtors,*
   148 N.J. 582 (1991) ................................................................................................2

*Hanover Fire Ins. Co. of New York v. Furkas,*
   267 Mich. 14, 255 N.W. 381 (Mich. 1934) ...........................................................10

*Jewish Ctr. of Sussex Cnty. v. Whale*,
   165 N.J. Super. 84 (Ch. Div. 1978) *aff'd*, 172 N.J. Super. 165 (App. Div. 1980) *aff'd*,
   86 N.J. 619 (1981) ..................................................................................................7

*Norwood Easthill Assocs. v. Norwood Easthill Watch*,
   222 N.J. Super. 378 (App. Div. 1988) ...................................................................11

*Williams v. Dep't of Public Welfare, City of Newark*,
   43 N.J. Super. 473, 129 A. 2d 56 (1957) ...............................................................14

*Winslow v. Corporate Express, Inc.,*
   364 N.J. Super. 128 (App. Div. 2003) ........................................................................3

**FEDERAL STATUTES**

FLSA .......................................................................................................................13, 14, 15

**STATE STATUTES**

New Jersey Wage and Hour Law..........................................................................13, 15

New Jersey Workers' Compensation Act .................................................................14

**RULES**

Fed. R. Civ. P. 56(a) .........................................................................................................1

Local Rule 56.1(a) ....................................................................................................1, 2, 4

## STATEMENT OF FACTS

Pursuant to Local Rule 56.1(a) Defendants have submitted herewith a Statement of Disputed Material Facts.

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is "material" if it might affect the outcome of the suit under the applicable rule of law.  *Id.*

A court must view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (the district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

## LEGAL ARGUMENT

## I.    PLAINTIFF FAILED TO PROVIDE A STATEMENT OF MATERIAL FACTS NOT IN DISPUTE; THEREFORE HIS MOTION "SHALL BE DISMISSED"

Pursuant to Local Rule 56.1(a) a movant on a motion for summary judgment "shall furnish a statement which sets fort material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."  Further, the Rule mandates that a motion for summary judgment

1

"unaccompanied by a statement of material facts not in dispute ***shall be dismissed***" (emphasis

added).  *See also Bowers v. NCAA*, 9 F. Supp. 2d 460, 476 (D.N.J. 1998) ("failure to comply

with the Local Civil Rule would by itself suffice to deny [a party]'s motion for summary

judgment"); *but see Gabrial v. Safeway*, CIV. 10-2256 (JBS/JS) 2011 WL 5864033, at *6-7

(D.N.J. Nov. 21, 2011) (where facts well-organized, and no evidence of bad faith, court may

choose to address motion despite lack of required statement).

Plaintiff's failure to accompany his motion for summary judgment with a statement of

material facts – or to otherwise provide evidence of undisputed facts in an organized, complete

way – leaves the court with no evidentiary basis upon which to decide his motion, and plaintiff

has no excuse for failing to comply with Local Rule 56.1(a)'s mandate.  The motion, therefore,

should be dismissed on this ground alone.

## II.    CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR FRAUD AGAINST FRED ADAMI

Contrary to plaintiff's improper and unsubstantiated arguments about Cardo's fraud

claim, the actual allegations, evidence and testimony establish more than a sufficient basis for a

reasonable jury to find that Fred Adami defrauded Cardo.

In order to plead fraud in New Jersey, a plaintiff must allege: "(1) a material

misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of

its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the

other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors,* 148 N.J. 582

(1991).[1]  New Jersey law provides that in addition to a material misrepresentation, an omission

also may form the basis for common law fraud.  In fact, *Gennari* has been cited as: "(1) a

material misrepresentation **[or omission]** of a presently existing or past fact; (2) knowledge or

---

[1] Cited inaccurately by Plaintiff as "*Jennaire.*"

belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Delaney v. Am. Express Co.*, CIV 06-5134 JAP, 2007 WL 1420766 (D.N.J. May 11, 2007) (emphasis added, brackets in original).

Further,"[t]he '[d]eliberate suppression of a material fact that should be disclosed' is viewed as 'equivalent to a material misrepresentation (i.e., an affirmative misrepresentation),' which will support a common law fraud action." *Winslow v. Corporate Express, Inc.,* 364 N.J. Super. 128, 139 (App. Div. 2003) (finding that employer's failure to disclose to employee that it had changed its method of calculating commissions to sales representatives could constitute "deliberate suppression" of a material fact that should be disclosed, which could constitute the misrepresentation element of a fraud claim). The *Winslow* court found that the defendant's intent in withholding information of the method of calculation of commission to pay sales representatives was to induce the sales representatives to continue working with the expectation that they would receive the same levels of commissions in the past, and that the representatives suffered harm as a result of the unannounced reduction. *Id.* at 141.

The evidence here, viewed in the light most favorable to Cardo, shows that Adami participated in a scheme to submit fraudulent work orders and invoices, then deliberately suppressed information that he was being overpaid for work he did not do, and kept the cash for himself and/or shared it with his co-conspirator, Arce, which directly harmed Cardo.

Plaintiff seeks to dismiss Cardo's counterclaim for fraud by narrowly casting it as being "based entirely on the allegation that Fred Adami submitted bills to Castle for work he did not perform."[2]  Plaintiff provides no citation to the record for this narrowing of the claim.

In fact, defendant's counterclaim makes clear that the fraud claim is based on a repeated fraudulent scheme used by Adami and Arce to misappropriate funds from the company, including the following specific allegations:

> 22.    In or around 2010, Adami began receiving funds from Cardo Windows based on fraudulent invoices and work orders in which Adami claimed that he did work for Cardo Windows, but which he did not do.  These false invoices and work orders were concocted as part of [a] fraudulent scheme by Adami and his co-conspirator, [Rod] Arce.
>
> 23.    Adami knew and intended that Cardo Windows would rely on these false work orders and invoices and issue payments on them.
>
> 24.    Cardo Windows, relying on these false work orders and invoices, made approximately $7,500 worth of payments to Adami.
>
> 25.    Adami admitted to Cardo Windows that he took part in this fraudulent scheme and received the $7,500 worth of payments. …

Answer To Complaint, Affirmative Defenses and Counterclaim for Fraud, Conversion, Conspiracy, Breach of Contract and Tortious Interference with Contract [Document 6], filed June 22, 2012 at ¶¶ 22-25, June 22, 2012.

---

[2] This bald assertion exemplifies the problems created by plaintiff's failure to submit a statement of undisputed facts, or otherwise to support many of the statements in his brief.  Importantly, where record citations are not included and are not readily apparent, a party's factual assertions may be disregarded pursuant to Local Rule 56.1(a). *See, e.g.*, *Jake Ball Trust v. Durst*, CIV. 12-5255 JBS/AM, 2013 WL 4008802, at *1 n.1 (D.N.J. Aug. 5, 2013) (Simandle, C.J.).

4

These allegations have been borne out by ample evidence and admissions in discovery. The evidence shows that Adami admitted to Cardo management that he would "turn in a bill stating he did a job," even though he did not do it, and then "Fred [Adami] would accept the check from [Cardo d/b/a "Castle"], go to the bank, cash it, and then give that money or some of it to Rod [Arce]." (Statement of Material Facts in Dispute in Opposition to Plaintiff's Motion for Summary Judgment ¶ 4 (hereinafter "Statement of Facts"); Cardillo, Jr. Tr., Ex. 3 at 173:11-174:15.) Adami testified under oath in this case that he knew he was being overpaid for work that he did not do, and that he would then turn over the cash to his co-conspirator, Rod Arce, and it was his understanding that Arce put the "cash in his pocket." (Statement of Facts ¶¶ 3-5.) Arce denies that Adami ever paid him any of the overpaid cash, which leads to the conclusion that Adami, in fact, kept the cash. (*Id.* at ¶ 8.) This pattern of overpayment and kickbacks occurred repeatedly, and at least 20 different occasions have been documented. (*Id.* ¶ 6.) This scheme resulted in Adami receiving monies for work that he never performed.  Adami knew of the fraudulent billing scheme, actively participated in it, and admits he was paid for work he did not perform:

> Q.  Did you ever receive a paycheck
> from Cardo Windows for a job and then paid
> over some cash from that payment to Rod Arce?
> A.  I was -- I -- I was instructed on
> several -- a few occasions to -- to give cash
> back to either Rod Arce and/or Ed Jones.
> This happened after Rod Arce was already
> removed from the company as well and -- and
> monies were given, was given to Ed Jones.
> Q.  All right.  But to Rod Arce on
> occasion also?
> Yes?
> A.  Sure, yes.
> Q.  Did you understand why that cash
> was being paid to them?
> A.  I didn't, no.  I just know that I,

5

> you know, did work in -- I did work for
> certain jobs, they agreed to pay me X amount.
> They put so much in my check.  And if they
> over -- overpaid me, I was instructed to give
> the money back to either Ed Jones or -- or  Rod Arce.
> Q.  Did it cross your mind that perhaps
> they were taking money from the company?
> A.  It -- did it cross my mind?  I
> don't -- it -- I don't know how one takes  money from themselves.
> But...
> **Q.  Can you answer my question?**
> **Did it cross your mind that maybe**
> **this was a way for them to be taking money**
> **from the company?**
> **A.  I -- it was my belief that I was**
> **being overpaid, it was a way for him to put**
> **cash in his pocket.**
> Q.  Okay.  And that applied with regard
> to Mr. Arce and Mr. Jones?
> A.  And Mr. Jones, correct, yes.

Adami Tr., Ex. 2, at 91:17-93:3 (emphasis added).

Adami's claim that he did not pocket the cash himself is disputed by his co-conspirators,

and thus a reasonable fact-finder could find that, in fact, Adami kept the misappropriated funds.

When Arce, the co-conspirator, was questioned on Adami's statement that the scheme was a way

to "put cash in [Arce's] pocket," Arce disputed that he ever received any of the overpaid funds,

thereby suggesting that the overpayments stayed in Adami's pocket.

> Q.    Okay.  But was he overpaid in order to get that money
> that he could pay you back?
> A.    Fred was paid what he billed.  Every payroll that I
> process, Fred paid what was billed.
> Q.    Did you ever knowingly take part in a situation,
> which he was overpaid so the cash would be paid back to you?
> A.    No.

Arce Tr., Ex. 5, at 320:6-320:15.

Moreover, contrary to plaintiff's allegations, there is no record to support his argument

that defendant Ed Jones "admittedly forged Fred Adami's installer's pay stubs upon which

Cardo's counterclaim for fraud are based."  To the contrary, Jones testified to being a "dupe" in the fraudulent scheme of Adami and Jones's boss, Arce, to embezzle funds from the company through Adami.  (Statement of Facts ¶ 7.)  Jones had believed Arce was providing legitimate instructions to create work orders and invoices relating to Adami – not realizing that these work orders and invoices were a false and fraudulent way for Adami and Arce to embezzle cash from the company into their pockets. (*Id*.)

As such, Cardo's allegations and evidence of fraud are much broader than Adami argues; it was not merely that Jones submitted false pay stubs, but that Adami also knowingly submitted false work orders, knew of the fraudulent scheme, participated in it, and benefited from it.

Viewing these facts in the light most favorable to Cardo, the non-moving party, it is clear that a reasonable finder of fact would have a more than sufficient basis to determine that Adami defrauded Cardo through a fake over-billing scheme in which he was an active participant in submitting false work orders and pocketing the resulting cash.  The elements of fraud are clearly met, where the evidence shows that (1) Adami participated in and deliberately suppressed the fraudulent scheme by submitting and allowing false work orders and invoices to be submitted in his name, and collecting the money paid on those fraudulent documents; (2) Adami admittedly knew it was a fraudulent invoicing scheme; (3) Adami intended Cardo to rely on it, in order to get paid money he had not earned; (4) Cardo reasonably relied on the false work orders and invoices and issued payments to Adami based on them; and (5) the fraud caused damage of at least $7,500 worth of wrongful payments to Adami.[3]

For all of these reasons, plaintiff's motion to dismiss the fraud claim must be denied.

---

[3] While there is certain damage here, New Jersey courts have also held that "where fraud is found, damage may be presumed." *Jewish Ctr. of Sussex Cnty. v. Whale*, 165 N.J. Super. 84, 90 (Ch. Div. 1978) *aff'd*, 172 N.J. Super. 165 (App. Div. 1980) *aff'd*, 86 N.J. 619 (1981); *Albright v. Burns*, 206 N.J. Super. 625, 636 (App. Div. 1986).

7

III.    **CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR CONVERSION OF ALUMINUM COIL BY FRED ADAMI**

The parties do not disagree on the basic elements of conversion: (1) the existence of property; (2) the right to immediate possession thereof belonging to plaintiff; and (3) the wrongful interference with that right by defendant. *Corestar Int'l Ptc. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007).

Yet, Adami can only argue Cardo's inability to make out a conversion claim by ignoring the ample evidence and testimony in the record as to Adami's thievery and criminal conduct at Cardo, stealing aluminum coil from three different locations of the company, and admitting to doing the same to numerous people.

The facts on Adami's "wrongful interference" with Cardo's ownership of its coil are set forth in the Statement of Facts ¶¶ 13-18.  Adami has presented nothing in his motion to refute this evidence, and at the very best all he can do is create an issue of fact as to whether or not he stole the coil.

As for Adami's claim that Cardo unlawfully destroyed evidence relating to coil inventories, he presents no evidence to support this "spoliation" [sic] claim or any adverse inference therefrom.  To the contrary, the record evidence establishes that Cardo did not retain detailed inventory sheets in relation to coil, but has produced all inventory sheets it has relating to Adami's thefts, including inventory and order forms from the Mechanicsburg and Connecticut offices which support the theft and conversion claims alleged. (Statement of Facts ¶¶ 19-31.)

Because evidence exists from which a reasonable fact-finder conclude that Adami stole coil from Cardo, as alleged, this aspect of his motion must be denied.

IV.    **CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR CONSPIRACY AGAINST FRED ADAMI**

Adami seeks to escape liability for participating in an alleged conspiracy with Rod Arce to embezzle funds from Cardo (Count III) by arguing, without legal basis, that Adami cannot be liable for conspiracy unless all co-conspirators are named as defendants in the claim.

It is well settled in the criminal context that alleged co-conspirators need not be joined in the same action.  *See, e.g.*, *United States. v. Fox,* 130 F.2d 56, 57 (3d. Cir. 1942); *United States v. Obialo,* 23 F.3d 69, 72 (3d Cir. 1994) ("The failure of the government to be able to name and personally identify the other conspirator is not fatal to a conspiracy conviction.") (citing *Rogers v. United States,* 340 U.S. 367, 375, 71 S. Ct. 438, 95 L. Ed. 344 (1951) (explaining that "the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown.")).

"This same rationale holds true in the civil context of conspiracy.  In order for one member of a civil conspiracy to be liable, not all members of the conspiracy need be named as defendants or joined as defendants."  *US Investigations Servs., LLC v. Callihan*, 2:11-CV-00355, 2012 WL 933069, at *2 (W.D. Pa. Mar. 19, 2012)  (citing *Jacobs v. Pa. Dept. of Corrections,* No. 04–1366, 2011 WL 2295095, at *12 (W.D. Pa. June 7, 2011) (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.,* 88 Md. App. 672, 596 A.2d 687, 698 (Md. App.1991) (stating that "the law permits a plaintiff to recover against any one or more of the conspirators without naming them all as defendants" and holding that "a conspiracy may be maintained against only one conspirator." )); *see also Stillwagon v. Innsbrook Golf & Marina, LLC*, 2:11-CV-1338, 2013 WL 1180312, at *14 (W.D. Pa. Mar. 20, 2013) (same).

Although defendant could not find a New Jersey civil case squarely on point, other courts confirm that a conspiracy may be maintained against only one conspirator.  *See Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,* 494 F. Supp. 1139, 1147 (D. Del.1980) ("A

conspiracy is a tort for which the conspirators are jointly and severally liable, and a case cannot be dismissed for nonjoinder even though only one conspirator is subject to the jurisdiction of the court"); *Hanover Fire Ins. Co. of New York v. Furkas*, 267 Mich. 14, 20, 255 N.W. 381, 383 (Mich. 1934) ("A joint action may be maintained against the conspirators for the damages caused by their wrongful act, but all the conspirators need not be joined; an action may be maintained against but one").

No court in New Jersey has established the rule that plaintiff seeks here – that all participants in a civil conspiracy must be named as defendants in order for the claim to survive. The case cited by Plaintiffs, *Farris v. County of Camden*, 61 F. Supp. 2d 307, 330 (D.N.J. 1999), certainly does not say as much. The issue in *Farris* was whether the plaintiff's substantive claims could stand.  Likewise, the court in *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460,496-97 (D.N.J. 1998), cited by *Farris*, determined there was no independent wrong to sustain a civil action for conspiracy.  Neither case dealt with any requirement that more than one defendant be named in the action.

As stated in Cardo's Counterclaim, and supported by the evidence, Adami and Arce, and unknown third parties, worked together under a common scheme to defraud Cardo Windows by submitting false invoices for payment, and having them paid by Cardo Windows." (Def. Counterclaim ¶ 53.)  This allegation is supported by facts brought forward in discovery. (Statement of Facts ¶¶ 3-12.)  Further, "Adami, in collusion with Arce and/or unknown third parties, worked together under a common scheme to wrongfully take, convert and sell the property and supplies of Cardo Windows in Connecticut."  (Def. Counterclaim ¶57.)

Given that plaintiff has presented no evidence to undermine these claims, and has no legal basis to require that all co-conspirators be joined in the suit, defendant respectfully requests that the motion to dismiss the conspiracy claim be denied.

## V.   CARDO DOES NOT NEED TO ESTABLISH THE EXACT AMOUNT OF DAMAGES TO SUPPORT ITS CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST FRED ADAMI

Contrary to plaintiff's argument that Cardo's tortious interference claim fails due to a lack of proof as to the exact amount of damages, Cardo has shown that it has sustained damages as a result of the Adami's tortious interference with the restrictions in Rod Arce's post-employment contract, including the loss of potential customers.

The parties agree on the elements of tortious interference: (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993). Although damages are an element of tortious interference, there is no requirement that they be proven to an exact amount.

Neither the *Lightning Lube* court, nor any New Jersey court, requires an exact amount for damages resulting from the tortious interference. Instead, a plaintiff need only "demonstrate[] an injury," and "present proof that *but for* the acts of the defendant, the plaintiff 'would have received the anticipated economic benefits.'" *Id.* at 1168 (citation omitted). This damage can include "lost trust," and discouraging prospective clients. *Id.* The requirement of "some damage" includes any "injury, loss, or detriment reasonably <u>attributable</u> to defendants' alleged malicious interference." *Norwood Easthill Assocs. v. Norwood Easthill Watch*, 222 N.J. Super. 378, 385-386 (App. Div. 1988); *see also Score Bd., Inc. v. Upper Deck Co.*, 959 F. Supp. 234,

11

239 (D.N.J. 1997) (tortious interference plaintiff having "clearly lost goodwill" as part of damages).

In this case, Adami has admitted that he accepted referrals of window replacement business (which is directly competitive to the business of Cardo) from Arce, despite being aware that Arce could not compete in the window replacement business, "directly or indirectly," for a restricted period after his termination of employment with Cardo. (Statement of Facts ¶¶ 32-35.) In particular, Arce could not: "[h]ire, engage, contract or otherwise do business with, directly or indirectly, whether as an employee, independent contractor, or otherwise, any person . . . or entity that as of the Termination Date was . . . engaged by Cardo or any of its affiliates as an employee or independent contractor (the "Restricted Workers"), including but not limited to its office employees and its contracted sales persons, detailers, and installers . . ." (Statement of Facts ¶ 33.)  Adami's knowing assistance to Arce in violating his restrictive covenants through accepting business referrals from Arce for competitive window installations caused harm to Cardo -- although it is admittedly hard to quantify, as is often the case with restrictive covenant violations.  Arce had worked for Cardo for nearly 10 years, most recently as its Chief Operating Officer, and he received referrals for window business due to the goodwill and business relationships he developed while at Cardo.  Therefore, the window business referrals that came to him were fueled, in whole or in part, by Cardo's goodwill and business relationships (which the restrictive covenants were designed to protect).  Adami's assistance to Arce in evading his non-compete restrictions caused harm to Cardo in its loss of customers, potential customers and goodwill in the market.  As such, even though Chris Cardillo, Sr., could not put a dollar amount on the damage, it is clear that Cardo has suffered harm from Adami's tortious interference and Cardo's tortious interference claim should not be dismissed.

12

VI.   **CARDO HAS ESTABLISHED A CAUSE OF ACTION FOR BREACH OF CONTRACT, IRRESPECTIVE OF THE FLSA**

Plaintiff Adami wrongfully asserts that Cardo's breach of contract counterclaim is not permitted because the FLSA and New Jersey Wage and Hour Law ("NJWHL") do not include provisions for counterclaims by employers. Count VI of Cardo's counterclaim is an action for breach of Adami's independent contractor agreement, seeking recovery of all amounts paid to Adami under their contractual agreement. (Def. Counterclaim ¶ 71.)

As fully argued in Cardo's Brief in Support of its Response in Opposition to Plaintiffs' Motion to Dismiss Defendants' Counterclaim for Breach of Contract, and incorporated here by reference, Cardo's counterclaim for breach of contract must stand. Adami claims that defendant cannot bring a breach of contract claim because the FLSA and NJWHL do not expressly provide for such a cause of action by employers. Cardo, however, has never argued or suggested that its counterclaim for breach of contract was based on the FLSA or NJWHL. In fact, in plaintiffs' Reply Brief in Support of Motion to Dismiss Defendant Cardo's Counterclaim for Breach of Contract, plaintiffs admit that the "counterclaims are not sufficiently related to plaintiffs' FLSA claims against the defendants." (Pl. Reply Br. at p. 2.) Indeed, Cardo is not basing its breach of contract claim on the FLSA – it simply seeks to enforce the terms of the independent contractor agreements it entered into with each named plaintiff, including as to benefits, payment of taxes, indemnification, independent contractor treatment and indemnification, and the implied covenant of good faith and fair dealing.

Relying on the express terms of the independent contractor agreements, Cardo paid plaintiffs handsomely. During the course of his independent contractor relationship with Cardo, Adami engaged in multiple wrongful and/or criminal acts against Cardo (Statement of Facts ¶¶3-35; Counterclaim ¶¶ 14-35), breaching his independent contractor agreement and the implied

13

covenant of good faith and fair dealing.  Plaintiff presents no facts or law to indicate that these claims are deficient or cannot survive summary judgment.

Plaintiff's position basically boils down to an argument that because Adami brought an FLSA claim, defendant Cardo cannot bring a counterclaim for breach of contract.  This is absurd.  Imagine a not-so-different hypothetical case in which a general contractor hires a plumber to install a new water heater for its customer, and enters into an agreement guaranteeing the water heater will be fully functional for one year, and affirming the independent contractor relationship of the parties.  Under Adami's bizarre theory, if the plumber sued the business under the FLSA to be paid as an employee, the business could never file a counterclaim to enforce the one-year guarantee on the water heater, even if the water heater failed to function after 30 days.   Nothing in the law requires or suggests such an unjust and absurd result.

Plaintiff inappositely cites *Wheeler v. Hampton Township*, 399 F.3d 238 (3d Cir. 2005) for the proposition that there is no cause of action for employers pursuant to the FLSA.  In *Wheeler*, it was acknowledged that the workers at issue were union employees of a township -- not independent contractors -- who sought to redraft a collective bargaining agreement for overtime pay.  *Williams v. Dep't of Public Welfare, City of Newark*, 43 N.J. Super. 473, 129 A. 2d 56 (1957), also cited by plaintiffs, relates to the New Jersey Workers' Compensation Act, a statute that is not included in any counterclaims and is not relevant.  Instead, the Counterclaims are based in the law of the Third Circuit, which permits an independent contractor to make agreements respecting compensation, taxes, benefits, and other aspects of his employment. *See Mulzet v. R.L. Reppert, Inc.*, 54 Fed. Appx. 359, 361 (3d Cir. 2002); *Sturgis v. Mattell, Inc.*, 525 F. Supp. 2d 695, 703 (D.N.J. 2007).

Adami breached his independent contractor agreement in numerous ways, supporting Cardo's breach of contract counterclaim, irrespective of the FLSA or NJWHL.  Adami seeks employee benefits or the value thereof, despite expressly agreeing that he would not be entitled to such benefits as part of his contract with Cardo; Adami seeks damages equivalent to the payment of taxes in relation to his work under the contract, despite expressly agreeing to pay all taxes himself (which he then admittedly failed to do).  Further, Adami has a duty to indemnify and defend Cardo for such claims, pursuant to Paragraph 5 of his independent contactor agreements with Cardo.   Cardo's counterclaim, thus, is well-supported and not barred by any law.  Plaintiff's motion to dismiss the breach of contract claim therefore must be denied.

## CONCLUSION

For all of the foregoing reasons, defendant Cardo Windows, Inc. d/b/a "Castle 'The Window People'" respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment.


Dated:    January 7, 2014                              **FLASTER/GREENBERG P.C.**

                                    By:     *s/ Peter J. Tomasco*
                                            Michael D. Homans, Esquire
                                            Peter J. Tomasco, Esquire
                                            Commerce Center
                                            1810 Chapel Avenue West
                                            Cherry Hill, NJ 08002
                                            (856) 661-1900 (telephone)
                                            (856) 661-1919 (facsimile)
                                            Michael.Homans@flastergreenberg.com
                                            Peter.Tomasco@flastergreenberg.com
                                            *Attorneys for defendants*


15

3704772 v3