IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRED ADAMI and JACK VARNER,<br><br>    Plaintiffs,<br><br>  v.<br><br>CARDO WINDOWS, INC. d/b/a<br>"Castle, 'The Window People'"<br>et al.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br> Civil No. 12-2804 (JBS/JS)<br><br><br>    **OPINION** |

APPEARANCES:

Richard S. Hannye, Esq.
HANNYE LLC
128 West Cottage Avenue
Haddonfield, NJ 08033
  Attorney for Plaintiffs

Kenneth Goodkind, Esq.
Peter J. Tomasco, Esq.
Michael D. Homans, Esq.
FLASTER GREENBERG P.C.
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
  Attorneys for Defendants


**SIMANDLE**, Chief Judge:

**I. Introduction**

  This matter comes before the Court on Plaintiffs' motion for

conditional certification of a FLSA "opt-in" collective action and

certification of a Rule 23 "opt-out" state wage class action

[Docket Item 43], Defendants' motion to seal [Docket Item 66], and

Plaintiffs' motion to dismiss Cardo Windows, Inc.'s counter-claims for breach of contract [Docket Item 74].

For the reasons set forth below, Plaintiffs' motion for conditional certification of a FLSA collective action will be granted. Because Plaintiffs' motion for class certification under Rule 23 turns on the appropriate test to determine whether an individual is an employee or an independent contractor under the New Jersey Wage and Hour Law ("NJWHL") and the Supreme Court of New Jersey recently accepted certification of this exact question, this motion will be denied without prejudice. Defendants' motion to seal will be granted in part. Plaintiffs' motion to dismiss Cardo Windows, Inc.'s counter-claims will be granted in part and denied in part.

## II. Background

### A. Factual Background

Defendant, Cardo Windows, Inc. ("Cardo") does business under the trademark, "Castle the Window People." (Deposition of Roderick J. Arce on January 14, 2013 ("Arce Dep.") 149:3-7.) Cardo sells and installs windows in multiple states including New Jersey, Pennsylvania, Delaware, Massachusetts, Rhode Island, Vermont, New Hampshire, Connecticut, New York, and Ohio. (Arce Dep. 149:8-18.) Cardo maintains warehouses and sales facilities in Mount Laurel, New Jersey; Cedar Grove, New Jersey; Mechanicsburg, Pennsylvania; East Berlin, Connecticut; and Boston, Massachusetts.

2

(Certification of Christopher Cardillo, Sr. ("Cardillo Cert.") [Docket Item 68-5] ¶ 4.) Defendants contend that each of the five different facilities operates on its own schedule and is operated by different people. (Cardillo Cert. ¶ 12.)

Plaintiff Jack Varner worked 10 to 14 hours per day as an installer for Cardo from February 2003 to October 2012. (Certification of Jack Varner ("Varner Cert.") ¶ 1.) He did not install windows for anyone but Cardo during the 11 years he worked as an installer for Cardo, except for two roofing jobs he completed with his brother. (Deposition of Jack Varner ("Varner Dep.") 27:4-18; 28:5-17.) Plaintiff Fred Adami worked 10 to 12 hours per day installing windows for Cardo from March 2001 to June 2012. (Deposition of Fred Adami ("Adami Dep.") 113:4-12.) Varner and Adami primarily completed work orders in New Jersey. (Adami Dep. 257:11-16; Varner Dep. 127:17-25; 128:1-6.) Both completed work for Cardo as sole proprietors and signed agreements characterizing their relationship with Cardo as independent contractors. (Adami Agreement dated March 1, 2001 [Docket Item 6-1]; Varner Agreement dated January 29, 2010 [Docket Item 68-23.])

Roderick Arce was employed by Cardo from 1994 to January 2011. (Arce Dep. 8:16-20.) He started as an Installation Manager in 1994 and became Director of Operations. (Id.) In these capacities, Arce was responsible for scheduling window installations, ordering windows, hiring and training installers,

and appearing in court on behalf of Cardo. (Arce Dep. 9:21-10:5.) From 2005 to January 2011, Arce was one of three partners in the company. (Arce Dep. 8:16-20.) According to Defendants, Arce was terminated for allegedly embezzling funds from Cardo. (Defendants' Counterstatement of Facts ("Def. CS") [Docket Item 68] ¶ 89.)

Cardo's installation work crews consist of both "installers" and "helpers." For efficiency, Cardo installation managers prefer crews with two or three people. (Arce Dep. 23:10-22.) A crew consists of an installer and one or more helpers. (Arce Dep. 23:20-22.) According to Plaintiffs, the only difference between installers and helpers is that installers have workers' compensation liability insurance, a driver's license, a work truck, tools, and equipment, while helpers lack any of the above. Otherwise, helpers complete the same tasks as the installers with few exceptions. (Arce Dep. 13:22-24; 15:7-18.) If a Cardo installer is not assigned enough work to keep a helper busy, the helper is assigned to another installer with more work. (Arce Dep. 74:16-25; 75:1-3.) Defendants contend that the helpers work for, are selected by, and are paid by the installer. (Def. CS ¶ 19.)

Plaintiffs and Defendants agree that Cardo provides installation crews with materials needed for each job and if Cardo does not have the needed materials, installation crews purchase the material for future reimbursement by Cardo. (Arce Dep. 59:23—25; 60:1—3; 61:6-18.)

Plaintiffs and Defendants agree that due to regular turnover, Cardo is frequently seeking and hiring new installers. When seeking new installers, Cardo's primary requirement is that the applicant have workers' compensation insurance, a pickup truck, and the tools necessary to install windows. (Arce Dep. 81:5-20.) Applicants with experience installing windows, but without a truck or tools, are offered a job as a helper. (Adami Dep. 267:1-12.) In 2009, Cardo had between 27 and 32 installers at any given time and 95 percent had a helper. (Arce Dep. 13:4-10.) Plaintiffs contend that Cardo trains 30 to 45 new installers each year at a cost of $10,000 each, and Cardo also trains the installers' helpers. (Arce Dep. 210:1-25; 211:1-25; 212:1-6.) Defendants contend that Cardo only hires experienced installers and new installers only receive on-the-job training from other installers. (Def. CS ¶¶ 43-47.)

Plaintiffs assert that Cardo exercises significant control over the day-to-day operations of the installers. Cardo requires installation crews to display signage on their trucks and wear apparel with Cardo's logo, indicating they work for Cardo. (Arce Dep. 47:7-16; 47:20-25; 48:1.) Cardo's standard sales pitch to customers is that "all of our installers work only for Castle." (Arce Dep. 151:8-18.) Cardo also requires its installers to tell customers they work for Cardo and discourages installers from telling customers they are independent contractors because Cardo sells its products with the understanding that Cardo manufactures,

5

sells, and installs its own windows.[1] (Arce Dep. 55:24-25; 56:1; 57:8-22.) Installation crews must call their manager between 1:00 pm and 2:00 pm to let the manager know whether they will complete the job that day. (Arce Dep. 75:23-25; 76:1-4.) Cardo requires its installers to complete a time request form if they want to take time off. (Varner Dep. 75:15-22.) Defendants contend that the installers, not Cardo management, determine when installers will complete work for Cardo, based primarily on the customer's schedule. (Deposition of John Belmonte on April 30, 2013 ("Belmonte Dep.") 38:19-23.)

As further evidence of Cardo's control over the installers, Plaintiffs note that each day, Cardo installation managers meet with the installers in the warehouse or meeting room for five to seven minutes to discuss their work the day before. (Arce Dep. 49:4-15.) Additionally, management provides installation crews with a job packet each day which includes a detail sheet, an office cover sheet, a copy of the customer contract with Cardo, a copy of the Cardo salesman's window measurement sheet, a copy of the Cardo salesman's pricing sheet, a road map to the customer's house, and a quality control report to be completed by the customer. (Arce Dep. 49:23-25; 50:1-4.)

---

[1] Plaintiffs also contend that Cardo instructs installers to further obscure their employment status by telling customers to call the office to speak to their managers if asked about workers' compensation insurance. (Arce Dep. 56:110-12.)

Plaintiffs and Defendants disagree regarding the typical hours worked by Cardo installation crews. Plaintiffs contend that some Cardo installers work seven days per week, but six days per week is mandatory. (Arce Dep. 97:10-14.) Beginning in 2008, Cardo started to give its installers off every other Saturday, so they would work a six day week, then a five day week, and so on. (Arce Dep. 97:10-14.) Installation crews work from seven in the morning when they are required to pick up windows for each window installation job at one of Cardo's warehouses, until six, seven or eight o'clock at night, when they are required to call their manager to record their hours and report whether the job was completed. (Arce Dep. 25:23-25; 26:1—12; 98:7—13; 142:8—25; 143:1-6.) According to Plaintiffs, the average Cardo installer works 60 to 65 hours per week. (Arce Dep. 98:18-25; 99:1.) Defendants contend that installers work a wide variety of times for Cardo with no mandatory requirements. (Cardillo Cert. ¶ 13.) Further, Defendants state that neither Plaintiffs Adami nor Varner averaged more than 8.75 working days in a 14-day pay period during the most recent two-year period for each. (Id.)

Plaintiffs explain that Cardo's installers are paid based on stubs submitted to Cardo upon completion of individual installation jobs. After completing a window installation, Cardo installers fill out an "Installer Pay Stub" reflecting the items installed, the quantity of each item installed, the cost for

7

installation, and a subtotal of amount owed. (Hannye Cert. Ex. 68
[Docket Item 45-4.]) Cardo's installers are paid based on the work
completed. For example, installers are paid $40 for installation
of one double hung window plus a $10 bonus. (Arce Dep. 50:18-19;
68:25; 80:5-11.) Cardo's installers are paid every two weeks based
upon the bills that had been approved by Cardo management after
cross-referencing the installer's weekly recap sheet with Cardo's
weekly recap. (Arce Dep. 51:23-25; 52:1-20.) Cardo installers are
not paid for their travel time, but they receive a gas allowance.
(Arce Dep. 77:16-23.) Defendants do not appear to dispute
Plaintiffs' description of the compensation process, but point to
the piece work method as evidence that it is impossible to
determine the number of hours per day worked by each installer.
(Def. CS ¶¶ 76-79.)

In 2010, Cardo began requiring its installers to sign a
master subcontractor agreement after an audit by Cardo's workers'
compensation policy carrier, Selective. (Arce Dep. 154:14-25;
155:1—25; 156:1—25; 157:1—22.) Cardo required its installers to
sign the Selective Master Subcontractor Agreement on a payday and
threatened to withhold paychecks until the agreements were signed.
(Adami Dep. 385:10-20; Varner Dep. 178:14-19.) Neither Plaintiffs
Adami nor Varner read the Selective Master Subcontractor Agreement
before signing it and neither was allowed to keep a copy of what
they signed. (Adami Dep. 385:5-11; 387:6-13; Varner Dep. 240:9—

8

20.) Plaintiffs contend that many aspects of the Selective Master Subcontractor Agreement conflict with Cardo's actual treatment of its installers including assignment of work and compensation. (Hannye Cert. [Docket Item 45-1] ¶¶ 163-207.) Defendants note that both Varner and Adami also signed independent contractor agreements upon starting work with Cardo. (Def. CS ¶ 39; see also Def. Exs. 19-20 [Docket Items 68-22 & 68-23.])

Plaintiffs assert that Cardo did not pay overtime to any of its installers for work in excess of 40 hours per week in 2009 or 2010. (Arce Dep. 160:19-24.) Cardo did not provide its installers with any benefits it provided its employees such as health insurance, disability insurance and life insurance in 2009 and 2010. (Arce Dep. 160:25; 161:1-5.) Cardo did not withhold any federal payroll taxes from the installers' paychecks or provide installers with W-2s. (Arce Dep. 161:14-20.) Cardo withholds state payroll taxes from the pay of installers depending on their state of residence. (Deposition of Nicholas Cardillo on April 30, 2013 ("Cardillo Dep.") 109:19-25.) Cardo began withholding New Jersey payroll tax from the pay of its installers in 2008. (Cardillo Dep. 110:10-12.) Cardo began withholding New Jersey Unemployment and Disability payroll taxes from its installers after the State of New Jersey ruled that certain installers were employees, not independent contractors in connection with claims for unemployment benefits. (Arce Dep. 159:13-25; 160:1-5.)

Defendants contend that during all relevant times, Cardo subcontracted its installation services to independent contractors and filed IRS 1099 forms for each installer. (Cardillo Cert. ¶ 17.) Defendants assert that Cardo's treatment of its installers was validated in 2011 by the New Jersey Department of Labor and Workforce Development ("NJDOL") after a review of Cardo's payroll practices.[2] (Cardillo Cert. ¶ 19; see also Def. Ex. 6 [Docket Item 68-6.]) Further, Defendants note that it is the industry norm to treat window installers as independent contractors. (Def. CS ¶¶ 8-11.)

Cardo has produced IRS 1099 forms for installers from 2009 through 2012. (Def. Ex. 13 [Docket Item 68-13.)) These forms indicate that Cardo had 39 installers in 2009, 47 installers in 2010, 41 in 2011, and 39 in 2012. (Id.) Many installers worked for Cardo in consecutive years and 15 worked for Cardo in each of the three years from 2010 to 2012. (Id.) This is consistent with

---

[2] Defendants provide a series of documents relating to a 2011 investigation by the New Jersey Department of Labor and Workforce Development following a complaint for unpaid wages filed by Eugene Latona. (Def. Opp. Ex. 6.) These documents do not validate Cardo's treatment of its installers as Defendants claim because, if anything, they merely show that the claimant was not owed any money. The only document that explicitly states that the claimant was not owed any money was authored by Nicholas Cardillo, not the Department of Labor. Further, the documents do not address Cardo's characterization of its installers as independent contractors.

Plaintiffs' claim that Cardo has "14 core installers," including Plaintiffs Adami and Varner. (Pl. Br. [Docket Item 43] at 24.)

Defendants assert that there are substantial differences between Cardo's core installers and other installers who completed brief or limited work for Cardo. (Def. Opp. [Docket Item 67] at 23.) Unlike Adami and Varner, the majority of Cardo installers worked primarily in one state. (Cardillo Cert. ¶ 11.) Of the 92 installers who completed work for Cardo between 2009 and 2012, 27 were incorporated businesses, including one with over 10 employees, while 65 were sole proprietors like Adami and Varner. (Def. Opp. at 25-26; Def. Ex. 13 [Docket Item 68-13.]) 14 of the 65 sole proprietors did not work more than 40 hours per week and cannot be eligible for overtime pay. (Id.; Cardillo Cert. ¶ 23.) Only 28 worked primarily out of the New Jersey facilities. (Def. Ex. 13; Cardillo Cert. ¶¶ 4-6, 11.) Of these 28, 12 have binding arbitration agreements. (Cardillo Cert. ¶ 22.) Defendants further allege that Adami's experience working for Cardo is distinguishable from other installers because of his close relationship with former Cardo owner, Roderick Arce. (Def. CS ¶¶ 84-88.)

### B. Procedural Background

On May 10, 2012, Plaintiff Fred Adami, individually and on behalf of all others similarly situated, filed a putative collective action and class action against Defendants Cardo

Windows, Inc. d/b/a "Castle 'The Window People,'" Christopher
Cardillo, Sr., Christopher Cardillo, Jr., Nicholas Cardillo,
Edward Jones, John J. Belmonte, and Pat Tricocci. [Docket Item 1.]
Plaintiff asserted claims under the Fair Labor Standards, Act
("FLSA"), New Jersey Wage and Hour Law ("NJWHL"), New Jersey
Construction Industry Independent Contractor Act ("CIIC"), and the
Employee Retirement Income Security Act ("ERISA"). Plaintiff also
asserted claims for injunctive relief requiring Cardo to pay
federal and state taxes on behalf of plaintiffs and comply with
FLSA, NJWHL, CIIC, and ERISA in the future. Defendants filed an
Answer on June 22, 2012 and Cardo asserted counter-claims against
Fred Adami, including a claim for breach of contract.[3] [Docket
Item 6.] On July 12, 2012, Plaintiff Adami filed an Answer to
Cardo's counter-claims. [Docket Item 9.] Plaintiff filed an
Amended Complaint on November 27, 2012, adding a second Plaintiff,
Jack Varner, and an additional Defendant, Nicholas Brucato.
[Docket Item 18.] On December 11, 2012, Defendants filed a partial
motion to dismiss Plaintiffs' Amended Complaint. [Docket Item 22.]
The Court granted in part and denied in part Defendants' partial
motion to dismiss, dismissing Counts VI and X, for failure to
maintain records under the FLSA and NJWHL; Counts III and IX, for

---

[3] Cardo also asserted counter-claims against Adami for fraud,
conversion, and tortious interference with contract. [Docket Item
6.]

violation of § 502(a)(3) of ERISA; and Count XIII, for wrongful discharge. [Docket Items 60 & 61.]

Magistrate Judge Schneider ordered all fact discovery on certification issues to be completed by April 30, 2013. [Docket Item 32.] Thereafter, Plaintiffs filed a motion for conditional certification of an FLSA "opt-in" collective action and certification of Rule 23 "opt-out" state wage class action. [Docket Item 43.] Additional requested discovery regarding class issues will be addressed after the Court decides Plaintiffs' motion for class certification. [Docket Item 58.] Defendants filed a motion to seal certain exhibits to Defendants' opposition to Plaintiffs' motion for class certification. [Docket Item 66.] Defendants also filed an Answer to Plaintiffs' Amended Complaint in which Cardo asserted a counter-claim against Jack Varner for breach of contract.[4] [Docket Item 69.] In response, Plaintiffs filed the present motion to dismiss Cardo's counter-claims against Adami and Varner for breach of contract. [Docket Item 74.] The Court heard oral argument on these motions on December 16, 2013. At oral argument the Court reserved decision on Plaintiffs' motion

---

[4] Defendants' Answer to Plaintiffs' Amended Complaint does not recite the counter-claims previously asserted by Cardo against Fred Adami. Instead, in the Answer to Plaintiffs' Amended Complaint, Cardo asserts a counter-claim against Jack Varner for breach of contract "in addition to the counterclaims previously filed against plaintiff Frederick Adami." (Def. Answer to Amended Complaint ("Def. Ans. 2") [Docket Item 69] at 21.)

for conditional certification, Defendants' motion to seal, and Plaintiffs' motion to dismiss. The Court denied Plaintiffs' motion to certify a Rule 23 state wage class, without prejudice to renewing the motion for class certification after the Supreme Court of New Jersey addresses the NJWHL issue of determining whether an individual is an employee or an independent contractor.

Following oral argument, the Court allowed the parties to submit supplemental briefing addressing certain discrete issues. Plaintiffs subsequently submitted new certifications signed by Adami and Varner dated December 19, 2013 and December 20, 2013 respectively. Since oral argument, Plaintiffs have also submitted seven "FLSA Consent Form[s]." Three contain dates after oral argument, including those signed by Adami and Varner. Four others contain dates in October 2012. Because these submissions exceed the scope of supplemental briefing allowed at oral argument, the Court has not considered them and limits its review to those issues the Court asked the parties to brief.

## III. Discussion

### A. Plaintiffs' Motion for Conditional Certification of a FLSA "Opt-In" Collective Action

Plaintiffs argue that the Court should conditionally certify Plaintiffs' FLSA claims as a collective action because they have carried their burden of showing that Plaintiffs and proposed collective action members are similarly situated. Plaintiffs

14

request that the Court approve notice to all persons who installed windows for Cardo at any time during the relevant period--May 9, 2009 through present.

Defendants respond that the Court should not conditionally certify Plaintiffs' FLSA claims as a collective action for two reasons. First, the case will require individualized determination of whether each person performing window installations for Cardo was an independent contractor or an employee. Second, Plaintiffs cannot show that they are similarly situated to all persons encompassed by Plaintiffs' proposed collective action definition, including helpers, installers who worked for Cardo for short periods of time, incorporated business entities engaged to perform installation work, workers who performed window installations in different states, installers who signed mandatory arbitration agreements and class action waivers, and workers who worked from different facilities.

The Court will grant Plaintiffs' motion for conditional certification of a FLSA collective action, but will exclude from the collective action definition all helpers, as well as installers who signed mandatory arbitration and/or class action waiver agreements.

### 1. Conditional Certification

The FLSA requires employers to pay overtime compensation for an employee's work in excess of 40 hours per week. 29 U.S.C. §

15

207. The statute also permits "similarly situated" employees to sue collectively for violations of this provision. Id. § 216(b). Unlike class actions under Fed. R. Civ. P. 23, the FLSA requires collective action members to affirmatively opt in to the case. Id. Courts in the Third Circuit follow a two-step process for deciding whether an action may proceed as a collective action under the FLSA. Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013); Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012).

The first step, commonly referred to as the notice stage, occurs early in the litigation when the court has minimal evidence. Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000). The Third Circuit has explained that "conditional certification" is not really a certification, but "the district court's exercise of [its] discretionary power to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under [the] FLSA." Zavala, 691 F.3d at 536 (citing Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 194 (3d Cir. 2011) rev'd on other grounds, Symczyk, 133 S. Ct. at 1526 (internal quotations omitted)). At this stage, the court applies a "fairly lenient standard" to determine whether the named plaintiffs have made a "modest factual showing" that the employees identified in their complaint are "similarly situated." Id. A

"modest factual showing" requires the plaintiff to "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Id. at 536 n.4 (quoting Symczyk, 656 F.3d at 193). Generally, courts make this determination by examining the pleadings and affidavits in support or opposition to the proposed collective action. Herring v. Hewitt Associates, Inc., Civ. 06-267 (GEB), 2007 WL 2121693, at *5 (D.N.J. July 24, 2007). If the plaintiff makes this showing, the court "conditionally certifies" the collective action for the purposes of notice and pretrial discovery. Zavala, 691 F.3d at 536.

At the second stage, after further discovery, a court then makes "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193. At the final certification step, the plaintiff has the burden of establishing by a preponderance of the evidence that the plaintiff and the opt-in plaintiffs are similarly situated. Zavala, 691 F.3d at 536. If the plaintiff satisfies this burden, the case may proceed as a collective action. Symczyk, 656 F.3d at 193.

To determine whether plaintiffs are similarly situated, the court must make a factual determination on a case-by-case basis considering all the relevant factors. Zavala, 691 F.3d at 536. The

17

relevant factors include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." Id. at 536-37. "Plaintiffs may also be found dissimilar based on the existence of individualized defenses." Id. at 537. Additionally, courts consider whether collective treatment will achieve the primary objectives of a § 216(b) collective action: "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." Moss v. Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000) (citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S 165, 170 (1989)).

### 2. Similarly Situated

The instant action requires the Court to analyze whether individuals are similarly situated with regard to the analysis applicable to whether they are employees or independent contractors.[5] The Court must determine whether the proof to

---

[5] The Court acknowledges that courts in the Third Circuit have adopted different approaches to motions for conditional certification under the FLSA where the claim is based on independent contractor misclassification. See Scott v. Bimbo Bakeries, USA, Inc., Civ. 10-3154, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) (discussing Martin factors and finding plaintiffs made a modest factual showing to warrant conditional certification); Spellman v. Am. Eagle Exp., Inc., Civ. 10-1764, 2011 WL 4102301

18

demonstrate individuals are "employees" or "independent contractors" can be applied to prospective collective action members as a whole. Bamgbose v. Delta-T Grp., Inc., 684 F. Supp. 2d 660, 668-69 (E.D. Pa. 2010); see also Sperling, 493 U.S. at 170 (noting the advantage in collective actions of lower individual costs by collectively bringing one proceeding of common issues of law and fact).

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Martin v. Selker Bros., Inc., 949 F.2d 1286, 1293 (3d Cir. 1991). The Supreme Court has instructed courts to look to the "circumstances of the whole activity" to determine whether an employment relationship exists. Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947). The Third Circuit has established several non-dispositive criteria to evaluate whether a worker is an employee under the FLSA: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's

---

(E.D. Pa. May 18, 2011) (finding plaintiffs to be similarly situated where they performed the same job functions and were classified by defendant as independent contractors without discussion of Martin factors); Bamgbose v. Delta-T Grp., Inc., 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (finding plaintiffs were not similarly situated where workers had a wide array of skills, responsibilities, and experiences with defendant, and evaluation of whether the workers were employees or independent contractors would not be possible on a collective basis because it would require examination of the workers' distinct relationships with defendant and its various clients).

opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. Martin, 949 F.2d at 1293. Additionally, the court should consider "whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." Id. (citing Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382-83 (3d Cir. 1985) (internal quotations omitted)).

In the instant case, the Court will grant conditional certification because Plaintiffs meet the lenient evidentiary standard applied at this stage. Examining the factors specifically identified by the Third Circuit relevant to whether Plaintiff and proposed collective action members are similarly situated, Plaintiffs here advance the same claims and seek the same form of relief.[6] Plaintiffs are employed in the same corporate department

---

[6] However, "helpers" shall not be included in the collective action because the parties agreed at oral argument that there are no records of the individuals who served as helpers for Cardo during the relevant period. Therefore, there is no reliable method to ascertain their identities. Further, installers who have signed mandatory arbitration and/or class action waiver agreements shall be excluded because the named Plaintiffs have not signed such waivers and therefore lack standing to contest their validity.

and have similar circumstances of employment. While Plaintiffs and members of the proposed collective action are not employed at the same location, Plaintiffs have provided factual support for their contention that Cardo has a uniform practice of hiring, classifying, training, managing, and compensating its window installers. Defendants argue that the circumstances of Plaintiffs' employment differ from those in the proposed collective action because other installers worked for Cardo for shorter periods of time and performed less work for Cardo. Because a full evaluation of the merits is not appropriate at this stage, it is sufficient that Plaintiffs share similar job duties and share a similar business relationship with Defendants. Further, Defendants admit that it is Cardo's practice to require all installers to sign an independent contractor agreement with Cardo before performing services for Cardo. This requirement is evidence of an overarching policy and "points toward the conclusion that the putative members of the collective action were subject to a single plan of the defendants." Westfall v. Kendle Int'l, CPU, LLC, Civ. 05-00118, 2007 WL 486606, at *9 (N.D. W. Va. Feb. 15, 2007). See also Scott v. Bimbo Bakeries, USA, Inc., Civ. 10-3154, 2012 WL 645905, at *8 (E.D. Pa. Feb. 29, 2012) (finding that classifying all drivers as independent contractors under distribution agreement weighs in favor of conditional certification).

Considering the similarly situated analysis in light of the Martin factors used to determine whether an individual is an employee or an independent contractor under the FLSA, Plaintiffs have made a sufficient factual showing justifying conditional certification. Plaintiffs have presented evidence of similarities in the way Defendants allegedly control Plaintiffs and proposed collective action members including requirements that the installers report to the warehouses at 7:00 am to unload delivery trucks, call their managers between 1:00 and 2:00 pm each afternoon, meet with managers each day to discuss the previous day's work, and receive job packets each day providing detailed specifications for their work. Further, the evidence of record supports Plaintiffs' contention that Defendants instructed installers to present themselves as employees of Cardo, not independent contractors. Cardo also required installers to display Cardo signage on their trucks and wear clothing with Cardo's logo.

Consideration of other Martin factors reveals further similarities in Cardo's treatment of installers. The parties agree that Cardo requires its installers to have their own pickup trucks and equipment, but Cardo provides all materials to the installers. The degree of permanence of the relationship between the installers may vary for each installer, but Defendants concede there is a core group of installers and many who have worked for

Cardo in consecutive years. Finally, there is no question that window installation is an integral part of Cardo's business.

Defendants rely on Bamgbose v. Delta-T Grp., Inc., 684 F. Supp. 2d 660, 664 (E.D. Pa. 2010) to support their argument that determination of whether a worker is an independent contractor or an employee cannot be made on a class-wide basis, but Bamgbose is distinguishable from the instant case.[7] Bamgbose involved a temporary staffing agency with affiliates in nine states that hired healthcare workers and placed them in various healthcare facilities performing varied functions. Bamgbose, 684 F. Supp. 2d at 664. The court concluded that the collective action members were not similarly situated and denied conditional certification

---

[7] Defendants rely on two additional Third Circuit cases addressing the alleged misclassification of independent contractors at the conditional certification stage, Spellman v. Am. Eagle Exp., Inc., Civ. 10-1764, 2013 WL 1010444 (E.D. Pa. Mar. 14, 2013) and Zavala v. Wal-Mart Stores, Inc., Civ. 03-5309 (GEB), 2010 WL 2652510 (D.N.J. June 25, 2010), aff'd sub nom. Zavala v. Wal Mart Stores Inc., 691 F.3d 527 (3d Cir. 2012). Both are inapposite because these cases addressed motions to decertify at the second stage after the courts previously granted conditional certification and sent notice to potential collective action plaintiffs. As such, both courts considered a robust factual record, unlike that in the instant action, which contained ample evidence of differences between opt-in plaintiffs preventing a conclusion that they were similarly situated. Further, the present record is distinguishable from those found to be inadequate in White v. Rick Bus Co., 743 F. Supp. 2d 380 (D.N.J. 2010) and Dreyer v. Altchem Environmental Services, Inc., Civ. 06-2393 (RBK), 2007 WL 7186177 (D.N.J. Sept. 25, 2007) because it is not limited to the certifications and depositions of Adami and Varner, but includes much detailed testimony from Arce who has personal knowledge of Cardo's treatment of other installers.

because they had a "wide array of skills, responsibilities, and experiences with [defendant] and its clients." Id. at 669. The Bamgbose court discussed many differences between plaintiffs and the proposed collective action members including the fact that some workers were required to submit progress notes, while others were not; some workers could negotiate their compensation directly with the client, while others could not; some client work required a doctorate or advanced degree, while others only required a high school diploma; and some workers operated their own practices outside their work with defendant, while other did not. Id. at 664-65.

Although Defendants have identified several potential differences between Plaintiffs and proposed collective action members, these differences, unlike those in Bamgbose, do not prevent Plaintiffs from carrying their modest burden at this stage. While the Court finds that all helpers, as well as installers who signed mandatory arbitration and/or class action waiver agreements should be excluded from the collective action, the remaining differences between potential collective action members do not prevent conditional certification. Here, unlike Bamgbose, the job performed by the installers does not change significantly based on the customer or the location of the job. Similarly, the manner of Cardo's supervision and management and the process for compensation does not change based on the identity

24

of the customer or the location of the Cardo warehouse involved.
The skills required for the installers is uniform because the
installers perform a single task.

Further, the question of whether some of Cardo's installers
were incorporated entities requires determination of the merits in
the case and in light of the FLSA's broad remedial purpose does
not preclude inclusion in the proposed collective action at this
stage. Smith v. Johnson & Johnson, 593 F.3d 280, 284 (3d Cir.
2010) ("The FLSA is remedial and is construed broadly, but
exemptions to it are construed narrowly i.e., against the
employer."); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 198
(S.D.N.Y. 2006) ("Whether the sixteen corporations on the list of
forty-four potential plaintiffs are covered by the FLSA,
therefore, goes to the ultimate question in this case.
Accordingly, in light of this outstanding question and in light of
the remedial purpose of the FLSA, the Court finds that the
corporations shall be included in the pool of potential plaintiffs
at this time."); see also Parrilla v. Allcom Const. & Installation
Servs., LLC, Civ. 08-1967, 2009 WL 2868432, at *5 (M.D. Fla. Aug.
31, 2009) (noting that defendant's requirement that technicians
form own companies does not preclude finding that technicians were
independent contractors under the FLSA). At this stage and in
light of the exclusions discussed above, the differences
identified by Defendants do not undermine Plaintiffs' modest

factual showing. <u>Scott v. Bimbo Bakeries, USA, Inc.</u>, Civ. 10-3154, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012); <u>Stillman v. Staples, Inc.</u>, Civ. 07-849 (KSH), 2008 WL 1843998, at *4 (D.N.J. Apr. 22, 2008) ("[A]t this stage the Court here does not engage in an analysis as to whether or not the Sales managers are exempt, but rather concentrates on whether or not the plaintiff has satisfied the lenient burden of showing that the other Sales Managers are similarly situated to him and he has met this burden."). Therefore, the Court will grant Plaintiffs' motion for conditional certification of a FLSA collective action.

However, "helpers," and installers who signed mandatory arbitration and/or class action waiver agreements will be excluded from the collective action definition. The Court finds that Plaintiffs have not made a sufficient factual showing that helpers are similarly situated. While evidence in the record supports Plaintiffs' contention that the majority of installers engaged at least one helper, Adami and Arce testified that helpers work for and are paid by the installer. (Adami Dep. 13:6-10; 263:21-264:24; Arce Dep. 74:19.) Further, the parties agreed at oral argument that there are no records of the individuals who served as helpers for Cardo windows during the relevant period. As such, there is no reliable method to ascertain their identities. Similarly, Plaintiffs have not made a sufficient factual showing that installers who have signed mandatory arbitration or class action

26

waiver agreements are similarly situated because Adami and Varner
have not signed any such agreement. The named Plaintiffs thus lack
standing to contest the validity of these agreements. Therefore,
the Court will exclude from the collective action definition
helpers, and installers who signed mandatory arbitration and/or
class action waiver agreements.

Plaintiffs request that the Court approve the proposed notice
form attached to their motion. [Docket Item 43-5.] Rather than
accept Plaintiffs' proposed form, the parties shall meet and
confer to devise a notice form that is fair and accurate and
consistent with today's determination. The Court will resolve
disputes between the parties as necessary and provide final
approval of the notice upon submission by the parties. Consistent
with the foregoing, the conditional membership in the collective
action shall include all individuals who installed windows for
Cardo at any time up to the three years prior to the notice date.[8]
It shall not include helpers, or installers who have signed
mandatory arbitration or class action waiver agreements. In the
absence of agreement, Plaintiffs shall file a motion to fix the
form of FLSA notice within twenty-one (21) days of the entry of
the accompanying Order.

---

[8] The Court finds that three years prior to the notice date is the
appropriate start date for the collective action period because
the Amended Complaint alleges a willful violation of the FLSA.

27

### 3. Equitable Tolling under the FLSA

Plaintiffs request that the statute of limitations for each potential collective action member under the FLSA be equitably tolled. Plaintiffs argue that equitable tolling under the FLSA is appropriate where similarly situated plaintiffs, through no fault of their own, have been unable to join the lawsuit. Plaintiffs note that Defendants have refused to reveal the names and addresses of installers and helpers employed during the collective action period.[9] Plaintiffs allege that Defendants have attempted to "split the class" by requiring current installers to sign agreements to arbitrate all disputes and attempted to intimidate Plaintiff Adami by filing a criminal complaint against him after he initiated the present action.

Defendants respond that none of the rare circumstances permitting equitable tolling are applicable to the present action. First, Defendants argue that they are not required to provide the potential plaintiffs' names and contact information until the collective action is conditionally certified. Second, Defendants argue that the arbitration agreements were voluntarily entered and

---

[9] As part of their opposition to Plaintiffs' motion for class certification, Defendants provided IRS 1099 forms with the names of installers who performed work for Cardo from 2009 to 2012. Defendants have not provided any documentation relevant to 2013, but Defendants are hereby directed to promptly provide the relevant information for 2013 and 2014 up to the date of this Opinion.

28

have not prevented any installer from joining the action. Third, Defendants reject any inference of inequity or intimidation in filing a legitimate criminal complaint against Adami. Last, Defendants argue that the pending motion to dismiss has had no effect on potential plaintiffs' ability to join this action.

Under the FLSA, the filing of the complaint does not toll the statute of limitations for putative collective action members. Rather, the statute of limitations continues to run until putative collective action members "opt-in" by filing consent forms. 29 U.S.C. § 256. The equitable tolling doctrine applicable to every federal statute of limitation, including the FLSA, pertains in three principal situations in the Third Circuit. See Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845 (3d Cir. 1992). Specifically, tolling is appropriate if: (1) the defendant has actively misled the plaintiff; (2) the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum. Id. (citation and internal quotations omitted). The Third Circuit has explained that equitable tolling is appropriate "where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 309 (3d Cir. 1983).

In the present action, none of the situations identified in

Miller apply. The Court does not credit Plaintiffs' arguments
suggesting that Defendants actively sought to prevent potential
plaintiffs from joining the collective action through arbitration
agreements, intimidation, or delaying their response to
Plaintiffs' Amended Complaint. Moreover, the Third Circuit has not
addressed whether equitable tolling is appropriate where defendant
fails to disclose the names of potential collective action
members, and courts outside the Circuit are divided. See e.g.,
Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 543 (N.D. Cal.
2007) (noting that "defendant is only required to provide
potential plaintiffs' contact information after conditional
certification of the collective class," but applying equitable
tolling to counter "the advantage defendants would otherwise gain
by withholding potential plaintiffs' contact information until the
last possible moment"); Prentice v. Fund for Pub. Interest
Research, Inc., Civ. 06-7776, 2007 WL 2729187, at *3
(N.D. Cal. Sept. 18, 2007) ("If refusal to disclose contact
information is sufficient basis to grant equitable tolling, either
the FLSA statute of limitations is meaningless or the Courts are
reading a disclosure requirement into the FLSA where the statute
does not contain such a requirement.").

For two reasons, the Court finds that Defendants' failure to
provide potential plaintiffs' names and contact information prior
to conditional certification does not itself justify tolling the

statute of limitations period. First, "Congress knew when it enacted 29 U.S.C. § 256 that time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period." Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 194 (M.D. Pa. 2008). Second, granting the remedy of equitable tolling any time the defendant fails to provide contact information effectively would require that the statute of limitations for FLSA claims be tolled for all potential plaintiffs whenever plaintiff files the complaint. See Amendola v. Bristol—Myers Squibb Co., 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008). Such a requirement is contrary to the clear language of 29 U.S.C. § 256. Therefore, the Court will not grant Plaintiffs' request to equitably toll the statute of limitations.

### B. Plaintiffs' Motion for Certification of a Rule 23 "Opt Out" State Wage Class Action

Plaintiffs seek to certify the following class under Fed. R. Civ. P. 23(b)(3) for claims for overtime asserted under the NJWHL:

> All persons who installed windows for Castle Windows from May 9, 2009 to present who were not paid overtime for work weeks in excess of 40 hours.[10]

---

[10] Plaintiffs' counsel could not clarify at oral argument whether Plaintiffs only seek Rule 23 class certification for claims asserted under the NJWHL or whether they seek certification for additional claims asserted under the CIIC and ERISA, as well as

(Pl. Br. at 23.)

The Court will deny Plaintiffs' motion for certification of a Rule 23 state wage class action without prejudice because Plaintiffs' motion turns on the appropriate test to determine whether an individual is an employee or an independent contractor under the NJWHL and the Supreme Court of New Jersey recently accepted certification of this exact question. Further, based on the present record, the Court is concerned about Plaintiffs' ability to satisfy the predominance and ascertainability requirements of Rule 23(b).

### 1. Rule 23(b) Requirements

Before a class may be certified, Plaintiffs must show that they qualify under at least one subsection of Rule 23(b), and in this case Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

---

claims for injunctive relief requiring Cardo to comply with the FLSA, NJWHL, CIIC, and ERISA. Consistent with Plaintiffs' proposed class definition and the parties' briefing, this Opinion only addresses Rule 23 class certification for Plaintiffs' claim under the NJWHL.

Despite similarities with the elements of Rule 23(a), the predominance test is "a standard far more demanding than the commonality requirement." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310-11 (3d Cir. 2008). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. at 311 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001)). Plaintiffs must show that the elements of their claim are "capable of proof at trial through evidence that is common to the class rather than individual to its members." Id. at 311-12. Therefore, the court must envision a trial of plaintiffs' claims, and "conduct a 'rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence' to prove their claims." Sherman v. Am. Eagle Exp., Inc., Civ. 09-575, 2012 WL 748400, at *8 (E.D. Pa. Mar. 8, 2012) (citing Hydrogen Peroxide, 552 F.3d at 112).

Plaintiffs argue that questions of law or fact common to the class predominate over individual questions because members of the class performed the same work and were compensated in the same way. Further, members of the class performed the same duties, worked the same hours, and were harmed in the same way by Defendants' failure to pay overtime and provide employee benefits. Finally, joinder of multiple claims would be impracticable because

33

the amounts owed to each class member are relatively small as many installers only worked for Cardo for a short period of time.

Defendants respond that individual issues predominate over questions common to the class. Primarily, Defendants note that Plaintiffs' claim requires individualized analysis to determine whether each installer is an "employee" under the NJWHL.

Because the predominance analysis requires the Court to determine the appropriate test for whether an individual is an employee or an independent contractor under the NJWHL and the Supreme Court of New Jersey recently accepted certification of this exact question, the Court in an abundance of caution will deny Plaintiffs' motion without prejudice at this time.[11]

Defendants contend that the Court should deny Plaintiffs' motion with prejudice because Plaintiffs cannot satisfy any test to determine whether an individual is an employee under the

---

[11] Noting that neither the Supreme Court of New Jersey nor any other New Jersey appellate court has determined which employment test applies, the Third Circuit certified to the Supreme Court of New Jersey the question of the appropriate test under the NJWHL. The Supreme Court of New Jersey issued an order on July 10, 2013 accepting the question as certified. Hargrove v. Sleepy's LLC, 70 A.3d 592 (N.J. 2013). The Third Circuit's petition for certification notes that "[t]here are at least four distinct employment tests that have been applied under New Jersey law in other contexts." Petition for Certification, Hargrove v. Sleepy's, LLC, Civ. 12-2541, at 7 (3d Cir. May 22, 2013).

NJWHL.[12] However, the test applicable to potential class members' employment status will determine the outcome of the Court's Rule 23(b) analysis of predominance in the present case. See Sherman v. Am. Eagle Exp., Inc., Civ. 09-575, 2012 WL 748400, at *8 (E.D. Pa. Mar. 8, 2012) (granting Rule 23 class certification for claims under Pennsylvania's Wage Payment and Collection Law, but denying Rule 23 class certification for claims under Pennsylvania's Minimum Wage Act due to application of different tests to misclassification claims).

Additionally, the Court notes that the present record raises issues regarding ascertainability. Ascertainability entails two elements: "First, the class must be defined with reference to objective criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013). "If class members are impossible to identify without extensive and individualized fact-finding or 'minitrials,' then a class action is inappropriate." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012). "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the

---

[12] Plaintiffs, in supplemental briefing following oral argument, do not object to the Court's denial of their motion without prejudice.

class members. But . . . a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition." Id. at 596.

Defendants properly note that the differences among potential class members may require individualized fact-finding or mini-trials rendering the class action an inappropriate and inefficient method of litigating Plaintiffs' claims. Ascertaining the identity of class members will require inquiry into each member's independent contractor status, hours worked, level of control or autonomy, rate of pay, and status as a sole proprietor or incorporated business entity. Therefore, Plaintiffs must identify a reliable and administratively feasible method for determining whether class members satisfy the class definition, and they have failed to do so on the present record.

### 2. Rule 23(a) Requirements

Fed. R. Civ. P. 23(a) enumerates four threshold requirements for class certification known as numerosity, commonality, typicality and adequacy of representation.[13] Rodriguez v. Nat'l City Bank, 726 F.3d 372, 377 (3d Cir. 2013); Comcast Corp. v.

---

[13] Rule 23(a) provides:
    One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;

Behrend, 133 S. Ct. 1426, 1432 (2013) (stating that a party seeking class certification must prove that "there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation") (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2011)) (internal quotation omitted). Plaintiff must show by a preponderance of the evidence that the Rule 23(a) requirements have been met. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008).

Having found the record deficient based on predominance and ascertainability, the Court need not engage in a detailed discussion of the Rule 23(a) requirements. It is sufficient to note that numerosity is hotly contested between the parties and Plaintiffs' maintain the burden to articulate a practicable method to identify potential class members in light of the differences among Cardo's installers discussed above. Importantly, the Court agrees with Defendants that Cardo installers who signed mandatory arbitration and class action waiver agreements should be excluded from the proposed class. The Court also concludes that the class

---

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

should not include "helpers" or installers Defendants' contend were incorporated entities.

It is important to make clear that the Court is not reopening class discovery. Magistrate Judge Schneider ordered all fact discovery on certification issues to be completed by April 30, 2013 and provided that additional requested discovery regarding class issues will be addressed after the Court decides Plaintiffs' motions for class certification. Accordingly, the parties had an ample period of 11 months of discovery and, according to Defendants, conducted 14 depositions over 10 days. The Court finds denial without prejudice appropriate in light of the question pending before the Supreme Court of New Jersey in Hargrove so Plaintiffs may refile their motion after an opportunity to brief applicable law, provided further that Plaintiffs address the shortcomings regarding predominance and ascertainability addressed above.

**C. Defendants' Motion to Seal**

Defendants filed a motion to seal [Docket Item 66] relating to certain exhibits to their opposition to Plaintiffs' motion for class certification [Docket Item 68,] which is unopposed.

Under L. Civ. R. 5.3(c)(2), a party moving to seal must address four factors: "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined

38

and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."

Defendants' motion to seal initially sought to prevent public disclosure of two categories of documents: 1) deposition testimony and other documents that describe the "competitively sensitive confidential business information of Defendants (Exhibits 2, 3, 8, and 22); and 2) private financial information of nonparties presented by IRS 1099 forms (Exhibits 13a-13d; 15)." (Def. Br. [Docket Item 66-1] at 2.) Following oral argument, counsel for Defendants submitted a letter withdrawing the motion in part as to exhibits 2, 3, 8, and 22. Therefore, Defendants only maintain their motion to seal as to exhibits 13a-13d and 15. Exhibits 13a-13d contain IRS 1099 forms for various Cardo installers from 2009 to 2012 with portions of their social security numbers redacted. Exhibit 15 contains 1099 forms for Varner and Adami with all social security numbers redacted except one.

Having reviewed the documents, the Court will grant Defendants' motion to seal exhibits 13a-d and 15 because they have satisfied the elements of Rule 5.3(c)(2). Cardo's installers whose personal information is contained in these exhibits have a legitimate private interest in not having their addresses, social security numbers, and salaries disclosed to the public at this time. See Platt v. Freedom Mortgage Corp., Civ. 10-968, 2013 WL

39

6499252, at *10 (D.N.J. Dec. 11, 2013) (granting motions to seal exhibits containing social security numbers, wage, salary, and tax information of plaintiffs and other employees of defendant). Given the privacy interests of Cardo's installers, injury would result if this information were publicly disclosed. Further, no less restrictive alternative is available to protect the privacy of Cardo's installers. Therefore, the Court will grant Defendants' motion to seal as to exhibits 13a-d and 15 containing the IRS 1099 forms of Plaintiffs and non-parties.

### D. Plaintiffs' Motion to Dismiss Cardo's Counter-Claims for Breach of Contract

Plaintiffs filed a motion to dismiss Cardo's counter-claims against Adami and Varner for breach of contract. [Docket Item 74.] The Court will grant Plaintiffs' motion as to Cardo's counter-claim for breach of contract against Varner, but deny Plaintiffs' motion as to Cardo's counter-claim for breach of contract against Adami.

### 1. Facts

The Court takes the following facts, alleged in Defendants' Answer to Plaintiffs' original Complaint and Defendants' Answer to Plaintiffs' Amended Complaint, to be true for the purposes of this motion. Fred Adami is a professional window installer. (Def. Answer to Complaint ("Def. Ans. 1") [Docket Item 9] ¶ 5.) In March 2001, Adami entered an agreement with Cardo Windows (d/b/a Castle

"The Window People") to perform work as an independent contractor. (Id. ¶ 7.) Pursuant to the agreement, Adami agreed to "provide all construction supervision, inspection, labor, tools, equipment and anything else necessary for the execution and completion of the" installation work he agreed to do. (Id. ¶ 8.) Adami and Cardo agreed that Adami would work as an independent contractor. (Id. ¶ 9.) Cardo was interested in the "results" of Adami's work, and the parties agreed that "the manner, method and means of conducting the work shall be under the sole and exclusive control of" Adami. (Id.) The work of residential window installers is highly specialized, typically done by independent contractors, and recognized as an independent profession in the construction industry. (Id. ¶ 11.)

On March 1, 2006, Adami and Cardo entered into an updated independent contractor's agreement in which they affirmed Adami's status as an independent contractor, including terms relating to their working relationship, liability and loss, insurance and taxes. (Id. ¶ 12.) On January 29, 2010, Adami and Cardo again affirmed their business relationship in a Master Subcontract Agreement. (Id. ¶ 13.) Adami expressly agreed to be solely responsible for all federal, state or local taxes for the work he performed and payments he received. (Id. ¶ 64.) He also agreed that he was not entitled to any employee benefits from Cardo. (Id.) Relying on the terms of their contractual relationship,

41

Cardo paid Adami $163,526 in 2009, $182,097 in 2010, and $75,373 in 2011. (Id. ¶ 65.) Adami allegedly participated in and benefited from false and fraudulent invoices submitted to Cardo, theft and conversion of Cardo supplies, and conspiring to defraud and steal from Cardo. (Id. ¶ 68.)

Jack Varner is professional window installer. (Def. Answer to Amended Complaint ("Def. Ans. 2") [Docket Item 69] ¶ 5.) In 2003, Varner entered an agreement with Cardo to perform work as an independent contractor. (Id. ¶ 7.) Pursuant to the agreement, Varner agreed to "provide all construction supervision, inspection, labor, tools, equipment and anything else necessary for the execution and completion of the" installation work he agreed to do. (Id. ¶ 8.) Varner and Cardo agreed that Varner would work as an independent contractor. (Id. ¶ 9.) Cardo was interested in the "results" of Varner's work, and the parties agreed that "the manner, method and means of conducting the work shall be under the sole and exclusive control of" Varner. (Id.) In 2010, Varner and Cardo again affirmed their business relationship in a Master Subcontract Agreement. (Id. ¶ 12.)

During all times Varner performed work for Cardo, he agreed to be paid the per-job payments offered by Cardo as his sole compensation for such work. (Id. ¶ 14.) Varner also expressly agreed to be solely responsible for all federal, state or local taxes for the work he performed and the payments he received.

42

(Id. ¶ 16.) He also agreed that he was not entitled to any employee benefits from Cardo. (Id.) Relying on the terms of their contractual relationship, Cardo paid Varner nearly $1,000,000 for his professional work. (Id. ¶ 17.) Varner requests in the present litigation to be reclassified as an employee and receive employee benefits, overtime pay and payment of employment taxes. (Id. ¶ 18.)

### 2. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In

43

re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d
Cir. 1997). There is an exception to this rule: "a document
integral to or explicitly relied upon in the complaint may be
considered." Id. at 1426. But for a court to consider such a
document, the document must be "undisputedly authentic." Pension
Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192,
1196 (3d Cir. 1993).

Defendants attach documents to their Answer to Plaintiffs
original Complaint, but not their Answer to Plaintiffs' Amended
Complaint. The Court will consider the documents attached to
Defendants' Answer to Plaintiffs' original Complaint because these
documents are integral to Cardo's counter-claim for breach of
contract against Adami and there is no dispute regarding
authenticity.

### 3. Analysis

The Court will first address Plaintiffs' procedural arguments
challenging Cardo's breach of contract counter-claims. Plaintiffs
argue that Cardo's counter-claims must be dismissed because the
Court lacks supplemental jurisdiction. For the Court to entertain
a state law claim between non-diverse parties, the state law claim
must share a common nucleus of operative facts with a claim over
which the Court has original jurisdiction. See United Mine Workers
of America v. Gibbs, 383 U.S. 715, 725 (1966). Even when a state
and federal claim share a common nucleus of operative facts, when

44

"the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." Gibbs, 383 U.S. at 726; see also 28 U.S.C. § 1367(c)(2). Here, Cardo's counter-claims for breach of contract against Adami and Varner are based on an alleged breach of the agreements entered between Plaintiffs and Cardo characterizing their business relationship as independent contractors and Plaintiffs' effort in this litigation to challenge that characterization. Central to Plaintiffs' FLSA claim and Cardo's counter-claims for breach of contract is the business relationship between Plaintiffs and Cardo as defined in the various agreements signed by the parties and the conduct of that relationship borne out in facts common to the claims. Therefore, the Court finds the state law claims for breach of contract share a common nucleus of operative facts with the FLSA claim over which the Court has original jurisdiction sufficient to establish supplemental jurisdiction under 28 U.S.C. § 1367.

Cardo assert that Adami has waived his right to file this motion to dismiss by filing an answer to the counter-claim. A defendant may move to dismiss a complaint before or after filing an answer. Fed. R. Civ. P. 12(b)(6), (c); see also Borough of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 675-76

45

(D.N.J. 1996). A motion to dismiss made after an answer is filed is a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Fed. R. Civ. P. 12(h)(2). The differences between Rules 12(b)(6) and 12(c) are purely procedural. Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). The pleading standards of Rule 12(b)(6) are applied for both. Id. Here, Plaintiffs' motion to dismiss Cardo's counter-claims for breach of contract was filed after Adami filed an Answer to the counter-claims asserted against him. [Docket Item 9.] As such, Adami has not waived his right to file the instant motion and the procedural posture will not alter the Court's analysis.

The Court will now address the substance of Plaintiffs' motion to dismiss. Plaintiffs argue that Cardo's counter-claims for breach of contract should be dismissed because neither the FLSA, nor the NJWHL authorizes counter-claims or offsets by an employer against an employee.[14] Plaintiffs rely primarily on Wheeler v. Hampton Township, 399 F.3d 238 (3d Cir. 2005). Wheeler

---

[14] Plaintiffs also argue that Cardo's counter-claims seek the return of all wages paid to Plaintiffs in violation of the Thirteenth Amendment. While it is true that Cardo's counter-claim against Adami seeks "recovery of all amounts paid to him under their contractual agreements," Cardo's counter-claim against Varner seeks recovery of "any costs and damages it incurs as a result of his breach, including payment of any taxes, employee benefits or damages paid to Varner or to a third party." (Def. Ans. 1 ¶ 71; Def. Ans. 2 ¶ 19.) The Court finds that Cardo's pleadings related to damages are sufficient to survive a motion to dismiss.

involved a suit by police officers to recover overtime pay under
the FLSA. Id. at 240. Defendant argued that it was entitled to a
credit or offset against any liability under the FLSA because
plaintiffs and defendant entered a collective bargaining agreement
establishing the terms of employment including the calculation of
overtime pay which exceeded the minimum legal rate under the FLSA.
Id. at 240-42. The court concluded that "[t]here is no cause of
action for employers in the FLSA . . . . Once an employer agrees
to pay a given amount of overtime pay, the employer may not sue to
recover excess pay under the statute. The FLSA is a shield for
employers, not a sword." Id. at 244. Further, Plaintiffs contend
that the NJWHL, like the FLSA, does not contain any authorization
for counterclaims or offsets by an employer against an employee.

Wheeler does not control the instant action. Defendants'
argument for an offset in Wheeler was fashioned as a defense, not
a breach of contract counter-claim. Here, Cardo alleges that the
very challenge of Plaintiffs' classification as independent
contractors in this action constitutes a breach of the agreements
entered with Cardo.[15] While the Court finds the reasoning in

---

[15] Cardo's counter-claim against Jack Varner states, "Varner's
request in this litigation to be reclassified as an employee, and
receive employee benefits, overtime pay and payment of employment
taxes, constitutes a breach of his contractual agreement with
Cardo Windows to be an independent contractor, without benefits
and to pay all of his own taxes." (Def. Ans. 2 ¶ 18.) Cardo's
counter-claim against Adami contains identical language. (Def.
Ans. 1 ¶ 72.)

47

_Wheeler_ generally applicable to efforts by defendants to offset amounts recoverable under the FLSA, Cardo's counter-claims in the instant action must be considered under traditional contract law.

A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties. See _Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co._, 722 F. Supp. 184, 219 (D.N.J. 1989) (citing 5 Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1235 (3d ed.)); see also _In re Cendant Corp. Sec. Litig._, 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001) (noting that New Jersey law requires pleading of performance of movant's own contractual duties).

In the present case, the question is whether Cardo has properly alleged that Adami and Varner breached the various agreements they entered with Cardo. The Court finds that the instant action by Plaintiffs, challenging their classification as independent contractors and seeking compensation and employee benefits, does not constitute a breach. Cardo does not identify any language in the agreements prohibiting Plaintiffs from challenging the agreement or their classification as independent contractors. As to Plaintiff Varner, Cardo fails to allege any additional facts that suggest any failure to perform under the agreements. Therefore, the Court will grant Plaintiffs' motion and

dismiss Cardo's counter-claim for breach of contract against Varner.

The Court must consider Cardo's counter-claim against Adami separately because it contains additional allegations that Adami's conduct constitutes a breach of the implied covenant of good faith and fair dealing. Specifically, Cardo alleges that

> Adami engaged in . . . unlawful, tortious and malicious conduct toward Cardo Windows while performing his services. This unlawful and breaching conduct included participating in and benefitting from false and fraudulent invoices to Cardo Windows, theft and conversion of Cardo Windows supplies for his own benefit, and conspiring with others to defraud and steal from Cardo Windows.

(Def. Ans. 1 ¶¶ 67-68.)

New Jersey law provides that "every contract . . . contains an implied covenant of good faith and fair dealing," requiring that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" Kalogeras v. 239 Broad Ave., L.L.C., 997 A.2d 943, 953 (N.J. 2010) (citations and internal quotations omitted). New Jersey courts have found an implied covenant of good faith and fair dealing regardless of the type of contract at issue. Wood v. New Jersey Mfrs. Ins. Co., 21 A.3d 1131, 1140 (N.J. 2011) (finding implied covenant of good faith and fair dealing in insurance policy). "Courts imply a covenant of good faith and fair dealing in order to protect one party to a contract from the other party's bad faith misconduct or

49

collusion with third parties where there is no breach of the express terms of the contract." Kapossy v. McGraw-Hill, Inc., 921 F. Supp. 234, 248 (D.N.J. 1996); see also McGarry v. Saint Anthony of Padua Roman Catholic Church, 704 A.2d 1353, 1357 (N.J. Super. Ct. App. Div. 1998) (finding that even where an employee performs duties contracted for satisfactorily, misconduct by the employee, especially criminal activity, may justify discharge for breach of the implied covenant of good faith and fair dealing).

Here, Cardo's counter-claim against Adami for breach of contract contains sufficient factual allegations to constitute a breach of an implied covenant of good faith and fair dealing. In particular, Cardo relies on the allegations that form the basis of its other cross-claims against Adami for fraud, conversion, and conspiracy. Cardo alleges that Adami engaged in a fraudulent scheme to present false invoices and work orders to Cardo for work he did not perform in 2010, Adami willfully and without authorization removed aluminum coil from various Cardo warehouses, and Adami conspired with third parties, including Roderick Arce, to defraud Cardo by submitting false invoices for payment. Therefore, the Court will deny Plaintiff Adami's motion to dismiss Cardo's counter-claim for breach of contract against Adami based on breach of an implied covenant of good faith and fair dealing.

## IV. Conclusion

In light of the foregoing, the Court will grant Plaintiffs' motion for conditional certification of a FLSA collective action because Plaintiffs have made the requisite preliminary factual showing that the potential collective action members are similarly situated. The Court will deny without prejudice Plaintiffs' motion for certification of a Rule 23 state wage class action in light of the Supreme Court of New Jersey's recent acceptance of a certification to determine the appropriate test for whether an individual is an employee or independent contractor under the NJWHL. The Court will grant Defendants' motion to seal as to exhibits 13a-13d and 15 containing IRS 1099 forms of Plaintiffs and non-parties. Finally, the Court will grant Plaintiffs' motion to dismiss Cardo's counter-claim for breach of contract against Varner, but deny Plaintiffs' motion to dismiss Cardo's counter-claim for breach of contract against Adami due to additional allegations implicating a breach of an implied covenant of good faith and fair dealing. An accompanying Order will be entered.

<u>January 29, 2014</u>                    <u>s/ Jerome B. Simandle</u>
DATE                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge