IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRED ADAMI and JACK VARNER, on behalf of themselves and all others similarly situated, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 12-2804 (JBS/JS) |
| v. | |
| CARDO WINDOWS, INC. d/b/a "Castle, 'The Window People'" et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Richard S. Hannye, Esq.
HANNYE LLC
128 West Cottage Avenue
Haddonfield, NJ 08033
     Attorney for Plaintiffs

Kenneth Goodkind, Esq.
Peter J. Tomasco, Esq.
Michael D. Homans, Esq.
FLASTER GREENBERG P.C.
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
     Attorneys for Defendants

**SIMANDLE, Chief Judge:**

**TABLE OF CONTENTS**

I.   INTRODUCTION                                    2

II.  BACKGROUND                                      3

   A.   Factual Background                           3

   B.   Procedural Background                        4

III. STANDARD OF REVIEW                                          6

IV.  DISCUSSION                                                  7

  A.   Defendants' Motion for Summary Judgment                   7

    1.  Facts                                                    7

    2.  Overtime Claims                                          11

    3.  Unjust Enrichment                                        22

    4.  Defamation                                               27

    5.  Adami's Claim for Overtime as a Manager                  31

    6.  New Jersey Construction Industry Independent Contractor
    Act                                                          33

    7.  Conclusion                                               34

  B.   Plaintiffs' Motion for Summary Judgment                   34

    1.  Facts                                                    35

    2.  Fraud                                                    37

    3.  Conversion                                               40

    4.  Conspiracy                                               43

    5.  Tortious Interference with Contractual Relations         45

    6.  Conclusion                                               47

V.   CONCLUSION                                                  48

## I.    INTRODUCTION

This matter comes before the Court on cross-motions for summary judgment by Defendants Cardo Windows, Inc. d/b/a "Castle 'The Window People,'" Christopher Cardillo, Sr., Christopher Cardillo, Jr., Nicholas Cardillo, Edward Jones, John J. Belmonte, and Pat Tricocci [Docket Item 87] and by Plaintiffs Jack Varner and Fred Adami [Docket Item 88.] This action arises from Defendants alleged misclassification of its window installers as independent contractors. Plaintiffs maintain claims for unpaid overtime and all other relief they are due

under the Fair Labor Standards Act, the New Jersey State Wage and Hour Law, and the New Jersey Construction Industry Independent Contractor Act, as well as a claim for unjust enrichment. Plaintiff Fred Adami also maintains claims for slander per se and for unpaid overtime and benefits when he was a manager for Cardo. The Court recently granted Plaintiffs' motion for conditional certification of a collective action under the Fair Labor Standards Act. The following addresses only the individual claims remaining in the case.

For the reasons discussed below, the Court will grant in part, deny in part, and defer in part Defendants' motion for summary judgment. The Court will also grant in part and deny in part Plaintiffs' motion for summary judgment.

## II.  BACKGROUND

### A. Factual Background

Defendant, Cardo Windows, Inc. ("Cardo") does business under the trademark, "Castle the Window People." Cardo sells and installs windows and doors in multiple states including New Jersey, Pennsylvania, Delaware, Massachusetts, Rhode Island, Vermont, New Hampshire, Connecticut, New York, and Ohio. Cardo uses installation work crews to install windows for customers. Generally, these work crews consist of an installer and one or more helpers.

Central to this suit are substantial factual disputes regarding the relationship between Cardo and its installers including the named Plaintiffs, Fred Adami and Jack Varner. Plaintiff Jack Varner asserts that he worked 10 to 14 hours per day as an installer for Cardo from February 2003 to October 2012. Plaintiff Fred Adami asserts that he worked 10 to 12 hours per day installing windows for Cardo from March 2001 to June 2012. Both contend that they primarily completed work orders in New Jersey as sole proprietors and admit that they signed agreements characterizing their relationship with Cardo as independent contractors. Adami asserts that he became an office manager in his final few months working for Cardo before being fired for allegedly stealing supplies from Cardo and falsifying invoices.

**B. Procedural Background**

On May 10, 2012, Plaintiff Fred Adami, individually and on behalf of all others similarly situated, filed a putative collective action and class action against Defendants Cardo Windows, Inc. d/b/a "Castle 'The Window People,'" Christopher Cardillo, Sr., Christopher Cardillo, Jr., Nicholas Cardillo, Edward Jones, John J. Belmonte, and Pat Tricocci. [Docket Item 1.] Adami asserted claims under the Fair Labor Standards, Act ("FLSA"), the New Jersey Wage and Hour Law ("NJWHL"), the New Jersey Construction Industry Independent Contractor Act

4

("CIICA"), and the Employee Retirement Income Security Act ("ERISA"). Adami also asserted claims for injunctive relief requiring Cardo to pay federal and state taxes on behalf of plaintiffs and comply with FLSA, NJWHL, CIICA, and ERISA in the future. Defendants filed an Answer on June 22, 2012 and Cardo asserted counter-claims against Adami for breach of contract, fraud, conversion, and tortious interference with contract. [Docket Item 6.] On July 12, 2012, Adami filed an Answer to Cardo's counter-claims. [Docket Item 9.] Adami filed an Amended Complaint on November 27, 2012, adding a second plaintiff, Jack Varner, and an additional defendant, Nicholas Brucato. [Docket Item 18.] On December 11, 2012, Defendants filed a partial motion to dismiss Plaintiffs' Amended Complaint. [Docket Item 22.] The Court granted in part and denied in part Defendants' partial motion to dismiss, dismissing Counts VI and X, for failure to maintain records under the FLSA and NJWHL; Counts III and IX, for violation of § 502(a)(3) of ERISA; and Count XIII, for wrongful discharge. [Docket Items 60 & 61.]

On January 29, 2014, the Court granted Plaintiffs' motion for conditional certification of a FLSA "opt-in" collective action and denied Plaintiffs' motion for certification of a Rule 23 "opt-out" state wage class action. [Docket Items 112 & 113.] The Court also granted Plaintiffs' motion to dismiss Cardo's counter-claims for breach of contract against Jack Varner and

denied Plaintiffs' motion to dismiss Cardo's counter-claims for breach of contract against Fred Adami. On April 14, 2014, following briefing and oral argument, the Court approved a form of collective action notice to be sent to potential collective action members within seven days.

The parties filed the instant motions for summary judgment on December 2, 2013 in conformance with the deadline imposed for dispositive motions as to the named Plaintiffs' individual claims. [Docket Item 58.]

**III. STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## IV.  DISCUSSION

### A. Defendants' Motion for Summary Judgment

Defendants' motion for summary judgment [Docket Item 87] seeks dismissal of Plaintiffs' claims for unpaid overtime under the FLSA, the NJWHL, and the CIICA, as well as Plaintiffs' claims for unjust enrichment. Defendants also seek dismissal of Adami's claim for slander per se, his claim for overtime for periods in which he was an "installation manager," and his claim for benefits under the CIICA. The Court will address each in turn.

### 1. Facts

Cardo markets its windows, doors, and installation services to the general public through its website and direct mailings. (Defendants' Statement of Undisputed Facts ("SMF") [Docket Item 87-27] ¶ 5.)[1] Upon the sale of a product, homeowners enter a

---

[1] Plaintiffs failed to furnish a responsive statement of undisputed material facts, but their opposition brief contains detailed citations to the record that make clear certain disputed facts. Although Plaintiffs failed to comply with Local Civil Rule 56.1, the Court declines to ignore Plaintiffs' citations. However, to the extent Plaintiffs failed to make clear any dispute of material fact in Defendants' Rule 56.1 statement, the Court will deem any such fact undisputed for purposes of the instant motion. See L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."). While the Court will not ignore counter-stated facts that are apparent from Plaintiffs' brief, so too will the Court not comb the voluminous record in search of disputed facts that should have been part of Plaintiffs' response to Defendants' Rule 56.1 statement.

contract with Cardo that includes the price of the product to be installed and the cost of installation. (Id.)

Plaintiffs Adami and Varner installed windows and doors for Cardo and were required to sign independent contractor agreements outlining the terms and conditions of their work. (Id. ¶ 6.) As window installers for Cardo, Plaintiffs were paid based upon the size and type of window installed. For example, in 2009 and 2010 Plaintiffs were paid $40 to install a wooden double-hung window, $50 for a metal double-hung window, $75 for a wooden section slider, $85 for a metal section slider, $300 for a bow window with roof, $175 for a garden window, $150 for a standard door, $300 for a two-sided door, $200 for a patio door, and $65 for storm doors. (Id. ¶ 10.) At some point, Cardo began paying installers "an adjustment of $10 additional per window on double hungs only." (Deposition of Edward Jones on January 9, 2013 ("Jones Dep.") [Docket Item 87-7] 176:3-5.) The amount of time it would take to install a certain window product would vary based on the details of the job and the speed of the installer. (SMF ¶ 12.) Cardo would not pay more than ten percent of the total cost of an installation job to cover labor expenses. (Deposition of Fred Adami on March 29, 2013 ("Adami Dep.") [Docket Item 87-4] 462:7-463:13.) Plaintiffs provided Cardo daily and bi-weekly worksheets recording the projects worked, the number of windows and doors installed, and the

amounts to be paid for each. (SMF ¶ 13.) Both Adami and Varner earned more than $100,000 per year for their work for Cardo. (Id. ¶ 16.)

It is undisputed that Cardo did not maintain records of the hours worked by its installers. Jack Varner certified that he worked 10-14 hours a day installing windows for Cardo from February 2003 to October 2012. (Certification of Jack Varner, Pl. Ex. F [Docket Item 104-3] ¶ 1.) Varner also testified that he worked 10-14 hours a day, six days per week. (Deposition of Jack Varner on May 7, 2013 ("Varner Dep."), Pl. Ex. G [Docket Item 104-3] 46:1-6; 62:2-3.) Similarly, Adami testified that "a typical day at [Cardo] is easily 10 to 12 hours" and he worked six or seven days per week. (Adami Dep. 113:11-12; 241:6-9.) Former Cardo manager and owner, Roderick Arce testified that Cardo installers worked "60, 65 hours a week," which he knew because he completed recap sheets showing how much work installers completed each day. (Deposition of Roderick Arce ("Arce Dep."), Pl. Ex. I [Docket Item 104-3] 99:1-13.)

Adami acknowledged that many variables contribute to the time it would take to complete a window installation (Adami Dep. 112:13-16) and that there were occasions when he would only install as few as three windows in a day. (Adami Dep. 262:21-23.) Varner conceded that there were days when he could not recall whether he worked for eight hours (Varner Dep. 73:18-20)

9

and admitted that there were occasions when he worked fewer than
six days per week (Varner Dep. 61:20-25; 63:20-23; 64:13-20;
65:9-11; 66:16-21; 72:1-6; 73:1-5; 73:23-74:1.) Both Adami and
Varner's estimates of their hours worked include travel time
returning home. (Varner Dep. 136:5-13; Adami Dep. 456:9-457:16.)

Adami testified that he was an "office manager" for Cardo
paid $1500 per week and he had the right to hire and fire Cardo
workers. (Adami Dep. 196:2, 197:10-25.) However, Edward Jones,
manager of installation at Cardo's Mt. Laurel facility,
testified that Adami was not a manager at the Mechanicsburg
warehouse, but that he was paid a fixed amount of $1500 per week
while working in Mechanicsburg. (Jones Dep. 76:8-77:24.)
Christopher Cardillo, Sr. denied that Adami ever became an
installation manager in Mechanicsburg. (Deposition of
Christopher Cardillo, Sr. ("Cardillo, Sr., Dep."), Pl. Ex. P
[Docket Item 104-3] 53:19-22.)

At his deposition, Adami stated that Jones told other Cardo
employees that Adami was a "scumbag" and a "motherfucker" and
warned them against maintaining a relationship with him. (Adami
Dep. 200:18-201:18.) In support of Adami's defamation claim,
Plaintiffs only identify Jones' deposition testimony that
sometime in September 2011 he accused Adami of theft in the
presence of Mike Lucas. (Jones Dep. 42:21-43:2.) Lucas was an
individual who performed service work for Cardo in the

10

Mechanicsburg area and who reported that aluminum coil had been stolen from the Mechanicsburg warehouse. (Jones Dep. 83:1-85:24.) Adami was accused of the theft of coil, as discussed further below.

### 2. Overtime Claims

Defendants argue that Plaintiffs' claims for overtime under the FLSA must fail because they would not be entitled to overtime as commissioned employees of a retail or service establishment. Defendants also argue that Plaintiffs' allegations as to their hours worked are insufficient to prove an overtime violation under the FLSA or New Jersey law. Plaintiffs respond that Cardo does not qualify for the retail or service establishment exemption because Cardo does not satisfy the requirements under Section 13(a)(2) of the FLSA. Plaintiffs also argue that Cardo's installers are not paid on a commission basis and Cardo has the burden to rebut Plaintiffs' testimony that they worked 72 hours per week.

### a. Retail Commission Exemption

The Court first considers whether Plaintiffs are subject to the retail commission exemption to the FLSA's overtime requirements. The FLSA requires that employers pay their employees one and one-half times their regular rate of pay for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a). The FLSA provides an exemption to the overtime

11

requirements for certain employees working in retail or service establishments. Section 7(i) provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i). Courts are to construe FLSA exemptions narrowly against the employer. Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 183 (3d Cir. 2000). "The employer has the burden of demonstrating that it is eligible for the retail commission exception." Parker v. NutriSystem, Inc., 620 F.3d 274, 277 (3d Cir. 2010) (citing Mitchell v. Kentucky Fin. Co., 359 U.S. 290, 295-96 (1959)).

The Court notes that Plaintiffs' reliance on the requirements to satisfy the Section 13(a)(2) exemption under the FLSA is misplaced.[2] The exemption under Section 13(a)(2) has been

---

[2] 29 C.F.R. § 779.337 sets forth the requirements to satisfy the Section 13(a)(2) exemption as follows:

a) An establishment which is a "retail or service establishment" within the Act's statutory definition of that term (See discussion in §§ 779.312 to 779.336) must, to qualify as an exempt retail or service establishment

repealed and differs from the exemption under Section 7(i) upon which Defendants rely. Although the regulations interpreting Section 13(a)(2) remain relevant to define a "retail or service establishment," Plaintiffs' argument relies on the requirements to qualify for the Section 13(a)(2) exemption, not the requirements to satisfy the definition of a "retail or service establishment."[3] <u>La Parne v. Monex Deposit Co.</u>, 714 F. Supp. 2d

---

under section 13(a)(2) of the Act (See § 779.301), meet both of the following tests:
(1) More than 50 percent of the retail or service establishment's total annual dollar volume of sales must be derived from sales of goods or services (or both) which are made within the State in which the establishment is located; and
(2) Either:
(i) The retail or service establishment must not be in an enterprise of the type described in section 3(s), or
(ii) If the retail or service establishment is in an enterprise of the type described in 3(s), it has an annual volume of sales (exclusive of excise taxes at the retail level which are separately stated) of less than $250,000.

29 C.F.R. § 779.337(a).

[3] 29 C.F.R. § 779.411 provides that "[a]s used in section 7(i), as in other provisions of the Act, the term 'retail or service establishment' means an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 C.F.R. § 779.318(a) discusses the characteristics or a retail or service establishment as follows:

Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

1035, 1045 (C.D. Cal. 2010) (explaining that the exemptions in Sections 7(i) and 13(a)(2) were intended to address "'fundamentally different wage and hour concerns'" and 29 C.F.R. § 779.337 "defines the *exemption* of 13(a)(2)" without "constrain[ing] the *definition* of 'retail or service establishment,' which was but one element of the exemption.") (quoting <u>English v. Ecolab, Inc.</u>, Civ. 06-5672, 2008 WL 878456, at *2, n.6 (S.D.N.Y. Mar. 31, 2008)). Accordingly, the Court rejects as inapposite Plaintiffs' arguments that Cardo's annual gross sales exceed $250,000, that more than 50 percent of Cardo's sales revenue is derived from sales in New Jersey, and that Cardo is an "enterprise of the type described in § 3(s) of the FLSA."

The Court next considers whether the amounts paid to Plaintiffs constitute a "commission" under Section 7(i). In <u>Parker</u>, the Third Circuit noted that the FLSA does not define the term "commission." <u>Parker</u>, 620 F.3d at 278. After considering the legislative history and statutory purpose of the FLSA and reviewing Department of Labor interpretations of the term, the <u>Parker</u> court "decline[d] to adopt a test that requires a commission under § 7(i) to be strictly based on a percentage of the end cost to the consumer." <u>Id.</u> at 283. Instead, the court

---

29 C.F.R. § 779.318. <u>See</u> <u>also</u> <u>English v. Ecolab, Inc.</u>, Civ. 06-5672, 2008 WL 878456, at *8 (S.D.N.Y. Mar. 31, 2008).

"conclude[d] that when the flat-rate payments made to an employee based on that employee's sales are proportionally related to the charges passed on to the consumer, the payments can be considered a bona fide commission rate for the purposes of § 7(i)." Id.

The present case is distinguishable from Parker because on the record before the Court there is no way to determine whether the flat-rate payments made to Plaintiffs were proportional to the charges passed on to Cardo's customers. Defendants contend that the amount paid to installers was roughly ten percent of the total cost of the windows; however, Defendants misconstrue Adami's deposition testimony.[4] Adami stated that Cardo capped labor costs at ten percent of the total costs of an installation job. Drawing all reasonable inferences in Plaintiffs' favor, Cardo paid its installers on a piece-rate basis and would only consider the total cost of the job to ensure labor costs did not exceed ten percent. Here, the record, when viewed most favorably to Plaintiffs, shows that Plaintiffs were paid a flat-rate with no connection to the cost to the consumer. If the Court were to accept Defendants' reasoning, all flat-rate payments would be

---

[4] Additionally, at oral argument, Defendants could not identify anything in the record establishing the relationship between the flat-rate payments and the cost to customers.

commissions under 207(i), and the Third Circuit has not adopted such a bright line rule.

Further, the Parker court distinguished three opinion letters from the Wage and Hour Division of the Department of Labor on the basis that "NutriSystem's payments to employees [were] based on consumer preference and the ability of the sales associate to persuade a customer to purchase a meal plan." Id. at 282-83. Importantly, one such opinion letter addressed a factual scenario similar to the present action. There, the Department opined that alarm system installers who were paid based on a percentage of the sales price of the systems they installed were paid a commission, but installers who were paid a flat fee per installation were not paid a commission under Section 7(i). Id. at 280. See also Dep't of Labor Op. Ltr., 1996 WL 1031770 (Apr. 3, 1996). The Parker court reasoned that, unlike the alarm installers who were paid a flat fee per installation, the number of calls the sales associates made was irrelevant to the number of additional payments they received because sales ability and customer preference actually dictated whether sales associates were paid additional compensation.

The present case lacks such distinguishing features. Just like the alarm installers, Plaintiffs were paid a flat fee per installation based on the type of window they installed. Because Plaintiffs had no role in selling the windows, sales ability and

16

customer preference were irrelevant to their compensation. Further, unlike Yi v. Sterling Collision Centers, Inc., 480 F.3d 505 (7th Cir. 2007), noted by the Parker court and cited by Defendants, there is nothing in the present record to suggest that Cardo "base[d Plaintiffs'] compensation on sales." Id. at 283-84.

As such, the Court concludes, based on the present record, that the amounts paid to Plaintiffs do not constitute a "commission" under Section 7(i). "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991) (citing Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206 (1966)). Therefore, the Court will deny Defendants' motion for summary judgment to the extent it relies on the Section 7(i) exemption under the FLSA.[5]

### b. Plaintiffs' Damages Calculation

Defendants also argue that Plaintiffs' allegations as to overtime are insufficient to approximate damages under the FLSA. Plaintiffs contend that Cardo failed to keep written records for each of its installers as required under the FLSA and

---

[5] Having found that the amounts paid to Plaintiffs do not constitute a "commission," the Court will not address Plaintiffs' argument that Cardo cannot be considered a retail or service establishment because Cardo is a manufacturer of windows. See 29 C.F.R. § 779.318(a).

Plaintiffs' testimony regarding their hours and pay is sufficient to shift the burden to Cardo to present evidence of the precise number of hours worked.

An employee who brings a claim for unpaid wages or unpaid overtime under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Courts must be conscientious of the employer's duty to maintain proper records of wages, hours and other conditions under Section 11(c) of the FLSA, as well as the fact that "[e]mployees seldom keep such records themselves." Id. "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." Id. However, where an "employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," an employee satisfies his burden if

> he proves that he has in fact performed work for which he
> was improperly compensated and if he produces sufficient
> evidence to show the amount and extent of that work as a
> matter of just and reasonable inference. The burden then
> shifts to the employer to come forward with evidence of the
> precise amount of work performed or with evidence to
> negative the reasonableness of the inference to be drawn
> from the employee's evidence. If the employer fails to
> produce such evidence, the court may then award damages to
> the employee, even though the result be only approximate.

Id. at 687-88. See also Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3d Cir. 1994) ("[I]t is settled that the burden (with

respect to a given employee) is met if it is proved that the employee has in fact performed work for which he was improperly compensated and if the employee produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.").

Because Defendants assume that Plaintiffs were employees entitled to overtime under the FLSA for the purposes of the instant summary judgment motion, the Court will do the same.[6] The Court is mindful of a significant dispute regarding what records Cardo has produced in discovery and what documents the parties believe are necessary to calculate a reasonable estimate of damages.[7] Irrespective of the discovery dispute, it is clear that

---

[6] Defendants' moving papers state, "Although plaintiffs were independent contractors and not 'employees' under state and federal overtime laws, for purposes of this motion only defendants do not argue this point." (Def. Br. [Docket Item 87-2] at 3.)

[7] Defendants state that "[i]n response to plaintiff's [discovery] requests, defendants subsequently produced more than 2800 pages of documentation, including detail sheets as to all projects that plaintiffs worked on for Cardo, the number of windows or doors installed, all payments made, and the basis for each such payment." (SMF ¶ 24.) However, Plaintiffs contend that "Cardo has produced no records, or even estimates, of the hours worked by its installers." (Pl. Opp. at 13.) Plaintiffs emphasize that "the discovery necessary for an expert to render an opinion on the overtime damages due to [Plaintiffs] and the putative class has not yet been produced." (Id. at 14.) Specifically, Plaintiffs assert that Defendants have not produced "job packets" for each window installation by Plaintiffs. Plaintiffs further note that production of "job packets" were subject to a discovery dispute and Judge Schneider ordered Defendants to produce only "one complete representative 'job packet' for each plaintiff." [Docket Item 57.]

Cardo did not maintain records of its installers' hours. As such, Cardo's records are inadequate and Plaintiffs' may rely on the burden-shifting framework to prove damages. See Prof'l Appraisal Servs., Inc. v. Melton, Civ. 05-621, 2006 WL 3203901, *2 (W.D. Mich. Nov. 3, 2006) (noting that employer did not keep records of hours worked by individual characterized as an independent contractor and finding individual's testimony, substantiated by co-workers' affidavits, sufficient to create a genuine issue of material fact). Therefore, the question in this summary judgment motion is whether Plaintiffs have adduced evidence from which a reasonable fact-finder could find that they have carried their burden of showing the amount and extent of work for Cardo as a matter of just and reasonable inference.

It is undisputed that Cardo failed to produce any documents in discovery containing the addresses of the customers for which Plaintiffs installed windows. These addresses are necessary for Plaintiffs to estimate damages because time traveling from the Cardo warehouses to the customer's location is compensable under the FLSA and the NJWHL. Accordingly, pursuant to Fed. R. Civ. P. 56(d), the Court will defer decision on Defendants' motion to the extent it is based on the lack of a precise damages calculation. Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court

may: (1) defer considering the motion or deny it; (2) allow time
to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order."). Unless the parties can
reach a stipulation regarding Plaintiffs' average compensable
travel time each day, Plaintiffs are entitled to discover the
addresses of the each customer serviced because such information
is necessary to compute Plaintiffs' average hourly earnings.[8] The
parties will have an opportunity for supplemental briefing after
this discovery is produced. Therefore, pursuant to Rule 56(d),
the Court will defer decision on Defendants' motion for summary
judgment to the extent it is based on Plaintiffs' failure to
provide a reasonable estimate of damages for unpaid overtime
under the FLSA and New Jersey law.[9] Plaintiffs' supplemental

---

[8] Plaintiffs provide an estimate of damages for unpaid overtime
in opposition to Defendants' motion for summary judgment. At
oral argument, Plaintiffs' counsel stated that this calculation
was based on 29 C.F.R. § 548.302. The Court has reviewed 29
C.F.R. § 548.302 and finds no basis for Plaintiffs' methodology.
29 C.F.R. § 548.302 pertains to the calculation method in 29
C.F.R. § 548.3(b) by which an hourly pay rate is "obtained by
averaging the earnings . . . of the employee for all work
performed during the workday or any other longer period not
exceeding sixteen calendar days." Plaintiffs' calculation
averaged Plaintiffs' earnings for the entire year based on their
pay indicated on 1099 forms. The Court expects Plaintiffs' to
submit a reasonable estimate of damages upon supplemental
briefing.
[9] The standard for proving damages under the NJWHL is similar to
that under the FLSA. When determining whether a plaintiff has
established a prima facie case under NJWHL, New Jersey courts
have held that a plaintiff need not prove damages with precision
where it is impractical or impossible to do so. See Mosley v.
Femina Fashions, Inc., 811 A.2d 910, 916 (N.J. Super. Ct. App.

brief and accompanying evidence of a reasonable estimate of damages will be due in 21 days, and any reply is due seven days thereafter.

### 3. Unjust Enrichment

Defendants argue that Plaintiffs' claims for unjust enrichment, Counts IV and XI of their Amended Complaint, fail because they are preempted by the FLSA. Plaintiffs argue that the Third Circuit directly addressed this question in Knepper v. Rite Aid Corp., 675 F.3d 249 (3d Cir. 2012), and held that plaintiff's state law claims were not preempted by the FLSA.

At the outset, the Court notes that the Third Circuit in Knepper did not directly address the issue before the Court. In Knepper, the Third Circuit considered whether the FLSA preempts the Maryland Wage and Hour Law (MWHL) and the Ohio Minimum Fair Wage Standards Act (OMFWSA). Knepper, 675 F.3d at 262. The Court of Appeals observed that the FLSA contains a savings clause that expressly preserves state or local laws establishing a higher minimum wage than that established under the FLSA and concluded that the FLSA did not preempt the MWHL and OMFWSA. Id. As such, the Third Circuit did not address the question presented here:

---

Div. 2002). Specifically, damages need only be proved with "such certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate" of damages. Id. (quoting Lane v. Oil Delivery, Inc., 524 A.2d 405, 409 (N.J. Super. Ct. App. Div. 1987).

whether the FLSA preempts a state common law claim for unjust enrichment.

Although the Third Circuit has not addressed whether the FLSA preempts state common law causes of action, courts in the District of New Jersey have held that "claims brought under state common law and 'directly covered' by the FLSA, including overtime claims, must be brought under the FLSA." Kronick v. bebe Stores, Inc., Civ. 07-4514 (RBK), 2008 WL 4509610, at *4 (D.N.J. Sept. 29, 2008). "Courts that have considered this issue analyze whether the FLSA and common law claims are grounded in the same facts." Moeck v. Gray Supply Corp., Civ. 03-1950 (WGB), 2006 WL 42368, at *2 (D.N.J. Jan. 6, 2006). Here, unlike Kronick and Moeck, Plaintiffs' state law claim for unjust enrichment are not "merely . . . based on" Plaintiffs' FLSA overtime claims. Id.

Count IV of Plaintiffs' Amended Complaint incorporates the preceding allegations and states, "Should Employer not pay Plaintiffs their overtime compensation and other benefits and perquisites of employment, Employer will be unjustly enriched to Plaintiffs' substantial detriment."[10] (Am. Compl. ¶ 87.)

---

[10] Count XI of the Amended Complaint contains substantially similar language: "Should Cardo not pay Plaintiff his overtime compensation and other benefits and perquisites of employment during the time he was a manager of Cardo, Cardo will be unjustly enriched to Plaintiff's substantial detriment." (Am. Compl. ¶ 169.)

Plaintiffs seek monetary damages and injunctive relief requiring Defendants to pay on Plaintiffs' behalf federal and state payroll and income taxes and other amounts Defendants were required to withhold from Plaintiffs' wages. Plaintiffs' claims for unjust enrichment are thus factually distinct from their FLSA claim for two reasons. First, Plaintiffs' unjust enrichment claims are not limited to Cardo's alleged failure to pay overtime, but include Cardo's alleged failure to provide certain benefits to which Plaintiffs were allegedly entitled. Second, Plaintiffs seek relief beyond that available under the FLSA. As such, the Court finds that Plaintiffs' common law claims for unjust enrichment are not based on the same facts and are not directly covered by the FLSA.

Defendants further argue that even if Plaintiffs' unjust enrichment claims are not preempted by the FLSA, Plaintiffs cannot show that Defendants wrongfully secured and retained any benefit as required to prevail on a claim for unjust enrichment.[11] Defendants contend that Plaintiffs signed

---

[11] "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994) (citation omitted). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. (citing Associates Commercial Corp. v. Wallia, 511 A.2d 709 (N.J. Super. Ct. App. Div. 1986)). "A

agreements characterizing them as independent contractors for Cardo and Plaintiffs understood the terms and conditions of their relationship with Cardo, including how they would be compensated. Plaintiffs argue that the agreements signed by Plaintiffs were unenforceable contracts of adhesion.

Plaintiffs may only pursue a quasi-contractual claim such as unjust enrichment in the absence of a valid express contract. Von Nessi v. XM Satellite Radio Holdings, Inc., Civ. 07-2820 (PGS), 2008 WL 4447115, at *4 (D.N.J. Sept. 26, 2008) (citing Suburban Transfer Svc., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983)). A contract of adhesion is a contract "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate." Stelluti v. Casapenn Enterprises, LLC, 1 A.3d 678, 687 (N.J. 2010) (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 685 (N.J. 1992)). "Although a contract of adhesion may require one party to choose either to accept or reject the contract as is, the agreement nevertheless may be enforced." Id. "When making the

---

common thread running through the successful invocation of a claim of unjust enrichment is that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant at the time the benefit was conferred." Hipple v. Estate of Mayer, A-4003-05T5, 2007 WL 1080421, at *8 (N.J. Super. Ct. App. Div. Apr. 12, 2007) (citation and internal quotation omitted).

determination that a contract of adhesion is unconscionable and unenforceable, we consider, using a sliding scale analysis, the way in which the contract was formed and, further, whether enforcement of the contract implicates matters of public interest." Id. at 687 (citing Delta Funding Corp. v. Harris, 912 A.2d 104, 111 (N.J. 2006)).

Plaintiffs contend that they were required to sign the agreements on a "take it or leave it" basis without having read the agreements and without any attorney review. (Pl. Opp. at 18.) Further, Plaintiffs assert that there was unequal bargaining power between Plaintiffs and Cardo, and Cardo did not provide additional consideration to Plaintiffs for signing the agreement. Plaintiffs were told that they would not receive any additional work from Cardo if they did not sign the agreements. In addition to material questions of fact regarding the signing of the agreements, the central aspect of this case is a dispute over whether Plaintiffs were independent contractors or employees. As such, the Court cannot conclude that the agreements signed by Plaintiffs are unenforceable contracts of adhesion at this stage. Penn Nat'l Ins. v. HNI Corp., 482 F. Supp. 2d 568, 598 (M.D. Pa. 2007) ("Given . . . question of fact [regarding whether Haldeman was an independent contractor or an employee], we can not [sic] conclude that the Independent Contractor Agreement is unenforceable on the basis that it is

26

[a] contract of adhesion containing unconscionable terms when applied to an employee.").

Although Plaintiffs may not obtain double recovery, if the agreements they signed were unenforceable contracts of adhesion, then they may pursue their claims for unjust enrichment. Therefore, the Court will deny Defendants' motion for summary judgment as to Plaintiffs' unjust enrichment claims.

### 4. Defamation

Defendants argue that Adami's defamation claim against Edward Jones must fail because he has offered only vague allegations of slander supported only by inadmissible hearsay. Defendants also argue that Jones' alleged name-calling is not capable of defamatory meaning. In response, Plaintiffs only address statements by Jones accusing Adami of theft and contend that accusations of criminal conduct constitute slander per se.

Because Plaintiffs provide no argument regarding alleged statements by Jones that Adami was a drug addict or name-calling by Jones referring to Adami as a "scumbag" and a "motherfucker,"[12] the Court will only address Plaintiffs'

---

[12] Plaintiffs failed to provide a statement of undisputed material facts or discuss these allegedly defamatory statements in their opposition papers. Therefore, the Court finds them insufficiently specific to create a genuine dispute of material fact.

defamation claim based on the accusation that he stole aluminum coil from Cardo.

To establish defamation under New Jersey law, a plaintiff must show the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault.[13] Singer v. Beach Trading Co., 876 A.2d 885, 894 (N.J. Super. Ct. App. Div. 2005). The accusation of criminality is defamatory as a matter of law. Robles v. U.S. Envtl. Universal Servs., Inc., 469 F. App'x 104, 109 (3d Cir. 2012) (citing Romaine v. Kallinger, 537 A.2d 284, 291 (N.J. 1988)). However, a defendant may raise qualified privilege is an affirmative defense. Binkewitz v. Allstate Ins. Co., 537 A.2d 723, 730 (N.J. Super. Ct. App. Div. 1988) ("Just as in a defamation action, the qualified privilege is a defense which must be raised by defendant."). A communication is privileged if the person communicating the alleged defamation and the audience have a "commensurate interest or duty in the communication." Cruz v.

---

[13] The New Jersey Supreme Court has occasionally listed "unprivileged publication" as an element of a successful defamation claim. See Leang v. Jersey City Bd. Of Educ., 969 A.2d 1097, 1113 (N.J. 2009). However, while a privileged statement cannot lead to liability, the Supreme Court of New Jersey has held that privileges are affirmative defenses to be established by the defendant. Coleman v. Newark Morning Ledger Co., 149 A.2d 193, 203 (N.J. 1959).

<u>HSBC</u>, Civ. 10-135 (JBS/JS), 2010 WL 2989987, at *4 (D.N.J. July 26, 2010).

> The test to determine whether a communication is entitled to the common interest privilege requires the Court to look to (1) the appropriateness of the occasion on which the defamatory information is published, (2) the legitimacy of the interest thereby sought to be protected or promoted, and (3) the pertinence of the receipt of that information by the recipient.

<u>Prof'l Recovery Servs., Inc. v. General Elec. Capital Corp.</u>, 642 F. Supp. 2d 391, 401 (D.N.J. 2009) (citing <u>Bainhauer v. Manoukian</u>, 520 A.2d 1154, 1170 (N.J. Super. Ct. App. Div. 1987)).

Further, "[w]hen such privilege applies, liability for defamatory statements comes into being only where the publication is not made in good faith; where there is express malice or absence of belief in the truth thereof; or where they are motivated by a desire other than to carry out the company's right of discipline in good faith." <u>Jorgensen v. Pennsylvania R. Co.</u>, 118 A.2d 854, 870 (N.J. Super. Ct. App. Div. 1955) (citation omitted).

In the present case, as in <u>Robles</u>, Plaintiffs have not presented any evidence that Jones' statements were false, nor that his statements were unprivileged. <u>Robles</u>, 469 F. App'x at 109 (finding allegation that plaintiff stole copper when he applied for unemployment benefits entitled to qualified privilege). <u>See also</u> <u>Jorgensen</u>, 118 A.2d at 869 (finding

29

statements in letter read at grievance hearing and sent to union
chairman alleging that plaintiff stole company property
protected by qualified privilege); <u>Sokolay v. Edlin</u>, 167 A.2d
211, 218 (N.J. Super. Ct. App. Div. 1961) (finding accusation
that plaintiff was responsible for missing Demerol tablets in
the presence of other employees protected by qualified
privilege). The only evidence in the record identified by
Plaintiffs in support of Adami's defamation claim is testimony
by Jones admitting that sometime in September 2011 he accused
Adami of theft in the presence of Mike Lucas. (Jones Dep. 42:21-
43:2.) Lucas was an individual who performed service work for
Cardo in the Mechanicsburg area and who said aluminum coil had
been stolen from the Mechanicsburg warehouse. Plaintiffs'
argument that Lucas was a management consultant, not an employee
of Cardo at the time of the meeting is irrelevant because,
regardless of Lucas' specific arrangement with Cardo, he had a
legitimate interest in preventing theft at Cardo.[14] Further,
Plaintiffs have not provided evidence of abuse sufficient to
overcome the privilege.[15] Therefore, the Court will grant

_____

[14] Nor is the Court persuaded by Plaintiffs' suggestion that
Jones may have accused Adami of theft in the presence of others
in addition to Lucas because Jones was named as a witness in
Cardo's private criminal complaint against Adami.
[15] "A qualified privilege is abused if: '1) the publisher knows
the statement is false or the publisher acts in reckless
disregard of its truth or falsity; 2) the publication serves a
purpose contrary to the interests of the qualified privilege; or

Defendants' motion for summary judgment as to Adami's defamation claim.

### 5. Adami's Claim for Overtime as a Manager

Defendants argue that Adami's claim for overtime for his final months at Cardo when he was a manager paid a fixed salary is self-defeating because his allegations exempt him from overtime pay under the FLSA and the NJWHL.[16] Plaintiffs respond that there is a factual dispute regarding whether Adami was a manager at Cardo.

29 U.S.C. § 213(a)(1) states that any person employed in a bona fide executive, administrative, or professional capacity is exempt from the FLSA's mandatory overtime compensation provision. See Davis v. Mountaire Farms, Inc., 453 F.3d 554, 557 (3d Cir. 2006). To qualify as exempt, the employee must satisfy the criteria set forth in 29 C.F.R. § 541.100, which provides:

> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal

---

3) the statement is excessively published.'" Govito v. W. Jersey Health Sys., Inc., 753 A.2d 716, 726 (N.J. Super. Ct. App. Div. 2000) (quoting Williams v. Bell Tel. Labs. Inc., 623 A.2d 234, 240 (N.J. 1993)).

[16] N.J.A.C. § 12:56-7.2 expressly adopts the exemptions to the FLSA identified in 29 C.F.R. § 541 et seq., including the bona fide executive exemption. See N.J.A.C. § 12:56-7.2(a) ("Except as set forth in (b) below, the provisions of 29 CFR Part 541 are adopted herein by reference.").

Government), exclusive of board, lodging or other
facilities;
(2) Whose primary duty is management of the enterprise in
which the employee is employed or of a customarily
recognized department or subdivision thereof;
(3) Who customarily and regularly directs the work of two
or more other employees; and
(4) Who has the authority to hire or fire other employees
or whose suggestions and recommendations as to the hiring,
firing, advancement, promotion or any other change of
status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

Adami testified that he was an "office manager" for Cardo
paid $1500 per week and had the right to hire and fire people.
However, Jones testified that Adami was not a manager at the
Mechanicsburg warehouse, but he was paid a fixed amount of $1500
per week while working in Mechanicsburg. Christopher Cardillo,
Sr., denied that Adami ever became an installation manager in
Mechanicsburg. However, the parties agreed at oral argument that
Adami cannot assert a claim under the FLSA for any period during
which he was a manager with Cardo due to the bona fide executive
exemption, but he may maintain a claim for breach of contract
for uncompensated services during his last pay period with
Cardo. Accordingly, the Court will grant Defendants' motion for
summary judgment to the extent it relies on the FLSA's bona fide
executive exemption for the period when Adami alleges he was a
manager with Cardo. This exemption does not prohibit Adami from
seeking other damages related to this period under a breach of
contract theory.

32

### 6. New Jersey Construction Industry Independent Contractor Act

Defendants also argue that Plaintiffs' claim for unpaid benefits under the CIICA must fail because Plaintiffs have no statutory or contractual right to benefits. Plaintiffs respond that under the CIICA they are entitled to any benefits provided to Cardo's other non-exempt employees, including employer contributions to social security.

N.J.S.A § 34:20-5 establishes penalties for an employer "who fails to properly classify an individual as an employee" and "fails to pay wages, benefits, taxes or other contributions required by" certain enumerated acts. Those acts are "the 'New Jersey Prevailing Wage Act,' P.L.1963, c. 150 (C.34:11-56.25 et seq.), the 'unemployment compensation law,' R.S.43:21-1 et seq., the 'Temporary Disability Benefits Law,' P.L.1948, c. 110 (C.43:21-25 et seq.), the 'New Jersey Gross Income Tax Act,' N.J.S.54A:1-1 et seq., P.L.1965, c. 173 (C.34:11-4.1 et seq.) or other applicable State tax laws, and the 'New Jersey State Wage and Hour Law,' P.L.1966, c. 113 (C.34:11-56a et seq.)." N.J. Stat. Ann. § 34:20-5(a). The regulations also reference the New Jersey Wage Payment Law, N.J.S.A. § 34:11-56a et seq. Therefore, the Court will grant Defendants' motion for summary judgment to the extent it seeks to limit Plaintiffs' recovery under the CIICA to the benefits to which Plaintiffs would be entitled

under the laws specifically enumerated in the CIICA and accompanying regulations.[17]

### 7. Conclusion

For the reasons discussed above, the Court will grant in part, deny in part, and defer in part Defendants' motion for summary judgment. The Court will grant Defendants' motion for summary judgment as to Adami's defamation claim against Edward Jones and to the extent Defendants seek to limit Plaintiffs' recovery under the CIICA to the benefits to which Plaintiffs would be entitled under the laws specifically enumerated in the CIICA and accompanying regulations. The Court will deny Defendants' motion for summary judgment as to Plaintiffs' claims for unjust enrichment and to the extent it relies on the FLSA's retail commission exemption. However, the Court will defer decision on Defendants' motion to the extent it argues that Plaintiffs failed in their obligation to provide a reasonable estimate of damages.

### B. Plaintiffs' Motion for Summary Judgment

Plaintiffs' motion for summary judgment seeks dismissal of Defendants' counter-claims against Fred Adami for fraud, conversion, conspiracy, tortious interference with contractual

---

[17] In so finding, the Court is not determining the contours of the CIICA, nor the specific damages recoverable under the statute.

relations, and breach of contract. [Docket Item 88.] The Court
will address each separately below.[18]

### 1. Facts

Plaintiffs did not submit a statement of undisputed facts
to accompany their motion for summary judgment as required by
Local Civil Rule 56.1. Therefore, the Court considers as
undisputed the following facts contained in Defendants' 56.1
statement.[19]

Adami admitted to Cardo management that he accepted payment
for jobs he did not perform based on false invoices he submitted

---

[18] The Court previously denied Plaintiffs' motion to dismiss
Defendant's counter-claim for breach of contract against Fred
Adami. Adami v. Cardo Windows, Inc., Civ. 12-2804 (JBS/JS), 2014
WL 320048, at *19 (D.N.J. Jan. 29, 2014). Plaintiffs provide no
new argument in support of their motion for summary judgment on
Defendant's counter-claim for breach of contract against Fred
Adami and merely incorporate by reference their previous
argument that there is no cause of action for employers under
the FLSA. Therefore, the Court declines to revisit its previous
decision at this time.

[19] Defendants argue that Plaintiffs' motion for summary judgment
must be denied for failure to provide a statement of undisputed
facts pursuant to Local Rule 56.1. Plaintiffs submitted a
belated Rule 56.1 statement on January 14, 2014 nearly six weeks
after filing their initial moving papers and after Defendants
filed opposition to Plaintiffs' motion. However, Plaintiffs'
moving papers contain detailed citations to the record and
Defendants' cannot be said to have been prejudiced by
Plaintiffs' failure to comply with the local rule. Accordingly,
the Court will excuse Plaintiffs' failure to comply with Local
Rule 56.1 on the instant motion, but the Court will deem as
unopposed any future motion for summary judgment unaccompanied
by a 56.1 statement. See L. Civ. R. 56.1(a) ("A motion for
summary judgment unaccompanied by a statement of material facts
not in dispute shall be dismissed.").

to Cardo. (SMF ¶ 3.) At the direction of Roderick Arce, Adami would "turn in a bill stating he did a job," he would accept a check from Cardo, then give some of the money to Arce. (Id. ¶ 4.) Adami testified that he was instructed on a few occasions to give cash back to either Arce or Edward Jones and he understood that they would put the cash in their pocket. (Id. ¶ 5.) Adami provided money in this manner on at least 20 different occasions which Defendants have documented. (Id. ¶ 6.) Jones denies that he had any involvement in the alleged kickback arrangement and he testified that he was used as a "dupe" to perpetuate a fraudulent scheme by Arce and Adami. (Id. ¶ 7.) Both Arce and Jones testified that Adami never gave them any overpaid cash. (Id. ¶ 8.)

Adami also admitted to Cardo managers Edward Jones and Mike Lucas that he stole aluminum coil from Cardo's warehouse in Mechanicsburg, Pennsylvania. (Id. ¶ 13.) Adami admitted to Ed Jones that he also stole coil from Cardo's warehouse in Mt. Laurel, New Jersey. (Id. ¶ 14.) Following a fire in the Cardo warehouse in Berlin, Connecticut, Adami, at the direction of Arce, "scrapped" certain amounts of aluminum coil and gave the cash to Arce. (Id. ¶¶ 16-17.)

Arce signed a "Separation and Termination Agreement" dated April 19, 2011 with a termination date of January 7, 2011. (Id.

¶ 32.) Paragraph IX of the Agreement is titled "Non-Competition" and states:

> For the period beginning on the Termination Date and continuing for three (3) years after the Termination Date ("the Restricted Period"), Arce shall not:
> . . .
> (iv) Hire, engage, contract or otherwise do business with, directly or indirectly, whether as an employee, independent contractor, or otherwise, any person (including any entity with which such person may be affiliated) or entity that as of the Termination Date was, or may at any time during the Restricted Period be, engaged by Cardo or any of its affiliates as an employee or independent contractor (the "Restricted Workers"), including but not limited to its office employees and its contracted sales persons, dealers, and installers.

(Id. ¶ 33.) Adami testified that he knew Arce was not permitted to work in the window business, "directly or indirectly," after he was terminated. (Id. ¶ 34.) Adami also testified that on one occasion Arce referred a window job to Adami because Arce did not want to be involved. (Id. ¶ 35.)

## 2. Fraud

Plaintiffs argue that Defendants' counter-claim for fraud against Fred Adami must be dismissed because it is based entirely on the allegation that Adami submitted bills to Cardo for work he did not perform and Jones testified that he prepared the bills upon which Cardo's claims for fraud are based. Further, Plaintiffs argue that Defendants have failed to satisfy the elements of fraud by clear and convincing evidence because Defendants have not identified with specificity the date, place,

37

and name of the allegedly fraudulent jobs. Defendants respond
that Plaintiffs misconstrue the basis for the fraud claim and
note that an omission may also form the basis for common law
fraud.

To establish a claim for common law fraud under New Jersey
law, plaintiff must show: "(1) a material misrepresentation of a
presently existing or past fact; (2) knowledge or belief by the
defendant of its falsity; (3) an intention that the other person
rely on it; (4) reasonable reliance thereon by the other person;
and (5) resulting damages." Gennari v. Weichert Co. Realtors,
691 A.2d 350, 367 (N.J. 1997) (citation omitted). "The
deliberate suppression of a material fact that should be
disclosed is viewed as equivalent to a material
misrepresentation (i.e., an affirmative misrepresentation),
which will support a common law fraud action." Winslow v.
Corporate Express, Inc., 834 A.2d 1037, 1044 (N.J. Super. Ct.
App. Div. 2003) (internal quotation and citation omitted).
Plaintiff must prove each element by clear and convincing
evidence. In re Resorts Int'l, Inc., 181 F.3d 505, 509 (3d Cir.
1999) (citing Stochastic Decisions, Inc. v. DiDomenico, 565 A.2d
1133, 1137 (N.J. Super. Ct. App. Div. 1989)).

The Court finds that the record, when viewed in a light
most favorable to Defendants, shows that Adami participated in a
fraudulent scheme with Arce to submit false paperwork and accept

payment for jobs he did not perform. Adami either kept the money he was overpaid or gave it to Arce. Jones' testimony that he may have completed and approved "time cards" and "labor bills" for Adami does not defeat Defendants' claim for fraud. (Jones Dep. 210:19-212:7.) Jones also testified that he was unaware of any fraudulent scheme between Adami and Arce and did not know that the information provided by Adami or Arce was false. As such, the Court is unpersuaded by Plaintiffs' argument that Defendants' fraud claim must fail because Jones completed certain paperwork based on information provided to him by Adami or Arce. The Court also rejects Plaintiffs' argument that Defendants will be unable to satisfy each element of fraud by clear and convincing evidence because Defendants' have not identified with specificity the date, place, and name of the allegedly fraudulent jobs. In fact, Defendants have identified documents related to at least 20 specific occasions when Adami submitted false paperwork.[20] A reasonable jury could conclude based on the evidence in the record that Defendants have satisfied each element of fraud by clear and convincing evidence. Therefore, the Court will deny Plaintiffs' motion for

---

[20] Cardillo, Sr. testified about these documents, but they are not part of the record. That neither party saw fit to include these 20 files in the record does not make these claims any less specific. These are the instances of fraud of which Defendants complain.

summary judgment as to Defendants' counter-claim for fraud against Adami.

### 3. Conversion

Plaintiffs argue that Defendants have not provided inventory records for each warehouse from which Adami allegedly stole aluminum coil and these records are necessary for Defendants to prevail on its conversion claim against Adami. Plaintiffs also contend that Defendants committed spoliation by destroying the inventory records and summary judgment is the only appropriate sanction. Defendants respond that Plaintiffs have failed refute any of the evidence in the record which supports their conversion claim. As to spoliation, Defendants argue that the record shows that Cardo did not maintain detailed inventory sheets for aluminum coil and thus could not have destroyed any such records.

The Court first considers Plaintiffs' argument that Defendants committed spoliation by failing to maintain or destroying inventory records. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted). In Brewer, the Court of Appeals stated

40

that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995). In Bull, the Court similarly observed that "a finding of bad faith is pivotal to a spoliation determination." Bull, 665 F.3d at 79.

In the present action, Plaintiffs are unable to identify specific documents which have not been produced and unable to establish bad faith necessary to support a claim for spoliation. The parties agreed at oral argument that Plaintiffs' claim for spoliation is limited to inventory records at the Mt. Laurel warehouse because Defendants produced inventory records related to the Connecticut and Mechanicsburg warehouses. However, Plaintiffs have not shown that Cardo maintained the inventory records at the Mt. Laurel warehouse that Plaintiffs claim were withheld or destroyed. Further, Defendants note that they never relied on inventory records in alleging theft by Adami because the inventory records would not prove or disprove a series of thefts over time. Because Plaintiffs have not identified any documents not maintained or destroyed in relation to the alleged theft at the Mt. Laurel warehouses or any evidence of bad faith, the Court finds that Plaintiffs have not established sufficient grounds for spoliation.

Turning to the merits of Defendants' counter-claim for conversion, the Court concludes that the evidence in the record supports a claim for conversion against Adami. "The elements of common law conversion under New Jersey law are (1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc., 513 F. Supp. 2d 107, 127 (D.N.J. 2007). Adami admitted to Cardo management that he stole aluminum coil from Cardo warehouses in Mechanicsburg and Mt. Laurel.[21] He also testified that he participated in a scheme with Arce to receive cash for scrapped aluminum coil following a fire at the Cardo warehouse in Berlin, Connecticut.[22] It is undisputed that

_____

[21] Plaintiffs argue that testimony by Lucas that Adami admitted to stealing aluminum coil is inadmissible hearsay because Lucas is not an opposing party. Plaintiffs' opposition states, "Please note that Mike Lucas is not a party in this case and therefore he is not testifying about 'opposing party statement' that would make his testimony 'not hearsay' under Fed. R. Evid. 801(d)(2)." Plaintiffs clearly misunderstand Rule 801(d)(2). Rule 801(d)(2) excludes from the definition of hearsay a "statement . . . offered against an opposing party" that "was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). There is no question here that Lucas' testimony about Adami's admission to stealing coil is a statement offered against an opposing party that was made by the party.
[22] Plaintiffs assert that Christopher Cardillo, Sr., testified that Cardo's insurance claim following the fire at the Connecticut warehouse did not include the loss of coil. However, documents obtained from Harleysville Insurance Company prove that Cardo did submit an insurance claim for the damaged coil and that the coil was not scrapped immediately after the fire as Defendants contend. Although the insurance documents undermine

aluminum coil existed at the three Cardo warehouses, that
Defendants had the right to immediate possession thereof, and
Adami, by his own admission, stole aluminum coil and/or
participated in a scheme to scrap aluminum coil and retain the
proceeds. The Court finds that the lack of inventory records for
aluminum coil at most presents an issue of material fact for the
jury regarding damages.[23]

### 4. Conspiracy

Plaintiffs argue that Defendants' counter-claim against
Adami for conspiracy must fail because conspiracy requires at
least two defendants and Adami is the only counter-claim
defendant. Plaintiffs also argue that Defendants' conspiracy
claim fails to the extent Defendants' claims for conversion,
fraud, and tortious interference fail. Defendants respond that
not all members of a conspiracy need to be named as defendants

---

Cardillo's credibility, when viewed most favorably to
Defendants, these documents support Defendants' contention that
Cardo intended to scrap the damaged aluminum. The insurance
claim report states, "The aluminum coil stock my [sic] be
salvageable for its weight as scrap, however the amount of stock
available and the cost to scrap the stock exceeds the amount of
the insured's losses which will not be paid due to the policy
limit." (Pl. Supp. Ex. 3 [Docket Item 108-3.])
[23] The Court finds no reason to address Plaintiffs' argument that
a memo prepared by Mike Lucas entitled "The Fred Affair" is
inadmissible. The Court has not relied on this document in its
decision today, and Defendants have not had an opportunity to
explain how and when the memo was created.

to establish liability for civil conspiracy and the evidence in
the record supports such a claim.

It is clear in the criminal context that alleged co-
conspirators need not be joined in the same action. See United
States v. Obialo, 23 F.3d 69, 72 (3d Cir. 1994) ("The failure of
the government to be able to name and personally identify the
other conspirator is not fatal to a conspiracy conviction.").
Courts have applied this same rule to civil conspiracy claims.
See US Investigations Servs., LLC v. Callihan, Civ. 11-0355,
2012 WL 933069, at *2 (W.D. Pa. Mar. 19, 2012) ("In order for
one member of a civil conspiracy to be liable, not all members
of the conspiracy need be named as defendants or joined as
defendants."); Stillwagon v. Innsbrook Golf & Marina, LLC, Civ.
11-1338, 2013 WL 1180312, at *13 (W.D. Pa. Mar. 20, 2013)
(same). Plaintiffs have failed to identify any case law in
support of its argument that a claim for civil conspiracy
requires that all members of the alleged conspiracy be joined as
parties. Moreover, the only case cited by Plaintiffs is of
questionable relevance. Plaintiffs provide only a quotation from
Farris v. Cnty. of Camden, 61 F. Supp. 2d 307 (D.N.J. 1999), and
emphasize the court's use of the plural, "defendants," in its
discussion of the elements of a civil conspiracy claim. Farris,
61 F. Supp. 2d at 330 ("Thus, the conspiracy is not the gravamen
of the charge, but merely a matter of aggravation, enabling the

plaintiff to recover against all the defendants as joint

tortfeasors. The actionable element is the tort which the

defendants agreed to perpetrate and which they actually

committed . . . . A conspiracy is not actionable absent an

independent wrong[.]") (internal alterations in original).

Nothing in this language requires all defendants to be joined in

the action. Therefore, the Court will deny Plaintiffs' motion

for summary judgment on Defendants' counter-claim for conspiracy

against Adami.[24]

### 5. Tortious Interference with Contractual Relations

Plaintiffs assert that Defendants' counter-claim for

tortious interference with contractual relations must fail

because Defendants are unable to show damages. Plaintiffs

contend that Defendants' tortious interference claim is based on

Adami's work for a "blown-in insulation" company owned by Arce

and Cardo has admitted that it has never been in the blown-in

insulation business. Defendants respond that damages need not be

proven to an exact amount and Defendants' have sufficiently

shown harm in the loss of potential customers.

Under New Jersey law in order to bring a claim of tortious

interference with a prospective or existing economic

_____

[24] Because the Court finds sufficient evidence in the record to
support claims for fraud, conversion, and tortious interference
against Adami, Plaintiffs' argument that there is no underlying
wrong is without merit.

relationship, a plaintiff must show: (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1993) (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992); Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 37 (N.J. 1989)). "New Jersey law requires that a plaintiff alleging tortious interference with existing or prospective advantage present proof that *but for* the acts of the defendant, the plaintiff 'would have received the anticipated economic benefits.'" Id. at 1168 (quoting Printing Mart-Morristown, 563 A.2d at 37).

There is insufficient evidence in the present record, even when viewed most favorably to Defendants, of a reasonable probability of anticipated economic benefit and damages resulting from Adami's alleged interference. Defendants identify only one occasion on which Adami stated that he accepted a referral from Arce because Adami understood that Arce was not allowed to be involved in the window business. Adami testified

46

definitively, "I don't do windows and doors for Rod Arce or anybody, for that matter." (Adami Dep. 428:19-21.) Defendants provide no other evidence to support its contention that "Adami's assistance to Arce in evading his non-compete restrictions caused harm to Cardo in its loss of customers, potential customers and goodwill in the market." (Def. Opp. at 12.) Defendants need not specify an exact amount of damages, but to prevail on a claim for tortious interference, Defendants must do more than identify a single occasion on which Adami received a referral from Arce, conduct which may not even violate Arce's non-compete agreement since Arce apparently did not perform the work or derive indirect benefit from the work. Therefore, the Court will grant Plaintiffs' motion for summary judgment as to Defendants' counter-claim for tortious interference against Adami.

### 6. Conclusion

For the reasons discussed above, the Court will grant in part and deny in part Plaintiffs' motion for summary judgment. The Court will grant Plaintiffs' motion as to Defendants' counter-claim for tortious interference with contractual relations against Adami, but deny Plaintiffs' motion as to Defendants' counter-claims for fraud, conversion, and conspiracy against Adami.

**V.    CONCLUSION**

In light of the foregoing, the Court will grant in part, deny in part, and defer in part Defendants' motion for summary judgment. The Court will also grant in part and deny in part Plaintiffs' motion for summary judgment. An accompanying Order will be entered.

**June 10, 2014**                              **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge