# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRED ADAMI and JACK F. VARNER,<br><br>Plaintiffs,<br><br>vs.<br><br>CARDO WINDOWS, INC., et al.,<br><br>Defendants | CIVIL NO. 1:12-02804 (JBS) (JS) |

---

**DEFENDANTS' SUR-REPLY BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SANCTIONS**

---

On the Brief:

Michael D. Homans, Esquire
Rachel Licausi, Esquire
Flaster/Greenberg P.C.
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900 (telephone)
Attorneys for Defendants

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 2

    I.    THE ACTION COMMENCES WHEN A NAMED PLAINTIFF OPTS-IN, NOT THE COMPLAINT FILING DATE. ....................................... 2

    II.   THE "ATTORNEYS EYES ONLY" DESIGNATION MUST REMAIN ............ 7

    III.  DEFENDANTS IN GOOD FAITH PRODUCED FINANCE SHEETS FOR EACH INSTALLATION JOB AT ISSUE IN THE RELEVANT TIME PERIOD. .................................................................................... 9

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Frye v. Baptist Mem'l Hosp., Inc.*,
   495 F. App'x 669 (6th Cir. 2012) .................................................................................4

*Gessele v. Jack in the Box, Inc.*,
   3:10-CV-00960-BR, 2014 WL 1094949 (D. Or. Mar. 19, 2014), *as amended* (May 15, 2014) .................................................................................6

*Harkins v. Riverboat Servs., Inc.*,
   385 F.3d 1099 (7th Cir. 2004) .................................................................................4

*Hively v. Allis-Chalmers Energy, Inc.*,
   CIV.A. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) .................................................................................6

*Kim v. Dongbu Tour & Travel, Inc.*,
   2:12-CV-1136 WHW, 2013 WL 5674395 (D.N.J. Oct. 16, 2013) .................................................................................6

*Manning v. Gold Belt Falcon, LLC*,
   817 F. Supp. 2d 451 (D.N.J. 2011) .................................................................................6, 7

*S.E.C. v. Lucent Technologies, Inc.*,
   75 Fed. R. Serv. 3d 1 (D.N.J. 2009) .................................................................................7

*Symzyk v. Genesis HealthCare Corp.*,
   656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013) .................4, 5, 6

*Titchenell v. Apria Healthcare Inc.*,
   CIV.A. 11-563, 2011 WL 5428559 (E.D. Pa. Nov. 8, 2011) .................................................................................6

*Vargas v. Gen. Nutrition Centers, Inc.*,
   2:10-CV-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012) .................................................................................6

**FEDERAL STATUTES**

29 U.S.C. 256 .................................................................................1

29 U.S.C. § 216(b) .................................................................................4

29 U.S.C. § 256(a) .................................................................................5

Fair Labor Standards Act ................................................................................. passim

**Rules**

Local Rule 37.1.(a)(1)..................................................................................................10

## PRELIMINARY STATEMENT

Defendants Cardo Windows, Inc., et al. ("Cardo") respectfully request that the Court permit this Sur-Reply to Plaintiffs' reply brief, as Plaintiffs misstate the law as to the applicable limitations period under the Fair Labor Standards Act (FLSA), and misstate the facts in several key respects, requiring correction. The applicable statute, 29 U.S.C. 256, as confirmed by multiple Circuit Court opinions, establishes beyond refute that the limitations period for plaintiffs in a collective action under the FLSA, including those named in the complaint as party plaintiffs, runs from the date when "written consent" of that plaintiff is filed, including when that is "subsequent" to the date the complaint is filed.[1] The Court should not be misdirected by Plaintiffs' citation to over-generalized *dicta* in which the statute of limitations was not at issue. This corrected reading of the law nullifies more than 90 percent of the alleged discovery deficiencies claimed in Plaintiffs' reply brief.

As for the remainder, the facts show that Plaintiffs are mistaken in their belief as to the other 14 customer addresses allegedly not produced. Defendants have fully complied with their obligations under the Court's Order, and the rules of discovery. Plaintiffs failed to first confer in good faith with Defendants' counsel before bringing these issues to the Court. They proceed under the mistaken

---

[1] This reliance on the limitations period set forth in the statute is not a "new" legal argument. The statutory text has existed since 1947, and counsel for Defendants explained the applicable limitations period in telephone discussions with Plaintiffs' counsel in or around June of 2014, before production was made.

assumption that Defendants had no basis for their actions, and then launch into *ad hominem* attacks -- apparently as a red herring to distract from their failure to timely file written consent forms with the Court and to mask Plaintiffs' complete failure to make any evidence-based estimate as to overtime pay for any work-week at issue in this case (after three years of litigation, multiple discovery requests, and a Court Order to do so). As set forth more fully below, Defendants excluded five jobs from address production because the evidence reveals that Plaintiffs did not perform covered installation work on them during the relevant period. Defendants and their counsel have acted reasonably and in good faith in this matter, and nothing about their conduct warrants sanctions or disqualification.

## ARGUMENT

### I. THE ACTION COMMENCES WHEN A NAMED PLAINTIFF OPTS-IN, NOT THE COMPLAINT FILING DATE.

Section 256 of the FLSA sets forth in clear and unambiguous terms when a collective action commences for each type of plaintiff:

> . . . in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, . . . it shall be considered to be commenced in the case of any individual claimant—
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint ***and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought***; *or*

2

(b) *if such written consent was not so filed* or if his name did not so appear—*on the subsequent date on which such written consent is filed in the court in which the action was commenced*. 29 U.S.C. § 256 (emphasis added).

This "written consent" is commonly referred to as an "opt-in" form, and is required by the statutory scheme to ensure that each and every party to an FLSA collective action has consented to his or her participation (unlike typical Rule 23 class actions, where class members are automatically included in a certified class, unless they "opt out").

In this case, Fred Adami filed his written consent to the collective action on December 17, 2013. ECF Doc. No. 94. Jack Varner opted in on December 24, 2013. ECF Doc. No. 100. Accordingly, those are the controlling dates.[2]

Contrary to Plaintiffs' arguments in their reply, federal appellate courts facing this situation -- a delay by the named party plaintiff in filing a written consent with the court -- have recognized that 29 U.S.C. § 256 allows for no ambiguity. Writing for the United States Court of Appeals, Seventh Circuit, Judge Posner stated:

> In a collective (or, as it is sometimes called, a representative) action under the FLSA, a named plaintiff sues on "behalf of himself ... and other employees similarly situated. No employee shall be a party

---

[2] Neither Plaintiffs nor their counsel have offered any reason why they waited more than a year from the filing of the Complaint that named Adami (May 10, 2012) and the Amended Complaint naming Varner (November 27, 2012) to file their written consents.

3

> plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).[3] …The plaintiffs' counsel asks us to overlook the failure to comply with the statute. He argues that since all 18 were actually named as plaintiffs in the complaint and participated in discovery, their consent to be parties can be presumed and so the failure to file written consents for them was harmless, a mere failure to comply with a technicality.
>
> The statute is unambiguous: if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint, for you might have been named without your consent. The rule requiring written, filed consent is important because a party is bound by whatever judgment is eventually entered in the case, and if he is distrustful of the capacity of the "class" counsel to win a judgment he won't consent to join the suit. We are inclined to interpret the statute literally. No appellate decision does otherwise.

*Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). The Sixth Circuit has held the same, requiring a named plaintiff in a collective action to file a written consent to join the collective action. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012).

Plaintiff cites dicta in *Symzyk v. Genesis HealthCare Corp.,* 656 F.3d 189 (3d Cir. 2011)*, rev'd on other grounds*, 133 S. Ct. 1523 (2013)), for the proposition that a named plaintiff is not subject to the statute's requirement that every putative collective action member is required to file a "written consent" with the Court. *Symzyk* did not so hold. The applicable commencement period for the named

---

[3] 29 U.S.C. §216(b) allows an aggrieved employee to bring a collective FLSA action against the employer.

plaintiffs was not at issue in *Symczyk* and there is no indication in the case that Symzyk committed the same blunder as the Plaintiffs here -- failing to file a written consent with their complaints.[4] Rather, without any analysis, the court in *Symzyk* over-generalized in *dicta*, stating incorrectly: "For a named plaintiff, the action commences on the date the complaint is filed. 29 U.S.C. § 256(a)." Clearly, the court was not asserting that the plain language of the statute should be abrogated and ignored. More likely, the court was not focused on the issue and assumed, as is normal practice, that a named plaintiff would file the required "written consent" simultaneously with the complaint. Here, Mr. Adami, Mr. Varner and their counsel failed to promptly file their written consents with their complaints, and belatedly submitted them more than a year later (revealing that Plaintiffs finally realized such opt-in forms are mandatory to commence participation in a collective action).

While Plaintiffs cast aspersions at Defendants and their counsel for not alerting the Court to inapposite *dicta* in *Symzyk*, they failed to point out to the Court that courts in and out of this Circuit have rejected the proposition that only a complaint is necessary to commence an FLSA collective action for a party

---

[4] The issue on appeal in *Symczyk*, and totally unrelated to this case, was whether an FLSA collective action becomes moot when (1) the putative representative receives a Rule 68 offer in full satisfaction of her individual claim prior to moving for "conditional certification," and (2) no other potential plaintiff has opted in to the suit. *Symczyk*, 656 F.3d at 197.

plaintiff. In *Manning v. Gold Belt Falcon, LLC*, 817 F. Supp. 2d 451, 455 (D.N.J. 2011), Judge Irenas emphasized the importance of the statutory requirements and dismissed named plaintiffs who failed to sign and file opt-in forms, rejecting arguments that given their status as named plaintiffs the court should deem them to have manifested their consent. "Although this is a harsh result, the statute clearly states that consent must be written and that it must be filed with the Court." *Id.*

Similarly, in *Gessele v. Jack in the Box, Inc.*, 3:10-CV-00960-BR, 2014 WL 1094949, *10 (D. Or. Mar. 19, 2014), *as amended* (May 15, 2014), the district court rejected the dicta in *Symzyk* and held that named plaintiffs are required, pursuant to the statute, to file written consents to commence an FLSA collective action. The Court noted that while the Ninth Circuit had not addressed this issue, other Circuits routinely and properly dismissed complaints where plaintiffs did not file timely consents. *Id.*

Furthermore, the case law cited by Plaintiffs is inapposite. The four unpublished and non-binding opinions from district courts in the Third Circuit do reference the *dicta* in *Symczyk*, but the facts in those cases do not suggest any dispute as to the limitations period for the named plaintiffs.[5] None of the cases

---

[5] *Hively v. Allis-Chalmers Energy, Inc.*, CIV.A. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013); *Kim v. Dongbu Tour & Travel, Inc.*, 2:12-CV-1136 WHW, 2013 WL 5674395 (D.N.J. Oct. 16, 2013); *Vargas v. Gen. Nutrition Centers, Inc.*, 2:10-CV-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012); *Titchenell v. Apria Healthcare Inc.*, CIV.A. 11-563, 2011 WL 5428559 (E.D. Pa. Nov. 8, 2011).

appear to have involved a named party plaintiff who failed to file a written consent with the complaint, as Plaintiffs did here.

Obviously, courts are not bound to follow *dicta*. *S.E.C. v. Lucent Technologies, Inc.*, 75 Fed. R. Serv. 3d 1 (D.N.J. 2009) ("the Court reminds everyone that dicta is dicta—non-binding verbiage"). Rather, the plain language of the statute controls and cannot be ignored by Plaintiffs or this Court, regardless of how harsh the results. *See Manning*, 817 F. Supp. 2d at 455.

Accordingly, Plaintiffs' argument is fatally flawed by their misidentification of the relevant time periods based on their misinterpretation of the law. As a result, Defendants were not required to produce the addresses for the 198 customers identified in Exhibit A of the Hannye Certification, as all preceded the three-year maximum limitations period from the filing of written consent forms by the Plaintiffs.

## II.   THE "ATTORNEYS EYES ONLY" DESIGNATION MUST REMAIN

Plaintiffs claim that Defendants have somehow "waived" their ability to designate the produced documents as "Attorneys Eyes Only" by producing, earlier in this litigation, documentation showing the addresses of two other customers, and marking such documents as "Confidential." First, Plaintiffs cite no law or reason

why the production of two prior addresses with a lesser designation constitutes a waiver, entitling them to a complete customer list for nearly 600 different customers. Second, the Discovery Confidentiality Order entered into by the parties and this Court states that such designations are not to be deemed a waiver in whole or in part of a party's claim of confidentiality.

Plaintiffs do not provide any assurances or declarations promising that Plaintiffs Adami and Varner would not disclose and improperly use the customer lists and addresses, if provided to them. Defendants cannot just blindly trust Adami, who admits to being a close "friend" of the principal of one of Defendants' major competitors. Adami is currently being prosecuted, on information and belief, for writing fraudulent prescriptions for controlled substances. Plaintiffs' counsel goes to great lengths to assert that he is not a "friend" of Roderick Arce, who has worked as a direct competitor of Cardo Windows -- but Plaintiffs' counsel does nothing to refute the sworn testimony of Adami and Arce that counsel did indeed provide legal advice to Arce and his competing company. The undisputed fact is that Plaintiffs' counsel has met repeatedly with Arce and his client, a direct competitor (currently in bankruptcy but with family members remaining in the window business) to determine how and whether Arce could work with Dream House Windows and Firas Emacha to compete with Defendants. Due in large part to the parties' longstanding, contentious relationship, there is no underlying level

8

of trust that supports giving Plaintiffs these extensive and proprietary customer lists.

Finally, Plaintiffs have not provided any factual basis for the contention that marking these documents "Attorneys' Eyes Only," and allowing them to be reviewed by Plaintiffs' economic expert on damages, in any way prejudices Plaintiffs.

### III. DEFENDANTS IN GOOD FAITH PRODUCED FINANCE SHEETS FOR EACH INSTALLATION JOB AT ISSUE IN THE RELEVANT TIME PERIOD.

Defendants' discovery conduct has been in good faith, for good reason, and consistent with the letter and the spirit of the Court's order. A sanctions award under these circumstances would not be just, as Defendants are well within their rights and the bounds of permissible discovery to act to protect their confidential business information from improper disclosure.

As set forth above and in Defendants' primary response brief, Defendants produced finance sheets showing the addresses of nearly 600 different customers for the relevant time period.[6] Plaintiffs mistakenly assert that addresses for an additional 198 jobs should have been produced, but it is clear from Plaintiffs' reply brief that all of these jobs were from time periods not covered by the applicable statute of limitations.

---

[6] As further evidence that Defendants did not withhold these customer addresses in bad faith, three of the addresses were produced twice as duplicates. These types of errors unfortunately occur in large scale productions done on a tight timeframe.

9

Plaintiffs also identify "16 customers" in their reply brief, for whom they allege addresses were not produced.[7] Plaintiffs' counsel never inquired of Defendants' counsel before raising these names to the Court, violating Local Rule 37.1.(a)(1), but for the benefit of the Court and Plaintiffs, Defendants set forth here its response as to each customer identified:

- **Delguercio** -- The installation work on this job was performed on December 16 and December 17, 2010, per the work schedules of Cardo Windows (see Declaration of Christopher Cardillo, Sr. ("Cardillo Decl."), Esquire at Exhibit A[8]), and therefore were outside the three-year limitations period. Although the re-cap sheet indicates work completion on December 20, 2010, the work schedule shows that no work was completed by Adami that day. (*Id.*)

- **Liu** -- This is a transcription error or mistake by Plaintiffs. The proper name for this job is Lin, Job No. 86692, and it was produced at CARDO 003286.

- **Keenan** -- This job was listed as Moser-Keenan, causing some confusion. The Finance Sheet for this job is attached to the Cardillo Decl. at Exhibit B.

- **Role** -- This is a transcription error or mistake by Plaintiffs. The proper name for the job is Rice, and it was produced at CARDO 003209.

---

[7] Plaintiffs allege that Defendants withheld 16 addresses; however, Plaintiffs count Fredhoff twice and include Christopher Cardillo, Sr., which brings the total down to 14.

[8] The Exhibits to the Declaration of Christopher Cardillo, Sr. are not being electronically filed as they are marked with "Attorney's Eyes Only" and "Confidential". They are being provided to Judge Simandle and to Plaintiffs' counsel today.

- **Harrington** -- The January 5, 2011, pay stub entry by Adami was for service, not an installation. The installation occurred in 2009, according to the Finance Report. Cardillo Decl. at Exhibit C.

- **Scaturo** -- This is a transcription error or mistake by Plaintiffs. The proper name for the job is Scutro/Bott, and it was produced at CARDO 003185.

- **Narfle** -- This is a transcription error or mistake by Plaintiffs. The proper name for the job is "Warfle," and it was produced at CARDO 003236.

- **Fredhoff** -- This job is counted twice by Plaintiffs in their Reply. The much older job number and Cardo's records on this customer establish that it was installed in 2006, and that the work listed for Adami in March and May of 2011, was "service" to deal with customer complaints as to a prior installation, and not "installation" of windows. See Cardillo Decl. at Exhibit D, showing original installation in 2006 and "service" nature of March 28, 2011 and May 14, 2011, by Adami.

- **Tobia** -- This was a "service" call, not an installation, as established by Adami's Installer Pay Stub and Finance Report. Cardillo Decl. at Exhibit E.

- **Cardillo** -- Plaintiffs complain that Defendants did not produce Mr. Cardillo's address. Mr. Cardillo's address where the job was performed is 12 Bunning Drive, Voorhees, New Jersey 08043. Moreover, because this job was for the

founder of the company, there was no "Finance Sheet" or job order documentation to produce.

- **Lobrano** -- This is a transcription error or mistake by Plaintiffs. The proper name for the job is "Lombrano," and it was produced at CARDO 003271.

- **Boatman** -- This was a mistake by Defendants in production. Boatman is job no. 88800, and Defendants mistakenly produced job no. 88860 (for Dixon). The proper Finance Sheet is attached to the Cardillo Decl. at Exhibit F. Plaintiffs should disregard and not count the Dixon job (CARDO 003192) in their calculations, as Adami did not install that job. Note that the Dixon job is actually farther away from Mt. Laurel than the Boatman job.

- **Renee** -- This is a transcription error or mistake by Plaintiffs. The proper name for the job is "Renee Coleman," and it was produced at CARDO 003124.

- **Beals** -- This was a $50 service job, and not a window installation. *See* Adami Installer's Pay Stub and Finance Report, at Cardillo Decl. at Exhibit G.

- **Soloman** – This was a service job. No installation work was performed at this job, as the customer "refused" to accept the door. Instead, Cardo apparently paid Adami $200 as compensation for traveling to the job. *See* Installer's Pay Stub and Finance Sheet at Cardillo Decl. at Exhibit H.

Based on this analysis and documentation, it is clear that:

12

- **Six (6) of the jobs that Plaintiffs complain about were already produced** (Liu, Role, Scaturo, Narfle, Lobrano and Renee), Plaintiffs simply failed to properly analyze the document production and identify the spelling discrepancies.

- **For one of the jobs, Boatman, the wrong Finance Sheet was produced by mistake** due to a typo in the job number, and that is corrected here.

- **The remainder of the jobs were not for installations**, but rather were for travel, cancelled work or service only, and therefore not the "installation" of windows and doors.

- With regard to just one (1) customer, Moser-Keenan, out of more than 600 produced, Defendants realize that they inadvertently failed to produce. Defendants have not been able to determine the reason for this one omission, but assure the Court and Plaintiffs that it was not intentional. Responsive documents with address information are attached to the Cardillo Decl. as Exhibit B.

In summary, Plaintiffs are mistaken in their heated charges as to misconduct by Defendants in relation to 212 of the 213 names identified in their Reply brief. In reality, Defendants were remarkably accurate and complete, producing more than 600 project addresses in a matter of weeks, after the parties were unable to stipulate as to average travel time. Nothing here suggests misconduct or warrants sanctions or disqualification, but the Court may wish to admonish Plaintiffs' counsel to fulfill his duty to confer in good faith, and consider that there may be

13

reasonable explanations for any discrepancy perceived, before again wasting the Court's time and resources with such a motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that an order be entered denying Plaintiffs' motion for sanctions.

                                      Respectfully submitted,

Dated:   September 12, 2014         **FLASTER/GREENBERG P.C.**

                                  By:   *s/ Michael D. Homans*
                                        Michael D. Homans, Esquire
                                        Rachel E. Licausi, Esquire
                                        Commerce Center
                                        1810 Chapel Avenue West
                                        Cherry Hill, NJ 08002
                                        (856) 661-1900 (telephone)
                                        Michael.Homans@flastergreenberg.com
                                        Rachel.Licausi@flastergreenberg.com
                                        Attorneys for defendants