IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRED ADAMI and JACK VARNER, on behalf of themselves and all others similarly situated, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 12-2804 (JBS/JS) |
| v. | |
| CARDO WINDOWS, INC. d/b/a "Castle, 'The Window People'" et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Richard S. Hannye, Esq.
HANNYE LLC
128 West Cottage Avenue
Haddonfield, NJ 08033
      Attorney for Plaintiffs

Kenneth S. Goodkind, Esq.
Michael D. Homans, Esq.
Rachel E. Licausi, Esq.
Peter J. Tomasco, Esq.
FLASTER GREENBERG P.C.
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
      Attorneys for Defendants

**SIMANDLE, Chief Judge:**

I.    **INTRODUCTION**

This action arises from Defendants' alleged

misclassification of its window installers as independent

contractors. Plaintiffs maintain claims for unpaid overtime and

all other relief they are due under the Fair Labor Standards Act

("FLSA"), the New Jersey State Wage and Hour Law ("NJWHL"), and the New Jersey Construction Industry Independent Contractor Act ("CIICA"), as well as a claim for unjust enrichment.[1]

This matter comes before the Court following oral argument and supplemental briefing on a motion for summary judgment by Defendant Cardo Windows, Inc. d/b/a "Castle 'The Window People,'" Christopher Cardillo, Sr., Christopher Cardillo, Jr., Nicholas Cardillo, Edward Jones, John J. Belmonte, and Pat Tricocci [Docket Item 87], as well as a motion for sanctions by Plaintiffs following the close of this supplemental briefing [Docket Item 159.]

In the Court's June 10, 2014 Opinion addressing Defendants' motion for summary judgment, the Court deferred decision on Defendants' argument that Plaintiffs' FLSA and NJWHL claims must fail because they have presented insufficient evidence to calculate damages. Adami v. Cardo Windows, Inc., Civ. 12-2804 (JBS/JS), 2014 WL 2586933, at *12 (D.N.J. June 10, 2014). The Court found that Cardo failed to produce any documents in discovery containing the addresses of the customers for which Plaintiffs installed windows, which Plaintiffs asserted were necessary to calculate damages because time traveling from the Cardo warehouses to the customer's location is compensable under

---

[1] Plaintiff Fred Adami also maintains claims for unpaid overtime and benefits when he was a manager for Cardo.

the FLSA and NJWHL. Id. at *7. Accordingly, the Court determined
that Plaintiffs were entitled to discover the addresses of each
customer serviced, and required Defendants to produce those
documents within 14 days, and the Court permitted supplemental
briefing regarding Plaintiffs' estimate of damages. Over two
weeks after Plaintiffs filed their supplemental brief, they
filed a motion for sanctions asserting new arguments, not
contained in their supplemental briefing, that Defendants failed
to comply with the Court's Order of June 10, 2014 by, among
other things, improperly redacting the exact street address of
the customers for whom Plaintiffs allegedly installed windows
and withholding documents for certain customers for whom they
installed windows prior to December, 2010.

 With supplemental briefing complete and having heard oral
argument on September 19, 2014, the Court now returns to the
question of whether Plaintiffs have proffered sufficient
evidence, including the report of their expert, Carl Meinhold,
CPA, from which a reasonable factfinder could find that they
have satisfied their burden of showing the amount of time and
extent of work for Cardo as a matter of just and reasonable
inference. The Court will first address Plaintiffs' motion for
sanctions because it is intertwined with the remaining aspect of
Defendants' motion for summary judgment regarding damages and
the sufficiency of Plaintiffs' proofs.

For the reasons explained below, the Court will deny Plaintiffs' motion for sanctions, and the Court will strike the Meinhold report under Rules 702 & 703, Fed. R. Evid., and deny Defendants' motion for summary judgment to the extent it is based on Plaintiffs' alleged failure to carry its burden of estimating damages under the FLSA and NJWHL, upon <u>condition</u> that each Plaintiff shall certify and serve a Compilation of Estimated Overtime Hours and Damages in the form required in Part III.B.4, below, within thirty (30) days, or else summary judgment will be granted.

## II.   BACKGROUND

### A.   Facts

The Court thoroughly recounted the facts and procedural history of this action in its June 10, 2014 Opinion addressing the parties' motions for summary judgment. <u>See</u> <u>Adami</u>, 2014 WL 2586933. For present purposes, it is sufficient to note that Cardo sells and installs windows and doors in multiple states. Cardo uses installation work crews to install windows for customers, which generally consist of an installer and one or more helpers. The named Plaintiffs, Frederick Adami and Jack Varner installed windows for Cardo. They allegedly worked 10–14 hours per day, six days per week and they claim that Cardo failed to properly compensate them for overtime hours worked.

4

B.   **Procedural Background**

The Court again refers to its June 10, 2014 Opinion for a full recounting of the procedural background of this action and now only details relevant developments since its previous Opinion.

The parties filed motions for summary judgment on December 2, 2013 in accordance with the deadline imposed for dispositive motions as to the named Plaintiffs' individual claims. [Docket Item 58.] The Court heard oral argument on these motions on June 4, 2014. By Opinion and Order entered June 10, 2014 [Docket Items 152 & 153], the Court granted in part, denied in part, and deferred in part Defendants' motion for summary judgment. The Court also granted in part and denied in part Plaintiffs' motion for summary judgment. Specifically, the Court granted Plaintiffs' motion as to Defendants' counter-claim for tortious interference with contractual relations against Adami, but denied Plaintiffs' motion as to Defendants' counter-claims for fraud, conversion, and conspiracy against Adami. The Court denied Defendants' motion for summary judgment as to Plaintiffs' claims for unjust enrichment and to the extent it relied on the FLSA's retail commission exemption.[2]

---

[2] Additionally, the Court granted Defendants' motion for summary judgment as to Adami's defamation claim against Edward Jones and to the extent Defendants sought to limit Plaintiffs' recovery under the CIICA to the benefits to which Plaintiffs would be

Importantly for present purposes, the Court deferred decision on Defendants' motion to the extent it argued that Plaintiffs failed in their obligation to provide a reasonable estimate of damages. The Court noted that "[u]nless the parties can reach a stipulation regarding Plaintiffs' average compensable travel time each day, Plaintiffs are entitled to discover the addresses of the each customer serviced because such information is necessary to compute Plaintiffs' average hourly earnings." Adami, 2014 WL 2586933, at *7. The Court invited supplemental briefing after this discovery was produced.[3] Accordingly, Plaintiffs filed their supplemental brief on August 5, 2014 [Docket Item 157] and Defendants filed their supplemental response on August 12, 2014 [Docket Item 158.]

On August 22, 2014, over two weeks following the submission of their supplemental brief, Plaintiffs filed a motion for sanctions, arguing that Defendants failed to comply with the Court's June 10, 2014 Order directing Defendants to provide documentation of the addresses of customers for whom Plaintiffs

---

entitled under the laws specifically enumerated in the CIICA and accompanying regulations.

[3] Pursuant to an Order entered June 30, 2014, the Court extended the deadline for Defendants to provide Plaintiffs with documentation containing the customer's addresses until July 15, 2014. [Docket Item 156.] The Court also extended the deadlines for submitting supplemental briefing.

installed windows.[4] [Docket Item 159.] Defendants filed
opposition. [Docket Item 161.] Plaintiffs filed a reply [Docket
Item 163] and both parties submitted supplemental filings.
[Docket Items 168 & 170.] The Court heard oral argument on the
outstanding aspect of Defendants' motion for summary judgment
and Plaintiffs' motion for sanctions on September 19, 2014.[5]

    This Opinion will first address Plaintiffs' motion for
sanctions before turning to remaining aspect of Defendants'
motion for summary judgment.

## III. DISCUSSION

### A.   Plaintiffs' Motion for Sanctions

    Plaintiffs contend in their motion for sanctions that
Defendants violated the Court's June 10, 2014 Order by failing
to provide the complete address of each customer for whom
Plaintiffs installed windows during the relevant period.
Additionally, Plaintiffs object to Defendants' alleged failure
to produce documents for specific time periods: (1) from May 10,
2009 through November 27, 2009 and (2) from May 17, 2011 through
June 6, 2011. Plaintiffs also contend that Defendants produced

---

[4] Plaintiffs' motion for sanctions makes no reference to Jack
Varner. Without explanation, the arguments therein pertain only
to Fred Adami.
[5] Following oral argument, the Court entered an Order removing
Defendants' "Attorney's Eyes Only" designation from the Finance
Reports produced in response to the Court's June 10, 2014 Order
but imposing certain other restrictions on the use of those
documents. [Docket Item 173.]

the Finance Reports in "wildly non-chronological order" and Defendants improperly designated the documents as "Attorneys' Eyes Only," which prevents Plaintiffs from assisting counsel and from confirming the work they allegedly performed.

As a remedy, Plaintiffs seek reasonable counsel fees necessary to prepare their motion and reasonable paralegal fees necessary to create a spreadsheet detailing Adami's travel time. Further, Plaintiffs seek an order directing Defendants to produce "in date order, without redaction, and without the 'Attorneys' Eyes Only' designation a clear first generation copy of the 'Detail Sheet' and the 'Recap Sheet' for each customer whose windows were installed" by Adami.[6] (Pl. Br. [Docket Item 159-1] at 15-16.)

In response, Defendants argue that the documents produced permit Plaintiffs to calculate travel time, despite the redaction of the customers' specific street numbers. Defendants explain that without redacting the street numbers, Defendants' production of documents would have been "tantamount to handing a competitor a customer list that Defendants compiled at an estimated cost of $600,000." (Def. Br. [Docket Item 161] at 2.)

---

[6] In their reply brief, Plaintiffs further contend that Defendants' counsel should be disqualified because he falsely certified that Defendants produced finance sheets for every job at issue during the relevant period in violation of Fed. R. Civ. P. 11(b)(3) and (4).

Defendants clarify that they are not concerned about Adami directly encroaching on their customers. Instead, Defendants believe Adami may share the customer list with Cardo competitors due to Adami and Plaintiffs' counsel's association with former Cardo manager Roderick Arce and the principal of Cardo competitor, Zaza Corp. Defendants argue that customer lists such as those produced in this case are routinely protected as confidential and propriety and considered trade secrets. Moreover, Defendants contend that Plaintiffs are not entitled to documents prior to December, 2010 because Plaintiffs' damages are limited to the period from December, 2010 through December, 2013.

Pursuant to Fed. R. Civ. P. 37(b)(2)(a), failure to comply with a discovery order may result in sanctions including the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(a).

Because the parties agreed at oral argument to remove the "Attorneys' Eyes Only Designation" from the Finance Reports produced in supplemental discovery, the Court need only address Plaintiffs' arguments that Defendants failed to comply with the Court's Order by (1) redacting the exact street address of the customers; (2) producing the Finance Reports in non-chronological order; and (3) failing to produce Finance Reports pre-dating December, 2010.

The sanctions Plaintiffs seek in the present case are inappropriate. Defendants substantially complied with the Court's June 10, 2014 Order by producing over 700 pages of documents, namely the Finance Reports, containing the customer address, job number, sale date, and notes specific to the particular job. Defendants redacted certain information on the Finance Reports, including the customer's house number, phone number, sales representative, payment information, and portions of the notes section. In redacting the exact street addresses, Defendants failed to strictly comply with the Court's Order. However, it remains possible to estimate travel time based solely on the street, city, and zip code information. Plaintiffs' belated submission of spreadsheets for both Adami and Varner estimating their travel time and mileage based on the redacted Finance Reports belies their argument that such an

10

estimate is impossible.[7] Defendants' other redactions were not unreasonable in light of the Court's Order, which was limited to providing documentation of the customers' addresses.

Plaintiffs' contention that Defendants produced the Finance Reports in "wildly non-chronological order" does not provide a basis for sanctions. Fed. R. Civ. P. 34(b)(2)(E)(i) requires a party to "produce documents as they are kept in the usual course of business." Defendants' counsel represented at oral argument that the Finance Reports were so produced. Defendants' counsel explained that Cardo maintains the Finance Reports based on customer name, not in chronological order. Moreover, the Court is unpersuaded by Plaintiffs' argument that it would take thousands of hours to organize these 700 documents. Not only is the Court skeptical of Plaintiffs' time estimate, but such a task is typical of the daily responsibilities of paralegals and attorneys in this profession. Certainly a paralegal could arrange 700 similar documents in chronological order in a matter of a couple hours and begin extracting useful information. This is a reasonable consequence and burden on the requesting party.

---

[7] Plaintiffs attached such a spreadsheet for Adami's travel time to their opening brief on the motion for sanctions. [Docket Item 160.] However, it was not until September 19, 2014, the day of oral argument on Plaintiffs' motion for sanctions, that Plaintiffs, without leave of the Court, filed a similar spreadsheet for Varner's travel time. [Docket Item 170.] Thus, the issues in this motion have remained an elusive concept.

The remaining issue on Plaintiffs' motion for sanctions is whether Defendants properly withheld documents which pre-date December, 2010. Defendants assert in opposition to Plaintiffs' motion for sanctions, as they did in their supplemental briefing on their motion for summary judgment, that the relevant time period for Plaintiffs' damages calculation is limited to the three-year period prior to the filing of their written consents to opt-in to the collective action. Plaintiffs contend that the relevant period for Plaintiffs' damages extends three years prior to the filing of the complaint.

It was reasonable for Defendants to withhold documents pre-dating December, 2010 – three years prior to the filing of their written consents to join the collective action. The Court's June 10, 2014 Order directed Defendants to "provide Plaintiffs with documentation containing the address of each customer for whom Plaintiffs installed windows during the relevant time period within fourteen (14) days of today's date." [Docket Item 153.] The Order did not define "the relevant time period." It is undisputed that the relevant time period for calculating Plaintiffs' damages is, at most, three years from the date their action commenced.

Pursuant to 29 U.S.C. § 256, in the case of a collective action, an action is considered commenced in the case of an individual claimant "(a) on the date when the complaint is

filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256 (emphasis added).

Plaintiffs rely primarily on Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 200 (3d Cir. 2011), rev'd on other grounds sub nom. Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013). In Symczyk, the Third Circuit stated: "For a named plaintiff, the action commences on the date the complaint is filed. 29 U.S.C. § 256(a). For an opt-in plaintiff, however, the action commences only upon filing of a written consent. Id. § 256(b). This represents a departure from Rule 23, in which the filing of a complaint tolls the statute of limitations 'as to all asserted members of the class' even if the putative class member is not cognizant of the suit's existence." Id. at 200. However, Symczyk only addressed the unrelated issue of whether an FLSA collective action is moot when the named plaintiff receives a Rule 68 offer of judgment prior to moving for conditional certification. Id. at 197 ("The issue we must resolve on this appeal, then, is whether an FLSA collective action becomes moot when (1) the putative representative

13

receives a Rule 68 offer in full satisfaction of her individual claim prior to moving for 'conditional certification,' and (2) no other potential plaintiff has opted in to the suit."). Although the Court of Appeals ultimately found that plaintiff's motion for conditional certification, if filed without undue delay, may relate back to the date plaintiff filed her initial complaint, nothing in Symczyk is clearly intended to abrogate the plain and unambiguous language of the statute.

Courts in this District and Courts of Appeal have held that 29 U.S.C. § 256 means what it says: even for a named plaintiff in a collective action, the action is deemed commenced upon the filing of a written consent to join the collective action. See Ochoa v. Pearsn Educ., Inc., Civ. 11-1382 (DMC/JAD), 2012 WL 95340, at *2 (D.N.J. Jan. 12, 2012) ("Importantly, collective actions under the FLSA are not considered commenced as to an individual claimant until that claimant files written consent to be a party-plaintiff. 29 U.S.C. § 256. In the instance in which a written consent is not filed concurrently with the complaint, therefore, the action is not considered commenced until the subsequent date on which the written consent is filed. 29 U.S.C. § 256(b)."); see also Manning v. Gold Belt Falcon, LLC, 817 F. Supp. 2d 451, 455 (D.N.J. 2011) ("Although it may seem curious that this consent requirement would apply to a named plaintiff, this requirement has been held to apply even to the named

plaintiffs.") (internal quotation and citation omitted). See
also Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1101 (7th
Cir. 2004) ("The statute is unambiguous: if you haven't given
your written consent to join the suit, or if you have but it
hasn't been filed with the court, you're not a party."); Frye v.
Baptist Mem'l Hosp., Inc., 495 F. App'x 669, 675 (6th Cir. 2012)
("Accordingly, courts construe the above language to do what it
says: require a named plaintiff in a collective action to file a
written consent to join the collective action.").

The cases Plaintiffs rely upon are inapposite because they
address individual claims under the FLSA and ADEA, not
representative actions, like the present case.[8] See Allen v. Atl.
Richfield Co., 724 F.2d 1131, 1135 (5th Cir. 1984) ("It is clear
that a plaintiff does not need to file a written consent if an
individual action is maintained. He or she is the named

---

[8] Plaintiffs' reliance on Partlow v. Jewish Orphans' Home of S.
California, Inc., 645 F.2d 757 (9th Cir. 1981), abrogated by
Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989), is
misplaced because Partlow only addressed tolling of the statute
of limitations under the FLSA for members of the collective
action who were not individually named in the complaint.
Similarly, in O'Connell v. Champion Int'l Corp., 812 F.2d 393,
394 (8th Cir. 1987), the court upheld the district court's entry
of summary judgment in favor of defendant where the named
plaintiff filed his complaint more than three years after
receiving a notice of termination and the opt-in plaintiff knew
of his termination more than three years prior to opting in to
the collective action. Id. at 394. Neither Partlow nor O'Connell
considered the situation presented here: where plaintiffs are
named in the FLSA collective action complaint, but fail to file
written consents to join until over one year later.

plaintiff. In this case, each claimant is a named plaintiff. This suit consists of a number of individual actions, not a collective or class action subject to sections 16(b) and 256."); Anderson v. Montgomery Ward & Co., 852 F.2d 1008, 1018 (7th Cir. 1988) ("As we have noted, however, the plaintiffs did not need to amend their complaint into a representative action; there was thus no need for the plaintiffs to file written consents with the district court to participate in a representative action.").

In the present case, both the original Complaint filed on May 10, 2012 and the Amended Complaint filed November 27, 2012 are styled as representative actions and assert claims under the FLSA on behalf of all others similarly situated. Plaintiffs filed their written consents on December 24, 2013. [Docket Items 100 & 101.] The plain language of the statute is clear, and absent a challenge to its constitutionality or clear direction from the Third Circuit to the contrary, the Court is compelled to apply its plain meaning. In this FLSA collective action, the named plaintiffs' actions commenced upon the filing of their written consents on December 24, 2013. 29 U.S.C. § 256(b). Therefore, it was reasonable for Defendants to withhold the

16

addresses of customers for whom Plaintiffs installed windows
prior to December, 2010.[9]

In light of the foregoing, the Court finds no basis for
awarding the sanctions Plaintiffs seek and Plaintiffs' motion
for sanctions will be denied.

**B.    Defendants' Motion for Summary Judgment**

Following supplemental discovery and supplemental briefing
and a second oral argument, the Court now addresses the
remaining aspect of Defendants' motion for summary judgment:
whether a reasonable fact-finder could find that Plaintiffs have
carried their burden of showing the amount and extent of work
for Cardo as a matter of just and reasonable inference.

Plaintiffs, in their supplemental briefing on the issue of
damages under the FLSA and NJWHL, largely reiterate their
previous argument that Cardo failed to keep written records for
each of its installers as required under the FLSA and that
Plaintiffs' testimony regarding their hours and pay is
sufficient to shift the burden to Cardo to present evidence of
the precise number of hours worked. Plaintiffs attempt bolster
their estimate of damages through the submission of a document
prepared by Certified Public Accountant, Carl Meinhold. Notably,

---

[9] Defendants, in their sur-reply, explain to the Court's
satisfaction the omission of documents related to the sixteen
customers identified in Plaintiffs' reply.

neither Plaintiffs in their brief, nor Meinhold in his report
appear to incorporate the documents produced by Cardo containing
the addresses of its customers, which Plaintiffs earlier sought
as vital to their ability to prove damages. Instead, as
discussed further below, Meinhold does not refer to any of the
hundreds of documents describing the actual work performed and
the locations to which Plaintiffs traveled on the various dates
of alleged employment.

Defendants respond by arguing that Plaintiffs, in relying
solely on Plaintiffs' testimony regarding their hours, have
again failed or refused to provide a just and reasonable
estimate of damages. Moreover, Defendants request that the Court
strike the Meinhold report because it is untimely and Meinhold
is unqualified under Fed. R. Evid. 702.

### 1.    Facts

It is undisputed that Cardo did not maintain records of the
hours worked by its installers. Jack Varner certified that he
worked 10-14 hours a day installing windows for Cardo from
February 2003 to October 2012. (Certification of Jack Varner,
Pl. Ex. F [Docket Item 104-3] ¶ 1.) Varner also testified that
he worked 10-14 hours a day, six days per week. (Deposition of
Jack Varner on May 7, 2013 ("Varner Dep."), Pl. Ex. G [Docket
Item 104-3] 46:1-6; 62:2-3.) Similarly, Adami testified that "a
typical day at [Cardo] is easily 10 to 12 hours" and he worked

six or seven days per week. (Deposition of Fred Adami on March
29, 2013 ("Adami Dep.") [Docket Item 87-4] 113:11-12; 241:6-9.)
Former Cardo manager and owner, Roderick Arce testified that
Cardo installers worked "60, 65 hours a week," which he knew
because he completed recap sheets showing how much work
installers completed each day. (Deposition of Roderick Arce
("Arce Dep."), Pl. Ex. I [Docket Item 104-3] 99:1-13.)

    Adami acknowledged that many variables contribute to the
time it would take to complete a window installation (Adami Dep.
112:13-16) and that there were occasions when he would only
install as few as three windows in a day. (Adami Dep. 262:21-
23.) Varner conceded that there were days when he could not
recall whether he worked for eight hours (Varner Dep. 73:18-20)
and admitted that there were occasions when he worked fewer than
six days per week (Varner Dep. 61:20-25; 63:20-23; 64:13-20;
65:9-11; 66:16-21; 72:1-6; 73:1-5; 73:23-74:1.) Both Adami and
Varner's estimates of their hours worked include travel time
returning home. (Varner Dep. 136:5-13; Adami Dep. 456:9-457:16.)

    Plaintiffs attach to their supplemental briefing a report
prepared by Certified Public Accountant, Carl Meinhold. (Pl. Ex.
B to Supp. Br. [Docket Item 157-2.]) Meinhold makes calculations
of average hourly rates of pay. Meinhold calculates that Adami
worked 1,664 hours of overtime annually and that Varner worked
1,248 hours of overtime annually. These calculations are based

19

on nothing but the generalized testimony of Adami, Varner, and Arce, and they are divorced from the documentary evidence of the work and travel actually performed on the days when Adami and Varner worked. Meinhold also calculates an average hourly regular rate of pay of $64.25 for Adami and $57.82 for Varner. Based on his calculation of Plaintiffs' regular and overtime pay, Meinhold also calculates the amount of New Jersey and Federal taxes owed. Meinhold's report does not refer to any specific documents in this case, nor does it explain the basis for his calculations beyond Plaintiffs' testimony.[10]

### 2.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of

---

[10] The only reference to documents in the record appears in the opening sentence of the report: "As requested, Carl W. Meinhold, CPA (Meinhold) has performed an analysis of the financial and other records provided for the dispute between Fred Adami and Jack F. Varner, ('Plaintiffs') and Cardo Windows, Inc. . . ."

summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

### 3.   Analysis

As the Court previously noted, because Cardo did not maintain records of its installers' hours, Plaintiffs may rely on the burden-shifting framework to prove damages under the FLSA.[11] Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946) (holding that where an "employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," an employee satisfies his burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"). Therefore, the question in this summary judgment motion is whether Plaintiffs have adduced evidence from which a reasonable fact-finder could find that they have carried their burden of showing the amount and extent of work for Cardo as a matter of just and reasonable inference.

---

[11] The Court previously observed that, for purposes of their motion for summary judgment, Defendants assume that Plaintiffs were employees entitled to overtime under the FLSA, and therefore, the Court will do the same.

Prior to oral argument, there had been a dispute regarding what records Cardo has produced in discovery and what documents the parties believe are necessary to reasonably estimate damages. However, at oral argument on September 19, 2014, Plaintiffs' counsel conceded that Plaintiffs possess the documents necessary to reconstruct each day the Plaintiffs worked, including the job number, job date, customer address, and number of windows installed. Nevertheless, Plaintiffs assert that the damages estimate set forth in their supplemental brief and Meinhold's report is the best possible based on the documents produced,[12] even though the estimate and the Meinhold report do not refer to the actual records of jobs performed, installations completed, and addresses of the jobs that were compiled by Cardo and furnished to Plaintiffs in discovery.

Further, Plaintiffs do not contend that these Cardo documents are inauthentic or unreliable. Although these work records do not contain the number of hours the Plaintiffs worked, they do contain the dates of work, the location, and the number and types of windows and doors installed on each job, because all that information was used to figure Cardo's

---

[12] Plaintiffs assert in their supplemental brief that Defendants failed to provide missing "recap sheets" for certain periods between April, 2009 and December, 2010. Defendants correctly note that these records are irrelevant to Plaintiffs' claims because they fall outside the three-year limitations period as discussed supra Section III.A.

22

compensation to Plaintiffs. One would expect, as the law
permits, that in the absence of actual time sheets the
Plaintiffs would use these records of their work to estimate by
inference based upon their experience, how many compensable
hours they worked each day. But nowhere in this summary judgment
motion record – which was prolonged under Rule 56(d) to assure
Plaintiffs would have these work records that they also
recognized as necessary – have Plaintiffs made any use of this
important work data to estimate their hours of work on the days
for which they claim insufficient compensation in this suit.

Plaintiffs have not carried their burden of showing the
amount and extent of work for Cardo as a matter of just and
reasonable inference. It is apparent that Plaintiffs, in
providing a damages estimate, have relied exclusively on
Plaintiffs' testimony that they worked 10-14 hours a day, six
days per week. The Court acknowledges cases in which plaintiffs
have been permitted to rely on their testimony alone to carry
their burden under Anderson. See, e.g., Prof'l Appraisal Servs.,
Inc. v. Melton, Civ. 05-621, 2006 WL 3203901, *2 (W.D. Mich.
Nov. 3, 2006) (noting that employer did not keep records of
hours worked by individual characterized as an independent
contractor and finding individual's testimony, substantiated by
co-workers' affidavits, sufficient to create a genuine issue of
material fact). Importantly, however, Plaintiffs have not

identified any authority indicating that they may disregard records of actual work performed and rely on their unsupported allegations regarding the number of hours worked, when there are documents in the record which contradict their blanket assertions and from which a meaningful estimate of hours worked and a resulting damages calculation may be made.

Plaintiffs' testimony that they worked 10-14 hours per day, six days per week is undercut by documents showing that they installed as few as three windows per day, days when they worked fewer than eight hours, and weeks when they worked fewer than six days per week. Defendants demonstrate through documents and their own testimony that Adami and Varner worked eight days or less in many two-week periods. The documents attached to Plaintiffs' supplemental certification, including spreadsheets estimating Adami and Varner's travel time and mileage and their biweekly pay totals, suggest significant disparities from day to day and week to week, which directly contradict their wholesale assertions of hours and days worked. For example, Adami's biweekly pay ranges from $1,677.50 to $10,015.00, and Varner's biweekly pay ranges from $1,150.00 to $7,310.00. Moreover, Plaintiffs' estimates of their hours worked include, by their own admission, travel time returning home, which is not compensable under the FLSA.

24

Plaintiffs have failed to distinguish or even address the cases cited by Defendants in which the plaintiffs relied on vague and unsubstantiated estimates of the amount of overtime worked. See, e.g., Simmons v. Wal-Mart Associates, Inc., Civ. 04-51, 2005 WL 1684002, at *10-11 (S.D. Ohio July 19, 2005) (observing that plaintiff was an hourly paid employee, but failed to offer any paychecks or paystubs to substantiate his "bald assertion" that he worked off the clock over 200 times."); Millington v. Morrow Cnty. Bd. of Comm'rs, Civ. 06-347, 2007 WL 2908817, at *7 (S.D. Ohio Oct. 4, 2007) (finding plaintiff's bare allegation that he worked roughly five hours every week from home insufficient to meet his burden of proof). In Kolesnikow, plaintiff offered no evidence regarding the amount of extra time she allegedly worked each week and the court had no way to determine whether the hours she worked per week exceeded 40 hours. Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 119 (S.D.N.Y. 2009). The court observed that "[w]hile there are cases in which FLSA plaintiffs have defeated summary judgment motions based on their own testimony, those plaintiffs have offered credible testimony approximating the number of hours they worked without pay." Id. at 119. As in Kolesnikow, this is not a case where Plaintiffs have offered credible testimony approximating the number of uncompensated overtime hours.

25

The Court finds, moreover, that Plaintiffs' expert report fails to fit the facts of the case and will therefore not assist the fact-finder. The admissibility of expert witness testimony is governed by Rule 702, Fed. R. Evid., and the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny. Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the Supreme Court explained in Daubert, district court judges perform a "gatekeeping role," 509 U.S. at 596, by assessing whether expert testimony is both relevant and methodologically reliable in order to determine whether it is admissible under Rule 702. Id. at 590-91.

Under the law of this Circuit, when an evidentiary challenge is raised, Daubert and Rule 702 call upon the Court to examine the admissibility of expert testimony in light of three factors: the qualifications of the expert, the reliability of his or her methodology and the application of that methodology, and whether the testimony fits the matters at issue in the case. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994).

Because Rule 702 demands that the expert testimony assist the trier of fact, such testimony will be admissible only if there is "a valid scientific connection" between the expert's testimony and the facts and issues in the case in order for the expert's testimony to be admissible. <u>Paoli</u>, 35 F.3d at 743.

Plaintiffs' proposed expert, Carl Meinhold, CPA, makes calculations of average hourly rates of pay, but he does not explain how he calculated these rates, nor does he explain how he arrived at an estimated number of overtime hours for Plaintiff Adami. Based solely on extrapolating Plaintiffs' testimony, Meinhold calculates that Adami worked 1,664 hours of overtime annually and that Varner worked 1,248 hours of overtime annually. Meinhold also calculates an average hourly regular rate of pay of $64.25 for Adami and $57.82 for Varner. Plaintiffs' counsel asserts that Meinhold's calculation of Plaintiffs' non-overtime rate of pay is "based upon the recap sheets produced by Cardo to date," (Pl. Supp. Br. [Docket Item 157] at 8), but there is no such reference in Meinhold's report. Plaintiffs' counsel attempts to bolster this statement by providing spreadsheets recording each plaintiffs' biweekly pay more than six weeks after submitting Meinhold's report. Meinhold's calculation is not tailored to relevant timeframe in which Plaintiffs may seek damages as discussed <u>supra</u> Section

III.A.[13] Meinhold's report does not mention how he treats travel time, fails to reference any documents in the record, and makes no effort to reconstruct each work day or week, with all its variability based on job assignments and locations, as Plaintiffs' counsel admitted was possible based on the documents obtained in discovery.

Further, Plaintiffs, and apparently their expert, once again rely on an inapplicable regulation, 29 C.F.R. § 548.302, as the basis for their damages calculation. Section 548.302 provides the method for calculating the "basic rate," which is permitted under section 7(g)(3) of the FLSA as an exception from the requirements of computing overtime pay at the regular rate under specific conditions, including an agreement between the employer and the employee regarding that rate. 29 C.F.R. §§ 548.100, 548.2. Plaintiffs were paid on a piece-rate basis determined by the number and type of windows and doors installed. As Defendants note, the relevant regulation for the

---

[13] See also Haro v. City of Los Angeles, 745 F.3d 1249, 1258 (9th Cir. 2014) ("Successful FLSA plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action. When a violation is 'willful,' however, the statute of limitations extends to three years.") (internal citations omitted). The relevant period for any possible recovery herein, assuming a three-year limitations period, begins December 24, 2010 and ends on the particular plaintiff's last day of work in June, 2012 and October, 2012 respectively.

purposes of calculating Plaintiffs' damages is 29 C.F.R. §

778.111.

29 C.F.R. § 778.111 provides the method for calculating

overtime pay for a piece-rate worker as follows:

> a) Piece rates and supplements generally. When an employee is
> employed on a piece-rate basis, the regular hourly rate of
> pay is computed by adding together total earnings for the
> workweek from piece rates and all other sources (such as
> production bonuses) and any sums paid for waiting time or
> other hours worked (except statutory exclusions). This sum is
> then divided by the number of hours worked in the week for
> which such compensation was paid, to yield the pieceworker's
> "regular rate" for that week. For overtime work the
> pieceworker is entitled to be paid, in addition to the total
> weekly earnings at this regular rate for all hours worked, a
> sum equivalent to one-half this regular rate of pay multiplied
> by the number of hours worked in excess of 40 in the week.
> (For an alternative method of complying with the overtime
> requirements of the Act as far as pieceworkers are concerned,
> see § 778.418.) Only additional half-time pay is required in
> such cases where the employee has already received straight-
> time compensation at piece rates or by supplementary payments
> for all hours worked. Thus, for example, if the employee has
> worked 50 hours and has earned $491 at piece rates for 46
> hours of productive work and in addition has been compensated
> at $8.00 an hour for 4 hours of waiting time, the total
> compensation, $523.00, must be divided by the total hours of
> work, 50, to arrive at the regular hourly rate of pay--$10.46.
> For the 10 hours of overtime the employee is entitled to
> additional compensation of $52.30 (10 hours at $5.23). For
> the week's work the employee is thus entitled to a total of
> $575.30 (which is equivalent to 40 hours at $10.46 plus 10
> overtime hours at $15.69).

29 C.F.R. § 778.111. Because neither Plaintiffs nor Meinhold

rely on this provision in estimating damages, their estimate is

inconsistent with the applicable regulations. Just as Plaintiffs

in their opposition to Defendants' motion for summary judgment

used their annual income as reflected on their IRS 1099 forms to

calculate their regular rate of pay, Plaintiffs in their supplemental briefing represent that their calculation is based on the "recap sheets" which are biweekly summaries of an installer's daily work. However, there is no indication that Meinhold calculated damages on a week-by-week basis or took any records into account as required by the regulations. 29 C.F.R. § 778.104 ("The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks . . . . The rule is also applicable to pieceworkers and employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis.").

Thus, Meinhold's calculations are methodologically unreliable and fail to fit the data or the requirements for a weekly calculation. They ignore documentation of four-day weeks, short days, and varying lengths of travel, while assuming, contrary to law, that commuting travel returning home is compensable when it is not. Accordingly, the Court finds that Plaintiffs' damages estimate as presented in Meinhold's report is faulty in its methodology under the FLSA and does not fit the facts of the case and therefore fails to salvage Plaintiffs' back-of-the-envelope damages estimate.[14]

---

[14] Because the Court finds that Meinhold's report fails to fit the facts of the case, the Court need not address Defendants'

Having decided that Plaintiffs' blanket assertions as to hours worked are undermined by the documents in the record and their own testimony, and that Plaintiffs' expert report fails to fit the facts of the case, the Court concludes that Plaintiffs have not proffered sufficient evidence from which a reasonable factfinder could find that they carried their burden of showing the amount of time and extent of work for Cardo as a matter of just and reasonable inference. Their testimonial estimates are based on guesswork that is contradicted by the actual records of their jobs, from which Plaintiffs could have at least attempted to create a reliable and admissible chart. Despite having all necessary records, Plaintiffs rely on self-serving and grossly inflated estimates of their workday contradicted by the actual records of their work.[15]

---

arguments that it is untimely or that Plaintiffs did not comply with the disclosure requirements of Fed. R. Civ. P. 26.

[15] As previously noted, the standard for proving damages under the NJWHL is similar to that under the FLSA. When determining whether a plaintiff has established a prima facie case under NJWHL, New Jersey courts have held that a plaintiff need not prove damages with precision where it is impractical or impossible to do so. See Mosley v. Femina Fashions, Inc., 811 A.2d 910, 916 (N.J. Super. Ct. App. Div. 2002). Specifically, damages need only be proved with "such certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate" of damages. Id. (quoting Lane v. Oil Delivery, Inc., 524 A.2d 405, 409 (N.J. Super. Ct. App. Div. 1987). Therefore, the Court's reasoning as to Plaintiffs' damages estimate under the FLSA applies with equal force to Plaintiffs' damages estimate under the NJWHL.

31

The Court finds that Meinhold's opinion on hours of
overtime and compensation due under the FLSA is not reliable in
its methodology nor does it fit the actual facts of the case and
the requirements of law under the FLSA; accordingly, it is
inadmissible under Fed. R. Evid. 702 & 703 and it will be
stricken and may not serve as a basis for providing a reasonable
estimate of damages under the FLSA and NJWHL.

Striking Meinhold's report leaves Plaintiffs Adami and
Varner with their own testimony as a basis for estimating
damages, together with the many hundreds of pages of job
documents belatedly produced by Cardo. By the description of
these documents,[16] it appears that one cannot rule out the
possibility that Plaintiffs, if deemed to be statutory employees
of Cardo, would be owed at least some damage under the FLSA and
NJWHL. As the parties opposing summary judgment, Plaintiffs are
entitled to all reasonable inferences from the evidence of
record. It is, of course, a reasonable inference that the job
sheets, if analyzed in light of Plaintiffs' testimony about 10-
14 hour days and six-day weeks, would yield the basis for a
reasonable estimate of their damages claim for at least some
workweeks. This is, unfortunately, the point that had been

---

[16] Neither counsel has provided them to the Court as part of the
record or in a summary, but they have been generally
characterized on the record as set forth above.

reached in last June's motion practice, when the Court endorsed Plaintiffs' counsel's demands for discovery of these necessary job sheets and other documents. Yet Plaintiffs' counsel failed to perform this task of compiling Adami and Varner's job data, week-by-week, and tying weekly estimates of hours worked and compensation sought to the best available evidence to compose and proffer a reasonable estimate, as required by the FLSA and NJWHL. While it seems that the evidence exists to survive summary judgment, it is also apparent that Plaintiffs' counsel has not performed, with his clients, the analysis that will be necessary to present this case at trial.

It should not be left to the Court to sift through the hundreds of jobs and determine, in the first instance, a reasonable estimate of hours worked. Nor have Plaintiffs come forward to date with a compilation of overtime hours that can be said to be "reasonable" under the circumstances and consistent with the job records, together with an estimate of overtime damages based on the method required for piecework employees in 29 C.F.R. § 778.111, supra. Therefore, summary judgment will be denied upon one condition: that Plaintiffs and their attorney perform the required compilations of estimated hours, and computations of estimated overtime damages, as defined in Part III.B.4 below, and certify and serve same within thirty (30) days. Failing same, the Plaintiffs' claims under the FLSA and

33

NJWHL will be dismissed for failure to produce admissible evidence of a reasonable estimate of damages.

### 4. Required Compilations of Estimated Overtime Hours and Damages

For each Plaintiff, the Plaintiff's required compilation will incorporate, at a minimum, these features, and it shall be certified by Plaintiff under the penalty of perjury.

1. Timing:  From December 23, 2010 to present date.

2. Chronological Listing:  Each date for which compensation is sought will be listed in a chronological listing that also repeats the salient data upon which the estimate of hours worked is based, including:

    (a) Customer and address.

    (b) Work performed including details of piece-work upon which compensation was based.

    (c) Source of information referencing Bates No. of documents in evidence.

    (d) Plaintiff's estimate of mileage from Cardo warehouse to customer's location and back, computed from a reliable source such as Google Maps or Mapquest, for each such date for which such travel time is sought.

34

      (e)   Plaintiff's estimate of hours of work and of travel based on data in 2(a)-(d), above, for each day.

3.    Compute and Compile Workweek Totals:

      (a)   Totals of time claimed in 2(e), above, for each 7-day workweek period, and of the overtime hours claimed for that period.

      (b)   Compensation received from Cardo for each workweek in 3(a), and source of information referencing Bates No. of pay document.

      (c)   Computation of hourly rate for piecework for each workweek, and of the overtime hourly rate of pay, computed pursuant to 29 C.F.R. § 778.111, for each workweek.

      (d)  Computation of overtime pay sought for each workweek, i.e., the product of overtime hours claimed for that workweek in 3(a), above, multiplied by the overtime hourly rate of pay for that workweek computed in 3(c), above.

4.    Total overtime compensation sought summing all workweek amounts claimed in 3(d), above.

## IV. CONCLUSION

In light of the foregoing, the Court will deny Plaintiffs' motion for sanctions and deny Defendants' motion for summary

judgment to the extent it is based on Plaintiffs' failure to provide a reasonable estimate of damages under the FLSA and NJWHL, upon condition that each Plaintiff shall certify and serve his required Compilation of Estimated Overtime Hours and Damages, in the form specified in Part III.B.4, above, within thirty (30) days of entry of this Opinion and Order. Failing same, Defendants' motion will be granted against a Plaintiff for failure to provide a reasonable estimate of damages under the FLSA and NJWHL, in due course.


**March 30, 2015**            `            **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge